UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| PODS ENTERPRISES, INC., <br><br> Plaintiff/Counterclaim-Defendant, <br><br> vs. <br><br> U-HAUL INTERNATIONAL, INC., <br><br> Defendant/Counterclaim-Plaintiff. | Case No: 8:12-cv-01479-JDW-MAP |

**U-HAUL INTERNATIONAL INC.'S MOTION TO EXCLUDE THE
EXPERT TESTIMONY OF WALTER BRATIC AND MEMORANDUM IN SUPPORT**

PEI's damages expert, Walter Bratic, opines that PEI is entitled to monetary relief approaching **$200 million**.[1] Because his analysis is based on flawed and unreliable methodologies, his testimony (including his initial and rebuttal reports) should be excluded in its entirety. *See Daubert v. Merrell Dow Pharm, Inc.*, 509 U.S. 579 (1993).

**I.     INTRODUCTION**

Bratic opines that PEI is entitled to (1) disgorgement of U-Haul's profits in the amount of $139.8 million; (2) reasonable royalty damages of approximately $3.2 to $4.6 million; (3) corrective advertising of approximately $23.4 million; and (4) $12.9 million in avoided or saved costs.[2] Bratic Rpt. ¶ 5. These opinions should be excluded because they suffer from the same

---

[1] Relevant and cited portions of the Expert Report of Walter Bratic ("Bratic Rpt.") are included in Exhibit 30, the Expert Rebuttal Report of Walter Bratic is Exhibit 31, and relevant portions of the deposition testimony of Walter Bratic ("Bratic Dep.") are Exhibit 36 to the concurrently-filed Declaration of Shiveh R. Roe. Exhibits to this declaration are referred to as "Roe Ex. __," unless otherwise noted.

[2] These numbers—totaling $179.4 million—do not include pre-or post-judgment interest, Bratic Rpt. ¶ 7, which would push PEI's total claimed relief to near $200 million.

methodological flaws that caused Bratic's virtually identical opinions to be excluded by numerous other courts.

Bratic's opinion concerning profits should be excluded because he fails to establish what—if any—portion of U-Haul's revenues was attributable to (i.e., caused by) its use of the word "pod(s)." In other words, his opinion lacks the necessary causal link between profits and the allegedly infringing conduct. The court in *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-cv-3181, 2010 WL 4065465, *7 (S.D. Tex. Oct. 9, 2010), excluded Bratic's opinions in a copyright case on exactly the same grounds—because he failed to "provide an opinion as to whether any of Defendants' gross revenue is 'attributable to the [infringing design].'"

Bratic's reasonable royalty opinion should be excluded because he: (a) improperly uses gross revenues as the royalty base; (b) relies on industry licenses that clearly are not comparable to a hypothetical license between PEI and U-Haul; and (c) implausibly assumes that PEI would have licensed U-Haul to use the term "pod(s)" generically or descriptively and that U-Haul would have paid a royalty for such usage. Again, Bratic previously has been excluded for these very same methodological errors. *See Monolithic Power Sys., Inc. v. 02 Micro Int'l, Ltd.*, 476 F. Supp. 2d 1143, 1155 (N.D. Cal. 2007) (granting *Daubert* motion and summary judgment); *Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 3911372, *1–*2 (E.D. Tex. Apr. 16, 2010) (granting motion to exclude).

Bratic's opinions as to comparative advertising and avoided costs should be excluded for several reasons, but primarily because they are not his own opinions. Bratic merely parrots the opinions of another PEI expert without conducting any independent analysis or following any accepted methodology. Bratic's opinions were excluded for this very reason in *Alphamed Pharmaceuticals Corp. v. Arriva Pharmaceuticals, Inc.*, 432 F. Supp. 2d 1319, 1356–57 (S.D.

Fla. 2006) (finding inadmissible the portion of Bratic's report that relied solely on another expert's report).

In short, Bratic's opinions are based on faulty methodology and improper assumptions. Just as his opinions have been excluded by other courts, so should they be excluded here. *NFL Props., Inc. v. Prostyle, Inc.*, 16 F. Supp. 2d 1012, 1018 (E.D. Wis. 1998) (excluding expert's survey due to numerous flaws for which courts previously criticized him).

## II. ARGUMENT

### A. Bratic's Testimony Relating to U-Haul's Profits Are Inadmissible Because He Fails to Provide a Causal Link Between Revenues and Use of the Word "pod(s)" on U-Haul's Website

A trademark plaintiff may only recover a defendant's profits when they are *attributable to* (i.e., caused by) the defendant's use of the allegedly infringing mark. *See Optimum Techs., Inc. v. Home Depot USA, Inc.*, 217 Fed. App'x 899, 902 (11th Cir. 2007) (affirming denial of profits award because plaintiff had "no evidence that any of [defendant's] sales . . . are attributable to its alleged infringement"); *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1541 (2d Cir. 1992); *Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 242–43 (3d Cir. 2003).[3]

---

[3] *See also Xoom, Inc. v. Imageline*, 323 F.3d 279, 286 (4th Cir. 2003) ("In determining damages under the Lanham Act, the plaintiff bears the burden of proving a causal connection between its harms and the defendant's profits … Because there is no evidence of actual damages or a causal link between actual damages and Xoom's actions, we find that Imageline failed to satisfy its burden under 15 U.S.C. § 1117 and therefore has no sustainable claim under the Lanham Act."); *Texas Pig Stands, Inc. v. Hard Rock Cafe*, 966 F.2d 956, 957–58 (5th Cir. 1992) ("The reason why Hard Rock Cafe's profits were not awarded was . . . based solely on the lack of evidence showing that any of Defendant's profits were the result of its infringement of the mark") (citing *Comidas Exquisitos, Inc. v. Carlos McGee's Mexican Café, Inc.*, 602 F. Supp. 191, 199 (S.D. Iowa), *aff'd* 775 F.2d 260 (8th Cir. 1985)); *Logan v. Burger's Ozark Co. Cured Hams*, 263 F.3d 447, 464 (5th Cir. 2001) (same; relying on *Texas Pig Stands* and the Sixth Circuit's case, *Balance Dynamics Corp. v. Schmitt Indus.*, 204 F.3d 683 (6th Cir. 2000), to conclude that plaintiff "was entitled to the defendant's profits only if it could show that the defendant gained additional sales due to the" infringement).

3

Accordingly, Bratic's testimony is relevant and reliable **if** he presents evidence as to what portion—if any—of U-Haul's profits were caused by U-Haul's use of "pod(s)" on its website. He has entirely failed to offer any such evidence.

Moreover, Bratic does not offer any reliable methodology for demonstrating that U-Haul's revenues were generated from allegedly infringing use of the word "pod(s)." Instead, he offers an overly simplistic approach: (1) add up U-Haul's U-Box revenues from November 2010 to September 2013 to arrive at a "gross revenue" of $139.8 million; and (2) "apportion" those revenues to a range of $64 to $93 million based on the percentage of consumers that he contends typically look at websites when buying moving and storage services. Bratic Rpt. at 32, 37–42. But Bratic's approach fails because he presents no evidence establishing a causal link between U-Haul's revenues, whether gross or "apportioned," and its online use of the word "pod(s)." Indeed, U-Haul's U-Box® business has not been profitable, and U-Haul has not obtained any profits attributable to its use of "pod(s)." Roe Ex. 21 (Expert Report of Scott D. Phillips, CPA) at 31; Roe Ex. 22 (Corrected Rebuttal Expert Report of Scott D. Phillips, C.P.A. ("Phillips Rebuttal Rpt.")) at 15–28.

Bratic cites only three pieces of evidence to purportedly show a causal link between the alleged infringement and U-Haul's supposed profits. Bratic Rpt. at 28–29, 39. While this evidence may speak to the degree to which consumers look at websites in general, it does not even purport to address the issue at hand: whether consumers *looking at U-Haul's website* were influenced to rent a U-Haul product *by the word "pod(s)."* Bratic inappropriately cites the following in support of his flawed opinions:

- A 2012 Accenture survey states that "as many as 88% of consumers are researching items online and then buying in a physical store." *Id.* at 28, 39. But

this is merely a survey on trends on general website use. It does not mention U-Haul's website, much less attempt to draw any conclusions about the impact of certain words on the website to U-Haul's revenues.

- A "recent study by G.E. Capital Retail Bank" finding that "81% of people look at products online before making a purchase," *id.*, is a survey of general consumer website use that does not remotely demonstrate a causal link between U-Haul's profits and its use of the word "pod(s)." *See* Roe Ex. 119.

- A 2012 marketing report by Digital Research, Inc. ("DRI") that is purportedly designed to track aided and unaided awareness of PEI's claimed mark, but does not reflect *any* research or conclusions about U-Haul's website, its use of the term "pod(s)," or the effect of that use, if any, on consumers. Roe ¶ 60.

To be relevant under *Daubert*, expert testimony must be "sufficiently tied to the facts of the case." *Daubert*, 509 U.S. at 591. Bratic's reference to consumer surveys reflecting general shopping habits is not "tied" to the facts of *this case* and does not show that any of U-Haul's revenues were generated as a result of the claimed infringement. Judge Thrash's opinion in *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc*., No. 1:04-CV-1082-TWT, 2006 WL 1663357 (N.D. Ga. June 14, 2006) is instructive. There, the Court excluded plaintiff's damages expert because he failed to "relate any of Optimum's alleged damages directly or specifically to the use of the mark on the websites." *Id.* at *4; *accord id.* at *8 ("An award of profits based on unjust enrichment would be appropriate if Henkel's sales . . . were attributable to its alleged infringing use of the Optimum mark on the web sites.").

Not only does Bratic rely solely on generalized survey evidence that has nothing to do with U-Haul's website, he also ignores evidence that *specifically addresses* the website. Such

5

evidence demonstrates that there is no causal link between U-Box sales and the word "pod(s)" on the website:

- U-Haul produced two surveys showing that consumer confusion does not result from the word "pod(s)" on U-Haul's website. Roe Ex. 6 (Expert Report of Phillip Johnson) at 19; Roe Ex. 23 (Expert Report of Hal Poret) at 32.[4]

- While Bratic assumes that 100% of U-Box sales were influenced by use of the word "pod" or "pods" online, U-Haul has shown that, in 2013, only 35% of U-Box container reservations (resulting in 40% of actual transactions) were made online, and that, the percentages were even smaller in prior years. *See* Roe Ex. 115 (U-Haul's Reservations and Transactions Chart).

- U-Haul's data from Google's Urchin Analytics shows that from August 2011 through November 2013, less than 1% of search-term-derived visits to the U-Haul website used the word "pod" or "pods." Roe Ex. 29.

- From August 2011 through November 2013, over 340,000 visits to the U-Haul website originated with searches that included the word "pod" or "pods." The U-Box home page of the U-Haul website received approximately 3 million visits during that same period. Therefore, even assuming that all visitors who used the search term "pod" or "pods" landed on the U-Box home page (a very generous assumption in favor of PEI), then, at most, only 10.9% of visits to the U-Box home page began with searches including "pod" or "pods." *Id*.

---

[4] *See also* U-Haul's concurrently filed Motion to Exclude the Expert Reports and Testimony of Dr. Russell Winer.

- U-Haul achieved only a 1.87% click-through rate when users of search engines used terms that include "pod" or "pods." Roe Ex. 4 (Amended Expert Report of Jonathan Hochman) at 25.

Next, Bratic's methodology ignores the law relating to the recovery of profits in trademark infringement cases. When profits are sought under an unjust enrichment theory (as Bratic applies here), the plaintiff must prove that actual confusion has occurred. This principle has been stated with absolute clarity by federal courts in this circuit:

- *Drew Estate Holding Co. v. Fantasia Distrib., Inc.*, No. 11-21900-CV-ALTONGA, 2014 U.S. Dist. LEXIS 44396, at *24 (S.D. Fla. April 1, 2014): "A profits award, premised upon a theory of unjust enrichment, requires a showing of actual consumer confusion."

- *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 2006 U.S. Dist. LEXIS 42891, at *24–*25 (N.D. Ga. June 14, 2006), *aff'd* 496 F.3d 1231 (11th Cir. 2007): "An award of profits based on unjust enrichment would be appropriate if Henkel's sales of Hold-It For Rugs were attributable to its alleged infringing use of the Optimum mark on the website . . . The burden is on Optimum to prove this connection by pointing to evidence of actual consumer confusion."

- *Gold Kist, Inc. v. ConAgra, Inc*., 708 F. Supp. 1291, 1304 (N.D. Ga. 1989): "Profits to be recovered must come from sales made by defendants to purchaser who sought to buy plaintiff's products and instead bought defendants' products … In this case, there has been no evidence of actual confusion or any attempts to buy plaintiff's products when defendants' products were substituted for them. . . . Therefore, this Court will not award an accounting of defendants' profits."

Bratic's testimony stands in stark contrast to this clear law:

- "Yeah, the confusion has nothing to do with disgorgement of profits." Bratic Dep. 221:19–20. "Q. Can you actually identify any single customer that PEI lost as a result of U-Haul using the term 'pod' or 'pods' by name? … A. No, because I didn't make such an investigation." *Id.* 265:17–24.

Not only was Bratic wrong on the legal standard, he was unable to point to any evidence of actual customer confusion. Nor was anyone else at PEI:

- George Spowart (PEI's 30(b)(6) designee on the topic of actual confusion): "Q. Do you know for a fact that any of the customers were confused as a result of U-Haul's use of the term "pod" or "pods"? A. I don't know." Roe Ex. 75 (Deposition of George Spowart) at 251:22–253:8.

- Ann M. Lehman (PEI Senior Vice President): "Q. Have you heard any instances of customer confusion between pods and U-Haul? A. Firsthand? Q. Yes. A. No." Roe Ex. 58 (Deposition of Ann M. Lehman) at 49:7–11.

- Simon P. Gregorich (PEI CFO): "Q. Are you personally aware of any instance in which a customer believed that U-Haul was a part of PODS Enterprises? A. Through discussion with counsel . . . A. Nothing outside of that." Roe Ex. 49 (Deposition of Simon Gregorich) at 205:18–25, 206:1.

- Aaron Parker (PEI General Counsel): "Q. Have you listened to any of the 27 million phone calls that you have recorded? A. I have listened to some. Q. Have you had interns or other people listen to any of those 27 million phone calls? A. For what purpose? Q. To see if there's confusion. A. When a customer of PODS contacts PODS through its call center they're calling the PODS entity. I don't

8

think there's any confusion about who they're speaking with." Roe Ex. 70 (Deposition of Aaron Parker) at 274:21–25, 275:1–9.

Thus, not only is Bratic wrong on the legal standard ("confusion has nothing to do with disgorgement of profits"), he admits he has no evidence of confusion. Moreover, none of PEI's witnesses could provide any information regarding a single instance of confusion. The only person PEI deposed who was allegedly confused, Matthew B. Carroll, testified he was <u>not</u> confused:

> Q. Did you believe there was a connection between the PODS company and the U-Haul company?
> A. At no time.
> Q. Did you think that the companies were working together?
> A. No Ma'am.
> Q. Did you think that U-Haul was affiliated with PODS at that time?
> A. No, I perceived them to be a competitor.
> Q. If you see the word "pods," let's assume you even see it in capital letters –
> A. Yes sir.
> Q. – And you see right next to it "U-Haul" or "U-Box" – you wouldn't think of that as being manufactured by the PODS company?
> A. No, sir.

Roe Ex. 96 (Deposition of Matthew B. Carroll) at 11:23–25, 19:7–9, 48:8–16. Since PEI has no evidence of customer confusion, and since Bratic has no evidence of actual confusion, his testimony regarding disgorgement of profits must be excluded in its entirety.

Because Bratic lacks any evidence of a causal link or any evidence of actual confusion, Bratic chooses merely to *assume* that every U-Box transaction is the result of the word "pod(s)" on the website:

> Q. A customer goes on line. The only search term they use is U-Haul. They go online. They see U-Haul. They also see the word "pod" or "pods" in lower case. Are you assuming, for your analysis, that's an infringing sale?
>
> A. Yes.

Bratic Dep. 213:20–214:1.

> Q. A customer goes online. Puts in the term "U-Haul." Doesn't go to any other search site, just one website. Sees that website and rents a U-Box. In your view is that an infringing sale?
>
> A. After November 2010, it would be an infringing sale because 2010 is when U-Haul began populating its website, its U-Haul website with the word "pod" or "pods."

*Id.* 214:17–215:1.

He makes this assumption even when it would be literally impossible for the consumer to be affected by the word "pod(s)":

> Q. Let's assume a U-Haul employee himself, who understands this business thoroughly, goes online to rent a U-Box. Would you include that as an infringing sale?
>
> A. Yes.

*Id.* 215:15–19.

> Q. You got a PEI employee who has worked there for years, understands everything about the industry and decides he wants to rent a U-Box … And then goes online and rents it. Would that be included?
>
> A. If he goes online … to see -- to U-Haul's website, then certainly.

*Id.* 221:6–14.

Bratic's failure to provide a causal link between profits and the allegedly infringing conduct, and his assumption (therefore) that all sales are attributable to infringement, renders his opinion inadmissible. *See* Phillips Rebuttal Rpt., 15–18. This is not the first time that Bratic's analysis has failed adequately to grapple with causation issues. In *Interplan Architects*, 2010 WL 4065465 at *7 (S.D. Tex. 2010), Bratic opined on behalf of a plaintiff who developed architectural designs for certain convenience stores. Bratic simply identified the number of defendant's stores which incorporated plaintiff's designs and then calculated the gross revenue from all those stores as the basis for his profits calculation.

The court excluded Bratic's testimony because he had "**not demonstrated a causal link** between the alleged infringement of plaintiff's architectural designs and technical drawings, on the one hand, and defendants' gross revenue from the infringing stores on the other." *Id.* at *8 (emphasis added). In other words, it was not enough for Bratic simply to show that plaintiff's designs were used in certain convenience stores, and then take the gross revenue from those stores as a measure of defendants' profits; he was required to present "non-speculative evidence" that the gross revenue of the infringing stores was attributable to the architectural design and appearance of the stores. *Id.* at *7. Here too, Bratic has failed to demonstrate a causal link between U-Haul's gross revenues from its U-Box sales and U-Haul's use of the word "pod" or "pods" on its website. His expert reports and testimony should likewise be excluded.

B. <u>**Bratic's Reasonable Royalty Analysis is Unreliable and Should Be Excluded**</u>

Bratic next opines that PEI should be entitled to a "reasonable royalty" of 5% of U-Haul's gross revenues. Bratic Rpt. at 44–78. The methodology he employs in arriving at that 5% rate, however, is so flawed as to render his opinion inadmissible, just as it was in *Monolithic Power Systems*, 476 F. Supp. 2d at 1155, and *Fenner Investments,* 2010 WL 3911372 at *1–*2. "[A]n expert report on damages, including a reasonable royalty analysis, may not rely on unreasonable inferences or resort to mere speculation or guess." *Monolithic*, 476 F. Supp. 2d at 1154–55.

**First**, Bratic opines that the royalty base for his reasonable royalty analysis includes all gross revenues from the sale of U-Box pods. Bratic Rpt. at 77. But Bratic specifically acknowledges that (a) U-Haul only uses the word "pod(s)" on its website, *id.* at 18-19, 38; and (b) sales through the U-Haul website are only a small proportion of the Company's total sales, *see supra* at p. 6, Roe Ex. 115. Moreover, as discussed in Section A, Bratic has not shown that use of "pod(s)" on the website led to sales of a single U-Box pod. In short, Bratic vastly

overstates the proper royalty base. *See* Phillips Rebuttal Rpt. at 7-14, 42-43, and 62. In excluding Bratic's royalty opinions in *Fenner Investments*, the court specifically criticized Bratic's opinions as "inadequate" because they were based on the "entire market value," rather than revenues that were attributable to the infringement. 2010 WL 3911372 at *1. By failing to account for "the relative significance"—if any—of the word "pod(s)" in contributing to sales of U-Box pods, his opinion in this case is similarly "inadequate" and should be excluded. *Id.*

**Second**, Bratic fails to explain his use of so-called comparable licenses to determine a royalty rate. *See Fenner*, 2010 WL 3911372 at *2 (concluding that Bratic's reasonable royalty analysis was "inadequate" because he "[failed] to support his conclusion that the relief on licenses are comparable to the hypothetical agreements between Plaintiff and Defendants."). Outside the context of this lawsuit, PEI hired a firm (Houlihan Lokey) to value the claimed PODS mark, and that firm valued the mark based on running royalty of 3%—later modified to be even lower. Bratic Rpt. at 6; Roe ¶ 26.a. Bratic, who is a Certified Public Accountant, acknowledges that the Houlihan Lokey analysis was intended to "serve as a valuation basis for financial reporting purposes." Bratic Rpt. at 57. In other words, these valuations were to be incorporated in PEI's financial statements and *certified by the Company* as accurate. Bratic ignores this valuation based solely on an "interview" he conducted with another PEI expert in this case. Bratic does not give any independent reason for this decision; instead, he merely cites the "interview" without disclosing what the expert told him. *Id.* at 76. The *Fenner* court held that Bratic's opinion was "inadequate" because he had relied on an interview with another expert in deciding which agreements were comparable. *Fenner*, 2010 WL 3911372 at *2. For the same reason, his opinion here is "inadequate" and should be excluded.

Disregarding the royalty rate established by PEI's own valuation firm, Bratic relies on an 8% *franchise* fee and a 5% rate from a 1999 agreement between third parties SUSA and Storage Ventures. Bratic Rpt. at 48, 51. Relying on a franchise rate is entirely improper because PEI's franchise agreements convey far more than the right to use "pod(s)," and it is impossible to determine what portion of that rate is exclusively for use of the claimed mark.[5] *See Bandag, Inc. v. Gerrard Tire Co., Inc.*, 704 F.2d 1578, 1582–83 (Fed. Cir. 1983) (rejecting trial court's decision to use a franchise agreement's" royalty and service fee" to calculate damages). Bratic ignores numerous facts that make clear that the SUSA agreement is not a "comparable" license for purposes of his *Georgia-Pacific*[6] analysis:

- The SUSA agreement was signed in 1999. It clearly does not establish a market rate for the licensing of a trademark in October 2010.

- It is not the simple license of a trademark; it is a 300-page joint venture agreement between two companies involving an unusual structure, where one company is permitted to use a mark without a royalty for 180 days, followed by payment of a license fee of 5% of operating revenues, until the use of the trade name stops. Bratic presents no evidence that PEI and U-Haul would—even hypothetically—agree to a comparable structure.

---

[5] In addition to the claimed marks, PEI franchisees receive the right to use proprietary "accounting methods, custom computer software, advertising, sales and promotional techniques, personnel training, the Manual . . ., Patents, equipment and specifications for authorized equipment, methods of inventory and operations control and certain business practices and policies," among other things. Bratic Rpt. at 46 (quoting from a PEI Franchise Agreement).

[6] Bratic applies a fifteen-factor test from a patent infringement case out of the Southern District of New York: *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

- Unlike the Houlihan Lokey analysis, the SUSA agreement involved a different mark, and one not subject to claims of genericness; Bratic offers no evidence that this mark was of comparable value to the claimed PODS marks.
- Significantly, the SUSA agreement was a related-party transaction—not an arm's length transaction between a willing buyer and a willing seller. *See* Bratic Rpt. at 75; Bratic Dep. 144:15–16 ("They were related parties; they were affiliates"). Under these circumstances, the rate used provides no evidence of the market value of a license between PEI and U-Haul.

The SUSA agreement—the only apparent basis for Bratic's selection of a 5% royalty rate—is so far afield from the issues at hand that it could not possibly support Bratic's conclusion. *See Fenner*, 2010 WL 3911372 at *2 ("testimony regarding industry licenses [is] inadequate where expert's testimony failed to provide … context.").

The **third** flaw in Bratic's royalty opinion is that it relies on entirely "unreasonable inferences." *Monolithic*, 476 F. Supp. 2d at 1154–55. "[A]ny royalty-based measure of damages must exhibit a strictly rational correlation between the rights appropriated and the measure of damages applied." *Bandag, Inc.*, 750 F.2d at 920.

Bratic purports to determine what U-Haul would have paid for a "hypothetical license" "*to use the PODS Marks* in the United States," Bratic Rpt. at 49 (emphasis added). But U-Haul never used the "PODS Marks." Instead, U-Haul only ever used the term "pod(s)" *generically* or *descriptively*, as Bratic and PEI's Vice President and General Counsel has repeatedly acknowledged. Bratic Rpt. at 18-19, Roe Ex. 104. This distinction is critical for two reasons: (1) PEI would never have agreed to license its PODS "mark" to be used by U-Haul as a generic term; and (2) U-Haul would never have agreed to pay PEI for the right to use a generic word in

its purely descriptive sense.[7] *See* Phillips Rebuttal Rpt. at 43. Bratic entirely ignores these undeniable facts, and thus draws "unreasonable inferences" about the parties' willingness to enter into *any* hypothetical negotiation—much less one that would involve payment of 5% of U-Haul's gross revenues. For this reason alone, his methodology is entirely unreliable and his opinions should be excluded. *See XpertUniverse, Inc. v. Cisco Sys., Inc.*, No. 09-157-RGA, 2013 WL 936449 (D. Del. March 11, 2013) (rejecting Bratic's reasonable royalty analysis due to "numerous methodological flaws" and because his conclusion "simply makes no sense"); *Monolithic*, 476 F. Supp. 2d at 1155–56 (excluding Bratic's reasonable royalty opinions as "unreliable and inadmissible" because his analysis ignored facts about the parties' products and market forces).

### C. Bratic's Corrective Advertising and Avoided-Costs Opinions Should Be Excluded

Bratic's Report also mentions corrective advertising and avoided costs. But these are not Bratic's own opinions. Bratic acknowledges that he is merely repeating the flawed opinions of another PEI expert, Russell Winer. *See*, *e.g.*, Bratic Rpt. at 5 ("According to Dr. Winer, damages related to corrective advertising are approximately $23.4 million."); Bratic Dep. 35:25–36:3 ("I'm not going to be expressing any opinion on corrective advertising, only to the extent that I'm asked what my understanding was of Dr. Winer's work and his opinions . . . ."), 232:1–19 (Bratic relied on Dr. Winer's work for the report's quantification of claimed avoided cost damages.). Because Bratic admits that he relied solely on another expert for his discussion of

---

[7] As explained in U-Haul's concurrently filed Motion for Summary Judgment, if U-Haul's use of the word pods is descriptive, it is permitted by the descriptive fair use doctrine. *See Int'l Stamp Art, Inc. v. United States Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006).

15

these topics, they should be excluded. *Alphamed*, 432 F. Supp. 2d at 1357 (finding that any portion of Bratic's report that relied solely on another expert's report was inadmissible).

Moreover, corrective advertising requires evidence of actual confusion, plus either (a) past corrective advertising by the plaintiff or (b) plaintiff's financial inability to pay for such advertising in the future. *See Data Race, Inc. v. Lucent Tech., Inc.*, 73 F. Supp. 2d 698, 725–26 (W.D. Tex. 1999) (excluding Bratic's report, in part, because he failed to show that the plaintiff had engaged in any corrective advertising campaign); *see also Lurzer GMBH v. Am. Showcase, Inc.*, 75 F. Supp. 2d 98, 101 (S.D.N.Y. 1998); *accord Thompson v. Fluid Controls*, 305 F.3d 1369, 1382 (Fed. Cir. 2002). Bratic cites no evidence of actual confusion, *see supra* Section A, or any prior corrective advertising by PEI. And, in his deposition Bratic admitted that PEI was financially capable of funding its own corrective advertising campaign. Bratic Dep. 49:21–50:1. His methodology ignores the relevant legal standard and should be excluded.

## III. CONCLUSION

For the above reasons, U-Haul respectfully requests that the Court exclude Bratic's expert reports and proposed testimony.

## **CERTIFICATE OF LOCAL RULE 3.01(G) COMPLIANCE**

U-Haul's counsel has consulted with PEI's counsel in an attempt to resolve this matter, but no agreement could be reached.

Dated: April 18, 2014                    RESPECTFULLY SUBMITTED,


/s/ Leo R. Beus
Leo R. Beus (*pro hac vice*)
BEUS GILBERT PLLC
701 North 44th Street
Phoenix, AZ 85008-6504
Telephone: (480) 429-3000
Facsimile: (480) 429-3100
lbeus@beusgilbert.com

William H. Brewster
R. Charles Henn, Jr.
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

William P. Cassidy, Jr.
Johnson & Cassidy, P.A.
324 S. Hyde Park Ave., Suite 325
Tampa, FL 33606
wcassidy@jclaw.com
Telephone: (813) 699-4857
Facsimile: (813) 235-0462

*Attorneys for U-Haul International, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **U-HAUL INTERNATIONAL INC.'S MOTION TO EXCLUDE THE EXPERT REPORTS AND TESTIMONY OF WALTER BRATIC AND MEMORANDUM IN SUPPORT** was served via the Court's CM/ECF system on the following counsel for Plaintiff/Counterclaim-Defendant as follows:

Joseph Diamante (jdiamante@stroock.com)
Charles E. Cantine (ccantine@stroock.com)
Vivian Luo (vluo@stroock.com)
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038-4982

Jonathan B. Sbar (jsbar@rmslegal.com)
Raul Valles, Jr. (rvalles@rmslegal.com)
ROCKE MCLEAN & SBAR
2309 MacDill Avenue
Tampa, Florida 33629

Dated: April 18, 2014

*/s/ Leo R. Beus*
Leo R. Beus