IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| PODS Enterprises, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> U-Haul International, Inc., <br><br> Defendant. | Case No.  8:12-cv-01479-JDW-MAP |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
TO EXCLUDE THE EXPERT TESTIONY OF RUSSELL S. WINER**

PODS Enterprises, Inc., ("PODS") hereby opposes U-Haul International, Inc.'s ("U-Haul") Motion To Exclude The Expert Testimony of Dr. Russell S. Winer. (D.I. 152 " Def.'s Br.").

**I.     PRELIMINARY STATEMENT**

U-Haul's motion to exclude Dr. Winer is consistent with its efforts to evade the ramifications of its infringing conduct by denying the strength, fame, and protectability of PODS' trademark and to deny the damage that its infringing conduct has caused PODS.

Trademark law is driven by how a mark is perceived by consumers in the marketplace. Dr. Winer is the chairman of New York University's (NYU) Department of Marketing.  His thirty-six years of experience in the field of marketing will help the jury understand how: (1) consumer brands differentiate themselves from competing brands, (2) U-Haul's misappropriation of the PODS mark has affected consumer perceptions of the PODS' brand, and (3) U-Haul's misappropriation of PODS' trademark has damaged PODS by altering consumer purchasing behavior in the moving and storage industry to the detriment of PODS.  Grounded in his

extensive professional experience and based on universally accepted marketing principles, Dr. Winer's opinions will be both relevant and helpful to the jury. In sum, Dr. Winer's testimony satisfies all the requirements for admissibility set forth in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

U-Haul's own expert confirms that Dr. Winer is well-respected in the marketing field. Cantine Ex. 42, Joachimsthaler Tr. 36:19-24 (D.I. 180).[1] Contrary to U-Haul's position, the mere fact that one court found his report insufficient does not preclude him from offering expert testimony in future cases with different facts and issues. *See, e.g., City of Pomona v. SQM N. Am. Corp.,* No. 12-55147, No. 12-55193, 2014 U.S. App. LEXIS 8308, at *16 n.3 (9th Cir. May 2, 2014) (declining to exclude expert simply because he had been excluded in a past case). In fact, certain of U-Haul's experts have also been heavily criticized or excluded in part in past cases. *See, e.g., Juicy ZCouture, Inc. v. L'Oreal USA, Inc.,* No. 4-CIV 7203, 2006 WL 1012939, at *26 (S.D.N.Y. April 19, 2006) ("While there were other problems with the [Phillip] Johnson survey, the issues already discussed prevent the survey from contributing any meaningful information about the likelihood of actual confusion from [Defendant's] use of the name Juicy Wear for a lipstick. This survey is so fundamentally flawed, that it would have been excluded from evidence at a jury trial."); Cantine Ex. 43, Ford Tr. 9:21-10:9 (partially excluding Dr. Ford from offering testimony because it would confuse the jury). Likewise, Dr. Winer's inadvertent late disclosure of his exclusion in *Novalogic* is not grounds for preclusion, particularly since he

---

[1] In Support of this Motion, PODS submits the Omnibus Declaration of Charles E. Cantine ("Cantine Ex. __"); the transcript of the deposition of Russell S. Winer is annexed as Cantine Ex. 41 ("Winer Tr."). The Expert Report of Dr. Russell S. Winer is annexed to the Declaration of Shiveh Roe in Support of U-Haul's Motion ("Roe Ex. __") as Roe Ex. 33 ("Winer Rep."); the Rebuttal Expert Report of Dr. Russell S. Winer as Roe Ex. 34 ("Winer Rebuttal Rep."); the Supplemental Expert Report of Dr. Russell S. Winer as Roe Ex. 35 ("Winer Supp. Rep.) (D.I. 157-3, 157-4 and 157-5 respectively).

was unaware of the court's decision to exclude him.  Winer Tr. 231:8-12 ("I was never deposed, and I don't know the outcome of the case.")

U-Haul's overreaching is patently on display in its effort to exclude all of Dr. Winer's opinions without even arguing, much less establishing, why all of his opinions should be excluded.  For instance, U-Haul does not specifically dispute that Dr. Winer is qualified to testify concerning:

- The importance of the Internet as a marketing channel for PODS and its competitors in the moving services and storage industry; (Winer Rep. ¶¶82-85);

- The similarity of advertising media used by the parties; (*id.* ¶130)

- The implications of U-Haul's misuse on PODS' ability to continue to operate its franchisee network; (*id.* ¶¶ 15(f), 72, 98-103)

- The similarity of the parties' dealer networks and client base; (*id.* ¶130)

- The similarity of the parties' goods; (*id.* ¶127)

- How research on consumer behavior related to eye-scanning and web-viewing patterns bears on U-Haul's misappropriation of PODS' mark;  (*id.* at ¶¶94-97)

- His critique of Dr. Wendy Wood and Scott Phillips. (Winer Rebuttal Rep. ¶¶2, 5).

In the alternative, U-Haul argues that Dr. Winer's opinions on (1) confusion, (2) genericness, (3) fame, (4) the value of PEI's brand, and (5) damages should be excluded because they were not grounded in a reliable methodology or based on reliable "empirical evidence."  But, as set forth below, Dr. Winer has rigorously applied principles of marketing analysis to the facts of this case and considered "empirical" evidence such as a Digital Research, Inc. ("DRI") study of consumers who purchase moving and storage services and Dr. Eugene Ericksen's survey in formulating his opinions.  In short, U-Haul's arguments for exclusion of Dr. Winer's

3

testimony are little more than critiques about the weight and persuasiveness of the evidence underlying his expert opinions. However, it is beyond dispute that "[a]ny weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility." *Southeastern Metals Mfg. Co. v. Florida Metal Products, Inc.*, 778 F. Supp. 2d 1341, 1344 (M.D. Fla. 2011). For these reasons, the Court should deny U-Haul's Motion and allow Dr. Winer's testimony because it is relevant and reliable, and will aid the jury in deciding the disputed issues.

### I. DR. WINER'S OPINIONS

Dr. Winer's report and testimony demonstrate that his opinions are well supported by, and connected to, the actual facts of this case and are based on a rigorous application of marketing research and principles to those facts.  Specifically, he relied upon a number of sources of information pertaining to PODS and its mark, including the DRI study, Dr. Ericksen's survey results, and U-Haul's usage of PODS' mark. *See* Winer Rep. ¶12; *id.* at Appx. B; Winer Supp. Rep. Appx. A.  He then used that information to systematically examine a variety of key branding elements associated with both PODS and U-Haul.

For example, Dr. Winer evaluated the fame, or public awareness, associated with the PODS mark to assess PODS' brand equity, which is defined as the "set of brand assets and liabilities linked to a brand, its name and symbol that add to or subtract value from the value provided by the product or service to a firm and/or to that firm's customers."  Winer Rep. ¶25. To that end, he considered the results of PODS' annual market research reports.  *Id.* ¶107; Winer Tr. 83:12-20.  Based upon his analysis of those surveys, he opined that "[t]he fame associated with the PODS brand name has helped established PODS as a viable option in a variety of moving and storage scenarios."  Winer Rep. ¶108.  In addition, to corroborate his opinion that

PODS is a well-known brand, Dr. Winer also analyzed the fame survey prepared by Dr. Ericksen. Winer Supp. Rep. ¶¶6-8.

In evaluating whether U-Haul's misappropriation of PODS' trademark would affect the perceptions of the PODS brand in the minds of consumers, Dr. Winer considered each of the eight factors discussed in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979) because they "follow the types of information that I, as a marketing expert, would consider." Winer Rep. ¶¶124-134.

Dr. Winer also evaluated the damage to PODS' brand caused by U-Haul's misuse of the PODS mark, and opined:

1. "U-Haul deprives PEI of the ability to be able to communicate clearly to consumers that it has a unique, branded product [and that t]his misuse leads to customer confusion, lost sales and loss of the value of the brand." Winer Rep. ¶136.

2. "confused consumers will wrongly believe that the PODS brand represents lower quality products." *Id.*

3. that U-Haul's misuse of PODS mark contributes to gendercide. *Id.*, and

4. that U-Haul's misuse of the PODS mark "reduces the ability of PEI to operate a successful franchisee operation, selling new franchisees and collecting renewal fees based on the value of its trademark." *Id.*

Dr. Winer outlined multiple remedies to remediate some of the damage caused by U-Haul's actions. He opined that U-Haul should at least: (1) cease using the PODS mark on its website. Winer Rep. ¶153, (2) pay PODS the amount that U-Haul would have paid to generate the number of clicks that were acquired by misusing the PODS trademark and related terms on its website. Winer Rep. ¶154, Appx. D, and (3) provide funds to PODS to engage in corrective

advertising, setting forth precisely how that campaign would occur. *Id.* ¶155. To calculate the cost of the corrective advertising campaign, Dr. Winer assumed that it would be conducted pursuant to accepted marketing guidelines. Winer Rep. ¶¶156-157, Appx. D. Based on that reasonable assumption and information concerning costs of specific forms of advertising provided to him by PODS, he used simple multiplication to calculate the cost of the advertising campaign. *Id.* at Appx. D.

In addition, Dr. Winer utilizes his specialized knowledge of consumer behavior to point out deficiencies in the evidence that U-Haul relies on to support its claim that "PODS" is a generic term. *Id.* ¶¶116-123; Winer Rebuttal Rep. ¶¶60-63, 65. He evaluates the use of the term "pods" in other industries and addressed its minimal impact on the relevant consumer public. Winer Rep. ¶118; Winer Rebuttal Rep. ¶61. Dr. Winer also contextualizes recent generic uses of PODS' mark. Specifically, he explains why evidence of consumer misuse of PODS' mark could be attributable to U-Haul's infringement. Winer Rebuttal Rep. ¶62. In addition, he explains why the misuse of PODS' mark in government documents and financial statements has a minimal impact on the consuming public. *Id.* ¶65. Lastly, Dr. Winer contextualizes PODS' efforts to police the use of its mark, evaluating PODS' own efforts to minimize internal and external misuse. *See* Winer Rep. ¶¶111-114; Winer Rebuttal Rep. ¶64. He also confirms the difficulties that PODS faces in policing consumer misuse on the Internet. Winer Rebuttal Rep. ¶63.

## II. ARGUMENT

Dr. Winer's testimony is admissible if he is qualified, his methodology is reliable, and his testimony assists the trier of fact. *Quiet Technology DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F. 3d 1333, 1340 (11th Cir. 2003). "Standards of strict scientific reliability, such as testability and peer review, do not apply to all forms of expert testimony." *Camacho v. Nationwide Mut. Ins.*

*Co.*, Case No. 1:11-CV-3111, 2014 WL 1396427, at *19 (N.D. Ga. Mar. 31, 2014).  "[N]ot every opinion calls for or requires testing." *Remy Inc. v. Tecnomatic, S.P.A.*, 1:11-CV-00991, 2012 WL 515997, at *6 (S.D. Ind. Jan. 25, 2012) report and recommendation adopted, *Remy v. Tecnomatic, S.P.A.,* Case No. 1:11-CV-00991, 2012 WL 515981 (S.D. Ind. Feb. 15, 2012). Particularly where an expert's specialized knowledge is not of a scientific nature – like Dr. Winer's in this case –the "most relevant reliability concerns" under Rule 702 are the expert's "personal knowledge, education, and experience." *Corey Airport Servs., Inc. v. City of Atlanta*, 632 F. Supp. 2d 1246, 1265 (N.D. Ga. 2008), *rev'd in part on other grounds sub nom., Corey Airport Servs., Inc. v. De Costa*, 186 F. App'x 987 (11th Cir. 2009); *accord Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331, 1338 (11th Cir. 2009) ("A district court may decide that nonscientific expert testimony is reliable based 'upon personal knowledge or experience.'") (quoting *Kumho*, 526 U.S. at 151).

Dr. Winer's experience in the marketing analysis and consulting profession, as well as his research and writing in the field, constitute "specialized knowledge" for purposes of determining the admissibility of his testimony and report. *See Half Price Books, Records, Magazines, Inc. v. Barnesandnoble.com, LLC*, No. 3:02-cv-2518, 2004 U.S. Dist. LEXIS 23691, at *11 (N.D. Tex. Nov. 22, 2004).  As long as his opinions are reliable, whether they could be different or better is a matter for trial, not for a *Daubert* Motion. *In re Paoli R.R. PCB Litig.*, 35 F. 3d 717, 744 (3d Cir. 1994) ("[plaintiffs] do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable").  Experts are entitled to rely upon "reasonable assumptions" in formulating their opinions. *Southeastern Metals,* 778 F. Supp. 2d at 1344.  Any claimed defects in Dr. Winer's expert analysis bear on the weight, not the

7

admissibility, of his opinions. *Quiet Tech.*, 326 F.3d at 1344 "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")(citation omitted).

### A. DR. WINER IS QUALIFIED TO OFFER TESTIMONY ABOUT THE LIKELIHOOD OF CONFUSION FACTORS THAT WILL BE CONSIDERED BY THE JURY

U-Haul admits that Dr. Winer specifically states in his report that he is not offering any opinion on the likelihood of confusion. Def.'s Br. at 10. Thus, U-Haul seeks to exclude an opinion that Dr. Winer is not offering. U-Haul next wrongly seeks blanket preclusion of Dr. Winer's testimony as to *all* of the *Sleekcraft* factors based on his purported errors in analyzing *some* of the *Sleekcraft* factors and his alleged failure to conduct an unnecessary consumer survey. Def.'s Br. at 10-14.

As a threshold matter, U-Haul chides Dr. Winer for offering evidence as to the various likelihood of confusion factors while not offering an ultimate opinion on confusion. However, Dr. Winer is not required to set forth a legal conclusion in order to offer evidence as to the various underlying factors. *See Walker v. Soo Line R.R. Co.,* 208 F.3d 581, 587 n.2 (7th Cir. 2000) ("Nothing in [Rule Fed.R.Evid. 704], or any other rule governing expert testimony, requires an *expert* to opine on the ultimate issue in order to have his testimony admitted."); *Ford v. Tidewater Marine LLC*, No. 3:04-cv-556, 2005 U.S. Dist. LEXIS 45921, at *6 (M.D. Fla. Aug. 29, 2005) ("Contrary to Plaintiffs argument, expert testimony need not conclusively prove one or more of the ultimate issues of the case").

Likewise, the mere fact that Dr. Winer did not specifically consider the Eleventh Circuit's seven-factor test should not preclude him from offering testimony on each of the

likelihood of confusion factors. *Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*, No. 1:08-CV-2376, 2010 WL 3075318, at *5 (N.D. Ga. Aug. 4, 2010) (allowing a marketing expert to testify as to likelihood of confusion factors even though she did not apply the Eleventh Circuit's seven-factor likelihood of confusion test on the ground that the seven-factor test "is not a standard for the admissibility of evidence"); *Quiet Tech.*, 326 F. 3d at 1345-46; *Southern States Coop., Inc. v. Melick Aquafeeds, Inc.,* 701 F. Supp. 2d 1348, 1366 (M.D. Ga. 2010) *aff'd sub nom. Southern States Co-op., Inc. v. Melick Aquafeeds, Inc.,* 476 F. App'x 185 (11th Cir. 2012) ("normally, failure to include variables will affect the analysis' probativeness, not its admissibility"). In fact, there is extensive overlap between the *Sleekcraft* factors considered by Dr. Winer and the factors considered by the Eleventh Circuit in assessing likelihood of confusion. *Compare AMF Inc. v. Sleekcraft Boats*, 599 F.2d at 348-49 *with Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). Thus, Dr. Winer's testimony will necessarily touch on the various issues that the trier of fact will consider in determining likelihood of confusion and is therefore relevant.

U-Haul does not dispute that Dr. Winer is qualified to offer testimony as to 1) the similarity of the parties' goods; 2) the similarity of advertising media used by the parties; and 3) the similarity of the parties' retail outlets, each of which form part of both the Eleventh Circuit and *Sleekcraft* tests. Dr. Winer has laid a proper foundation to testify as to each of those three factors. Specifically, Dr. Winer has considered the function of U-Haul's and PODS' goods and services. Winer Rep. ¶127. He considered U-Haul's and PODS' use of internet advertising as well as both companies' reliance on dealers and/or franchisees to sell their products. Winer Rep. ¶130. Because Dr. Winer's testimony will help the jury understand those factors, his testimony should be permitted. *See Flowers Bakeries*, 2010 WL 3075318, at *5; *Schwab v. Philip Morris*

9

*USA, Inc.*, No. CV 04-1945, 2005 WL 2401647, at *4-5 (E.D.N.Y. Sept. 29, 2005) ("Advertising methodologies are esoteric; the average juror could be helped by an explanation of how they work and were used by defendants.")

Dr. Winer should also be permitted to testify about PODS' extensive marketing efforts and how such efforts reflect and contribute to the strength of the PODS mark, which is relevant to the jury's determination of infringement.  Dr. Winer conducted an extensive review of PODS' advertising efforts to build brand equity.  *See* Winer Rep. ¶¶105-106.  U-Haul claims that Dr. Winer's testimony regarding the strength of the PODS mark should be excluded because he does not address the mark's *conceptual* strength.  Def.'s Br. at 10-11.  However, U-Haul itself recognizes that the strength of a mark does not depend only upon its conceptual strength. *Id*. Indeed, in evaluating the strength of a mark, courts in the 11th Circuit have considered factors concerning the commercial strength of the mark including, *inter alia*, "the extent of a mark's use, taking into consideration the amount of advertising and promotion done under the mark." *Churchill Downs Inc. v. Commemorative Derby Promotions, Inc.*, Case No. 1:12-CV-0517, 2013 WL 5350830, at *6 (N.D. Ga. Sept. 23, 2013).  U-Haul does not dispute Dr. Winer's ability to provide helpful testimony to the jury on such factors relevant to evaluating to the commercial strength of the PODS mark. Because PODS advertising efforts bear on the strength of the PODS mark, Dr. Winer should be permitted to offer testimony as to that issue. *See Flowers Bakeries*, 2010 WL 3075318, at *4-5; *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, Case No. 09-61490-Civ., 2011 WL 2295269, at *2 (S.D. Fla. June 8, 2011) (allowing marketing expert to testify as to "brand strategy, the value, strength and distinctiveness of the marks").

U-Haul mischaracterizes Dr. Winer testimony by suggesting that he "testified that his analysis of the … the similarity of the marks, was based on the terms out of context, rather than

10

as they are seen in the marketplace." Def.'s Br. at 11.  As clearly stated in his report, Dr. Winer examined how PODS' trademark appeared in U-Haul's website and how it was associated with U-Haul from Google searches.  Winer Rep. ¶¶ 139-140.  Because Dr. Winer has laid a proper foundation for testifying as to the similarity of the parties' marks as they are used in context, he should not be excluded from assisting the jury with its inquiry on this subject. *Flowers Bakeries*, 2010 WL 3075318, at *4 (allowing marketing expert to testify as to similarities and differences between parties' brand name, logo, packaging and product presentation.).

Dr. Winer relied upon his knowledge of consumer behavior to opine that moving and storage services do not require a consumer to spend a long time collecting and processing information and should thus be categorized as "low involvement." Specifically, he explained that the distinction between "low involvement" and "high involvement" goods and services turned on the amount of time that a consumer invests in "collecting and processing information." Winer Tr. 178:5-17.  Based on the limited amount of time that consumers for moving and storage services spent in making their purchasing decisions, he concluded that moving and storage services were best categorized as "low involvement."  Winer Tr. 180:9-14.  His application of marketing principles to PODS research as to the amount of time that consumers for moving and storage services spent in making their purchasing decisions is proper. *LifeScan, Inc. v. Shasta Techs., LLC*, Case No. 12-cv-06300, 2013 U.S. Dist. LEXIS 143510, at *26 (N.D. Cal. May 21, 2013) (allowing Dr. Joachimsthaler to rely upon "his significant experience in the field, his academic research, and the market research that [plaintiff] itself has conducted over the years."). Dr. Winer properly applied marketing principles to arrive at his opinion, and therefore the issue of whether he should have used different data is for the trier of fact to decide. *See Quiet Tech.*, 326 F.3d at 1341; *Handi-Craft Co. v. Action Trading*, *S.A.*, Case No. 4:02-cv-1731, 2004 U.S. Dist. LEXIS

11

31596, at *23 (E.D. Mo. May 21, 2004) ("Any flaws in the materials provided by defendant and relied upon by Mr. Martin can be pointed out at trial."). Again, here the issue is reliability and not whether Dr. Winer is correct.

Lastly, U-Haul criticizes Dr. Winer for not conducting a consumer survey. Def.'s Br. at 11-13. However, the Eleventh Circuit has "moved away from relying on survey evidence" as critical in proving confusion. *See Frehling Enters.,* 192 F.3d at 1341 n.5 (holding that the absence of survey evidence was not dispositive on the issue of actual confusion); *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1167 n.10 (11th Cir. 1982) (holding that survey evidence was not necessary to determine likelihood of confusion in light of other evidence of confusion); *Bogart, LLC v. Ashley Furniture Indus., Inc.*, Case No. 3:10-CV-39, 2012 WL 3745833, at *11 (M.D. Ga. Aug. 28, 2012) (holding that the absence of survey evidence was not dispositive on the issue of actual confusion). Because survey evidence is not required to prove confusion in the Eleventh Circuit, the fact that Dr. Winer did not conduct his own consumer survey does not justify exclusion of his opinions. *See, e.g., LifeScan, Inc.*, 2013 U.S. Dist. LEXIS 143510, at *26 ("That Dr. Joachimsthaler did not conduct a survey pertaining to consumer confusion in this case is not dispositive as to the admissibility of his testimony.").

### B.   DR. WINER IS QUALIFIED TO TESTIFY ABOUT THE IMPLICATIONS OF THE PUBLIC'S AWARENESS OF PODS BRAND NAME

Brand awareness is a key factor in determining the value of a brand. Winer Rep. ¶¶29, 59-60. Dr. Winer's testimony as to the public's awareness of PODS' brand will therefore aid the trier of fact in determining the value of PODS' mark. Nonetheless, U-Haul seeks to exclude Dr. Winer's opinion based on flimsy criticisms of the evidence he relied upon in forming his opinion. In so doing, U-Haul conveniently disregards the fact that Dr. Winer essentially utilized the same methodology that U-Haul's own marketing expert, Dr. Joachimsthaler, used to opine as

12

to PODS' fame. Like Dr. Joachimsthaler, Dr. Winer examined survey data prepared by others to determine whether PODS' is well-known. Cantine Ex. 42, Joachimsthaler Tr. 10:13-11:2.

Dr. Winer's methods for assessing public awareness of PODS' mark are proper. He appropriately relied on PODS' annual market research reports to opine that PODS' is a well-known brand. *See, e.g., LifeScan, Inc.*, 2013 U.S. Dist. LEXIS 143510, at \*\*25-27 (allowing Dr. Joachimsthaler to rely upon internal market research in offering his opinions in a trademark case). Dr. Winer also appropriately relied on his knowledge of marketing principles to evaluate PODS' advertising expenditures to determine whether PODS is well-known. *Id*. Finally, it was appropriate for Dr. Winer to consider and rely upon Dr. Ericksen's fame survey to corroborate his initial conclusions regarding the public's awareness of PODS' brand. *Masforce Europe, BVBA v. Mastry Marine & Indus. Design, Inc.,* Case No. 811-CV-1814, 2013 WL 8148666, at \*4 (M.D. Fla. Aug. 27, 2013)("An expert may rely on the reliable opinions of another expert in forming his own opinions."); Fed.R.Evid. 702, Committee Notes, 2000 Amendments ("The term 'data' is intended to encompass the reliable opinions of other experts.").

Having utilized proper methods to arrive at his opinion, the fact that Dr. Winer did not initially consider the October 2013 awareness data does not warrant exclusion of his opinions. In any event, Dr. Winer has now considered the most recent 2013 DRI report (Winer Supp. Rep. ¶8, Appx A). Whether he should have used different data is for the jury to decide. *Quiet Tech.*, 326 F.3d at 1341; *Handi-Craft*, 2004 U.S. Dist. LEXIS 31596, at \*23.

        C.    **DR. WINER IS QUALIFIED TO TESTIFY ABOUT THE EVIDENCE U-HAUL RELIES ON IN ASSERTING THE PODS MARK IS GENERIC.**

Dr. Winer does not offer an ultimate opinion on whether the PODS mark is generic. Thus, U-Haul again seeks to exclude an opinion that Dr. Winer does not offer. Dr. Winer's specialized knowledge of consumer behavior, however, will allow him to assist the trier of fact

13

in understanding the deficiencies in the evidence that U-Haul relies upon to support its contention that "PODS" is a generic term. Winer Rep. ¶¶116-120; Winer Rebuttal Rep. ¶¶61-65. He will also assist the trier of fact in evaluating PODS' efforts to protect its mark with "best practices." Winer Rep. ¶¶111-113; Winer Rebuttal Rep. ¶64.

Dr. Winer is qualified to opine on the lack of evidentiary support for U-Haul's claim that PODS is a generic term based upon his knowledge and experience is assessing how consumers perceive the PODS mark. *See, e.g., Half Price Books,* 2004 U.S. Dist. LEXIS 23691, at \*\*9-17 (allowing marketing expert to offer opinion regarding genericness based upon his knowledge of how consumers would perceive a term). He is likewise qualified to testify about PODS' efforts to protect its mark based upon his understanding of best practices from a marketing perspective. *See, e.g., Noe v. Metro. Gen. Ins. Co.,* No. 1:11-CV-02026, 2012 WL 7760143, at \*3 (N.D. Ga. Dec. 10, 2012); *U.S. v. Hernandez*, No. 11-20076, 2012 U.S. Dist. LEXIS 8552, at \*4 (E.D. Mich. Jan. 25, 2012).

U-Haul criticizes Dr. Winer for relying upon "alleged facts" in opining that PODS has been successful in more than 250 cease and desist actions. Def.'s Br. at 17-18 citing Winer Rep. at ¶¶48-49. However, Dr. Winer obtained that information from documents produced in discovery. Winer Rep. ¶111 ("[w]e have more than 250 successful cease and desist actions" citing, among other cease and desist letters, Cantine Ex. 44, PODS-0000279). It was therefore proper and reasonable for him to rely upon that information as part of his comprehensive evaluation of PODS' efforts to protect its brand from infringement and dilution. *See* Winer Rep. ¶111; *Feliciano v. City of Miami Beach,* No. 10-23139-CIV, 2012 WL 488105, at \*4 (S.D. Fla. Feb. 14, 2012)(expert's "reliance on a statement provided by counsel for the defendants does not render his opinion excludable."); *Khadera v. ABM Indus. Inc.*, No. C08-0417, 2011 WL

14

6813454, at *4 (W.D. Wash. Dec. 28, 2011) ("Defendants argue that Dr. Abbott 'made no effort to independently assess or verify the data provided to him by Plaintiffs' counsel.' But Defendants have pointed to no authority requiring an expert witness to undertake such a responsibility, nor is the Court aware of any.").

U-Haul also criticizes Dr. Winer for opining that PODS had taken immediate steps to remove a limited number of erroneous posters from inside certain containers because he had not seen the posters himself. Def.'s Br. at 18. However, Dr. Winer based his opinion on the *response* to the posters on information that was provided to him by PODS' personnel. Winer Tr.147:14-152:11. It was not necessary for him to actually observe the posters in question to opine as to the propriety of PODS' efforts to remediate discrete instances of internal misuses of its mark that are contrary to best practices. *See Remy Inc.*, 2012 WL 515997, at **4-5.

U-Haul also criticizes Dr. Winer for his alleged failure to review other evidence bearing on the issue of genericness, including Dr. Leonard's expert report. Def.'s Br. at 18. However, the fact that Dr. Winer had not yet reviewed Dr. Leonard's report at the time of his deposition or other materials bearing on the ultimate issue of genericness does not justify exclusion of his opinions relating to evidence that may bear on the issue. This is an issue U-Haul can raise on cross-examination. *See Quiet Tech.*, 326 F.3d at 1341; *Handi-Craft Co.*, 2004 U.S. Dist. LEXIS 31596, at *23.

### D. DR. WINER IS QUALIFIED TO OFFER TESTIMONY ABOUT THE HARM THAT U-HAUL'S MISUSE HAS CAUSED PODS

U-Haul's litany of criticisms regarding Dr. Winer's analysis of damages incurred by PODS as a result of U-Haul's infringement are little more than disagreements with the substance of Dr. Winer's opinions that do not support exclusion. First, U-Haul criticizes Dr. Winer for not "actually evaluat[ing] whether PEI's brand was in fact its most valuable asset." Def.'s Br. at 20.

NY 75059592

Dr. Winer did not specifically make such a claim in his expert report and U-Haul failed to ask Dr. Winer why he came to that conclusion at his deposition. Of course, Dr. Winer could have reasonably concluded that PODS was no different than the many companies whose mark and the goodwill associated therewith is their most valuable asset based upon his expertise in marketing and understanding of PODS' organizational structure.

Second, U-Haul argues that Dr. Winer did not analyze the value of the brand to PODS' franchisees before he concluded that it had value. Def.'s Br. at 21. But such an analysis was unnecessary in light of a brand's inherent and continuing value to a franchisee. Dr. Winer is qualified to provide reliable testimony as to such value based upon his knowledge of marketing principles and research. Winer Rep. ¶¶102-103.

Third, U-Haul takes issue with Dr. Winer's opinion that its misuse of PODS' mark caused dilution. Def.'s Br. at 21. However, it is clearly reasonable for him to assume that U-Haul's admitted use of PODS' mark as a generic term harmed PODS (specifically the distinctiveness of the PODS mark) based upon his extensive experience in the field as well as his understanding of general marketing principles. Winer Rep. ¶¶42-52. Indeed, such a result is consistent with case law on the subject. *See Eventide Inc. v. DOD Elecs. Corp.*, No. 93 CIV. 2713, 1995 WL 239044, at *17 (S.D.N.Y. Apr. 24, 1995) (finding a competitor's generic use of a trademark would "likely dilute" the value of the trademark).

      **E.    DR. WINER IS QUALIFIED TO OFFER TESTIMONY REGARDING THE AMOUNT OF DAMAGES THAT U-HAUL'S MISUSE OF PODS' MARK HAS CAUSED PODS**

U-Haul seeks exclusion of Dr. Winer's opinion that it should have to pay PODS $12.9 million for using PODS on its website. Def.'s Br. at 24. However, U-Haul fails to explain why Dr. Winer's methodologies are erroneous. Significantly, U-Haul does not dispute that Dr. Winer

NY 75059592

reliably determined the amount of clicks resulting from searching for a keyword including "PODS." *See* Winer Rep. ¶¶145-146, Appx. D. Nor could it because its own expert (i) does not dispute the 18.23 million number of "PODS" internet searchers (Roe Ex. 4, Hochman Rep. pp. 25, 28); (ii) admits the studies that Dr. Winer relies upon to determine the click through rate are "reputable" (Cantine Ex. 45, Hochman Tr. 240:2-15); and (iii) has previously relied on the same source that was used to determine the cost per click that Dr. Winer relied upon to arrive at the total of $12.88 million in avoided costs (Winer Rep., Appx. D); *compare* Roe Ex. 32, Smith Rept. Appx B. *with* Cantine Ex. 45, Hochman Tr. 14:24-15:7, 70:24-71:7, 119:20-120:3; 120:13-19; 204:12-23. In short, U-Haul's brief is bereft of any justification that would warrant exclusion of Dr. Winer's opinion regarding avoided costs.

U-Haul's argument to preclude Dr. Winer's opinion regarding damages for corrective advertising likewise fails. U-Haul does not challenge the formula that Dr. Winer used to arrive at the $23.9 million figure—i.e., taking the audience multiplied by impression. *See* Winer Appx. D. Indeed, U-Haul's expert agrees that calculating corrective damages requires first calculating the total audience. Cantine Ex. 45, Hochman Tr. 287:25-288:13. U-Haul criticizes Dr. Winer for relying on Chris Smith, PODS search engine expert's calculation of the audience. (Def.'s Br. at 23.) But such reliance was appropriate and necessary as Dr. Winer needed Mr. Smith to calculate the audience from data acquired from Experian because U-Haul withheld from PODS the information that U-Haul's expert used to calculate the audience. Cantine Ex. 46, D.I. 111 at 6, 11 (citing Cantine Ex. 45, Hochman Tr. 256:3-258:22) (data only produced in response to a subpoena to U-Haul's rebuttal expert). Contrary to U-Haul's argument (Def.'s Br. at 23), there is nothing improper about Dr. Winer's reliance upon Mr. Smith's expert report to determine the amount of misimpressions caused by U-Haul's misuse of PODS mark. *See Masforce Europe,*

17

2013 WL 8148666, at *4; Fed. R. Evid. 702, Committee Notes, 2000 Amendments ("The term 'data' is intended to encompass the reliable opinions of other experts.").

Second, U-Haul takes issue with Dr. Winer's assumption that each visit to its website constitutes a misimpression. Def.'s Br. at 22-23. However, U-Haul's own expert opined that 4-5 impressions are required to correct a single misimpression received by each visitor. Roe Ex. 4, Hochman Rep. pp. 29-30. However, Dr. Winer was more conservative and only calculated costs of delivering one impression to each visitor, and hence provided a more conservative methodology that that of U-Haul's expert. *Compare id. with* Winer Appx. D. In forming his opinion, Dr. Winer relied upon his observations and academic literature that indicated that "the pairing of "U-Box" and "pods" specifically as tabs and links on its website is particularly likely to result in consumer misimpressions and therefore harm to PEI." Winer Rebuttal Rep. ¶52. U-Haul's disagreement with his application of the academic literature to the facts of this case is an issue for cross-examination. *See Quiet Tech.* 326 F.3d at 1341. In any event, "[a]n expert witness … may assume liability for purposes of calculating damages" *Pandora Jewelers 1995*, 2011 WL 2295269, at *3. Finally, U-Haul's brief does not criticize his methodology in calculating the cost per impression or of calculating the $23.9 million dollars for corrective advertising.

NY 75059592

### III. CONCLUSION

For the foregoing reasons, U-Haul's motion should be denied.

Date:  May 12, 2014

                                                Respectfully submitted,

|  |  |
|---|---|
|  | */s/ Charles E. Cantine* |
| Jonathan B. Sbar, FBN 131016 | Joseph Diamante |
| Raul Valles, Jr., FBN 148105 | Charles E. Cantine |
|  | Jason M. Sobel |
| ROCKE MCLEAN & SBAR, P.A. | Vivian Luo |
| 2309 S. MacDill Avenue | Admitted *Pro Hac Vice* |
| Tampa, FL 33629 |  |
| Phone: 813-769-5600 | STROOCK & STROOCK & LAVAN LLP |
| Fax: 813-769-5601 | 180 Maiden Lane |
| Email: jsbar@rmslegal.com | New York, New York |
|        rvalles@rmslegal.com | Phone: 212-806-5400 |
|  | Fax: 212-806-6006 |
|  | Email: jdiamante@stroock.com |
|  |        ccantine@stroock.com |
|  |        jsobel@stroock.com |
|  |        vluo@stroock.com |

*ATTORNEYS FOR PLAINTIFF, PODS ENTERPRISES, INC.*

NY 75059592

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic mail to the following:

.
          R. Charles Henn, Jr.
          William H. Brewster
          Jessica A. Pratt
          Dennis L. Wilson
          KILPATRICK TOWNSEND & STOCKTON, LLP
          Suite 2800
          1100 Peachtree St.
          Atlanta, GA 30309-4530
          Tel: 404-815-6500
          Email: chenn@kilpatricktownsend.com
                  bbrewster@kilpatricktownsend.com
                  japratt@kilpatricktownsend.com

          William P. Cassidy, Jr.
          JOHNSON & CASSIDY, P.A.
          324 S. Hyde Park Avenue, Suite 325
          Tampa, Florida 33606
          Tel. 813-699-4857
          wcassidy@jclaw.com

          Leo R. Beus
          BEUS GILBERT PLLC
          701 North 44th Street
          Phoenix, AZ 85008
          Tel: 480.429.3001
          Email: lbeus@beusgilbert.com

*Attorneys for Defendant U-Haul International, Inc.*

Date: May 12, 2014          *s/ Ellen G. Brier*
                                            Ellen G. Brier