UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PODS ENTERPRISES, INC.,

    Plaintiff,

vs.                                                Case No. 8:12-cv-01479-T-27MAP

U-HAUL INTERNATIONAL, INC.,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Plaintiff's Motion and Supporting Memorandum to Exclude the Expert Testimony of Dr. Wendy Wood (Dkt. 144), which Defendant opposes (Dkt. 196). Upon consideration, the motion (Dkt. 144) is DENIED.

### *Introduction*

Plaintiff PODS Enterprises, Inc. ("PEI") is suing Defendant U-Haul International, Inc. ("U-Haul") for allegedly violating its trademarks by using the words "pods" and "pod" on the U-Haul website in order to attract Internet traffic. U-Haul contends that the words are generic. *See* Dkt. 151 (U-Haul motion for summary judgment on basis that the words "pod" and "pods" are generic); 15 U.S.C. § 1115; *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 603 (9th Cir. 2005) (trademarks subject to certain defenses, including genericness). In support of its genericness defense, U-Haul retained Dr. Wendy Wood to design and conduct a survey addressing the significance of the words "pod" and "pods" to the relevant public.

Dr. Wood is the Vice Dean of Social Sciences at the University of Southern California, where

1

she holds a University Chair in Psychology and Business.[1] Dkt. 150 ¶ 1. To test the primary significance of the words "pods" and "pod," Dr. Wood designed a *"Teflon"* survey.[2] According to Dr. Wood, the survey was constructed "to determine whether US consumers who are likely to use moving and storage services understand the principal or primary significance of the terms 'pods' and 'pod' in the context of moving and storage to be a brand or proprietary name or, alternatively, to be a common or generic name." *Id.* ¶ 2.

Dr. Wood sampled 694 respondents from the following categories: (1) those who moved one year ago or less, (2) those who moved around two years ago, (3) those who moved around three years ago, (4) those who moved around four years ago, and (5) those who moved five years ago or more, but plan to move in the next twelve months. *Id.* ¶¶ 3, 16. The respondents were randomly assigned to address the term "pod" or "pods." *Id.* ¶ 3. Respondents who categorized the term as a brand name were then asked whether they associated it with any particular company or companies. *Id.* ¶ 28. If so, the respondent was asked to identify the associated company. *Id.* ¶ 29. Each of the five respondent categories were given equal weight in the survey results to mitigate varying response rates in each category. *Id.* ¶¶ 3, 17.

PEI argues that Dr. Wood's opinions derived from the survey should be excluded because the structure of the survey is fatally flawed. While PEI identifies a number of perceived flaws in Dr. Wood's methodology, it argues that the "critical methodological flaw" is that Dr. Wood chose the wrong universe of people to survey. Dkt. 144 at 1. In both her report and her deposition, Dr. Wood

---

[1] There is no question, and Plaintiff does not contest, that Dr. Wood is qualified to offer the challenged opinions.

[2] A *Teflon* survey first establishes whether the respondent grasps the distinction between common names (airline or automobile) and brand names (American Airlines or Chevrolet), and then asks the respondent to categorize a number of terms as common or brand, including the terms at issue (in this case, "pods" or "pod"). *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 195 (3d Cir. 2008). *Teflon* surveys are the "most widely used" to "resolve a genericness challenge." J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12:16 (4th ed. updated June 2014).

identifies the relevant population of consumers as those "likely to use *moving and storage* services." Dkt. 150 ¶ 2 (emphasis added); *see* Dkt. 166 at 75:18-25. Yet respondents were drawn only from those individuals who had *moved* in the last five years or plan to move within the next twelve months. Dkt. 150 ¶ 3. PEI contends that this universe is underinclusive because it omits consumers who are likely to use *storage* services. PEI also argues the survey is fatally overinclusive. According to PEI's expert, Dr. Eugene P. Ericksen, Dr. Wood improperly included respondents who moved or plan to move without utilizing a moving or storage company. Dkt. 146 ¶¶ 16, 20-22. Finally, PEI argues that Dr. Wood's survey is unreliable because she did not screen the universe of respondents to identify respondents who had been exposed to U-Haul's website or marketing materials.

### *Standard*

Trial courts are required to act as gatekeepers to ensure that expert opinions are reliable and relevant. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). This responsibility entails a three-part inquiry in which the district court considers whether (1) the expert is qualified to testify competently regarding the matters she intends to address; (2) the methodology by which the expert reaches her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of specialized expertise, to understand the evidence or to determine a fact in issue. *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2003).[3]

The objective of *Daubert*'s gatekeeping requirement is to "ensure the reliability and relevancy of expert testimony." *Kumho Tire*, 526 U.S. at 152. Generally speaking, experts are

---

[3] A witness qualified as an expert by knowledge, skill, training, or education may testify in the form of an opinion if (a) the expert's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.

required to employ "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* When evaluating the reliability of an expert opinion, the trial court must assess "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *U.S. v. Frazier*, 387 F.3d 1244, 1262 (11th Cir. 2004) (quoting *Daubert*, 509 U.S. at 592-93).

Expert testimony must also assist the trier of fact. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Id.* Expert testimony generally *will not* assist the trier of fact when "it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* at 1262-63.

While *Daubert* decisions "inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology," it is not the role of the court "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341; *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). A "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001) (quoting *Allison v. McGhan*, 184 F.3d 1300, 1311 (11th Cir. 1999)).

The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence. *Allison*, 184 F.3d at 1306 (citing *Daubert*, 509 U.S. at 592 n.10). Trial courts have "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152.

### *Discussion*

The general reliability of *Teflon* surveys cannot be questioned, given their wide acceptance.

4

*See In re DaimlerChrysler AG*, Serial No. 74/734,869, 2001 WL 862242, at * 6 (T.T.A.B. July 26, 2001) ("The so-called 'Teflon survey' is widely accepted in determining whether a term is generic."); *Anheuser-Busch Inc. v. Stroh Brewery Co.*, 750 F.2d 631, 639 (8th Cir. 1984) (characterizing a *Teflon* survey as "properly conducted"); *Invisible Fence, Inc. v. Fido's Fence, Inc.*, No. 3:09-CV-25, 2013 WL 6191634 (E.D. Tenn. Nov. 26, 2013) (accepting a survey that "generally" complies with *Teflon*). Rather, PEI perceives multiple technical deficiencies in Dr. Wood's survey, including an improper universe of respondents and improper questioning.

Such technical deficiencies go to the weight of Dr. Wood's opinions, not their admissibility. *See Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 844-45 (11th Cir. 1983) (technical deficiencies, including "(1) poor sampling; (2) inexperienced interviewers; (3) poorly designed questions; and (4) other errors in execution" go to the survey's weight, not admissibility); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 264 (5th Cir. 1980) (discounting probative value, but not excluding, consumer confusion survey that did not examine the proper universe); *Exxon Corp. v. Tex. Motor Exch. of Houston, Inc.*, 628 F.2d 500, 507 (5th Cir. 1980) ("While this universe is not perfect, it is close enough so that, when combined with the format of the questions, it is clear that the survey is entitled to great weight."); *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, No SACV 06-0827 AG (RNBx), 2008 WL 1913163, at *9 (C.D. Cal. Mar. 27, 2008) (finding argument that an improper universe was used in a *Teflon* survey to be "well-taken," but nevertheless concluding that the argument goes "to the weight of the survey evidence, not to the admissibility"); *Nightlight Sys., Inc. v. Nitelites Franchise Sys., Inc.*, No. 1:04-cv-2112-CAP, 2007 WL 4563873, at *5 (N.D. Ga. July 17, 2007) ("Even assuming that a survey has technical deficiencies, the survey does not necessarily have to be excluded. Alleged technical deficiencies in a survey go to the weight of the survey, not necessarily its admissibility.") (citing *Jellibeans*, 716 F.2d at 845).

Moreover, Dr. Wood adequately explained her reasons for using this particular universe of respondents, and she testified that the number of people who use portable storage outside of moving is very small, making her universe similar to the universe urged by PEI. Dkt. 166 at 48:23-25. While Dr. Wood's choice of universe may not be ideal given the dual purposes of portable storage, it is "close enough" that her results and opinions may be considered reliable. *Exxon*, 628 F.2d at 507. PEI also argues that Dr. Wood improperly weighted the data, included improper questions, and failed to employ proper quality controls. These criticisms likewise go to the weight of her opinions, not their admissibility. Vigorous cross-examination will allow PEI to address the deficiencies of Dr. Wood's report, a process that should not be supplanted by *Daubert*'s gatekeeper role. *Maiz*, 253 F.3d at 666.

Accordingly, Plaintiff's Motion and Supporting Memorandum to Exclude the Expert Testimony of Dr. Wendy Wood (Dkt. 144) is **DENIED**.

**DONE AND ORDERED** this 11th day of June, 2014.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record