**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| PODS ENTERPRISES, INC., | |
| Plaintiff/Counterclaim-Defendant, | |
| v. | CASE NO.: 8:12-cv-01479-JDW-MAP |
| U-HAUL INTERNATIONAL, INC., | |
| Defendant/Counterclaim-Plaintiff. | |

**U-HAUL'S MOTION IN LIMINE TO EXCLUDE PEI'S**
**VAGUE AND CONCLUSORY "EVIDENCE" OF ACTUAL CONFUSION**

Despite *millions* of recorded phone calls and *years* of use of "pod(s)" by U-Haul, PEI

could find only a few actual people that it claims were confused by U-Haul's use of "pod(s)."

Yet, the evidence and sworn testimony from those individuals demonstrate conclusively that *they*

*were not, in fact, confused*—despite PEI's representations to the Court to the contrary.[1] With its

claims of confusion undermined by the actual facts, PEI now intends to submit vague and

conclusory hearsay testimony from its franchisees, lacking any specifics or supporting

documentation, to the effect that a few unidentified customers were "confused." Given how

unreliable PEI's purported evidence of confusion has turned out to be when actual facts and

allegedly confused witnesses *were* identified, the Court should not allow PEI to submit even less

reliable, unsupported hearsay evidence from biased franchisees about speculative (and *de*

*minimis*) confusion among unidentified persons.

Allowing PEI to rely upon hearsay "testimony" of alleged "confusion" by unidentified

persons would confuse the jury, unduly prejudice U-Haul, and waste the Court's time and

resources. To rebut PEI's generalized confusion allegations and demonstrate its

---

[1] Although PEI maintains that it will call these individuals at trial—and U-Haul would be happy for it to do so—this is unlikely, given their insistence that they were never confused.

mischaracterization of the evidence, U-Haul would be required to expand the scope of the trial by offering testimony from those persons PEI identified as "confused" who were not, in fact, confused. PEI should not be allowed to waste this Court's time and resources by submitting generalized, unsupported allegations of confusion without identifying any allegedly confused individuals.

Accordingly, the Court should exercise its discretion to exclude PEI's generalized testimony and evidence of alleged confusion, particularly when no confused individual is identified. Not doing so will expand the trial unnecessarily by requiring U-Haul to call witnesses who were "not confused," and who otherwise would have no need to testify. At the very least, PEI's witnesses should not be allowed to testify that third parties were "confused" (or similar language), but should be limited to describing underlying factual events without characterization.

## I.    PEI's "Confusion" Evidence is Irrelevant and Unfairly Prejudicial

PEI's most recent claimed evidence of confusion is a recorded call between PEI and U-Haul customers Stuart and Deborah Sing. PEI produced the recording and—without talking to the Sings—represented it to this Court as "yet another instance of actual customer confusion caused by U-Haul's use of the PODS mark on the internet in that the customer was deceived into renting a U-Box container from U-Haul when he intended on renting a PODS branded container from PODS."[2] But this conclusory statement, like PEI's other allegations of confusion, is patently untrue. When contacted, the Sings readily explained that *every aspect of PEI's claim is false*: they intended to use U-Haul, knew they were using U-Haul, and never were confused by U-Haul's use of "pod(s)."[3]

---

[2] Identified for the first time in PEI's Opposition to U-Haul's June 9, 2014, Motion to Strike PEI's Evidence of Actual Confusion, Dkt. 221 ("PEI Opp.") at 22112, n.1.
[3] Declaration of Stuart Sing, attached as **Exhibit A** ("S. Sing Dec."), ¶¶ 1,16; Declaration of Deborah Sing, attached as **Exhibit B** ("D. Sing Dec."), ¶¶ 1,8.

Mr. Sing researched U-Haul and PEI, and chose U-Haul's U-Box® pods because of U-Haul's lower price, familiar brand, and a friend's recommendation.[4] He would testify that he never was confused. The lack of clarity in the recorded call does not result from confusion, but rather from a follow-up call placed by his wife, who reached PEI via a Google search for the generic term "pods" and a call to the first number listed.[5] *According to the Sings themselves*, the call was a result of Mrs. Sing not paying attention, rather than actionable confusion. *See Scorpiniti v. Fox Television Studios, Inc.*, 918 F. Supp. 2d 866, 887 (N.D. Iowa 2013) (consumer contact with party "erroneously found through an internet search engine illustrate[s] inattentiveness or carelessness on the part of the searcher and do[es] not support an inference of actual confusion"). Instead, the Sings reached PEI ***because they understood "pod(s)" to be generic***.[6] Even if they (or others) were "confused," it was not in a relevant sense: "The prominent use of a generic term by two competitors may understandably confuse consumers; however, this does not make the term any less generic." *Miller's Ale House, Inc. v. Boynton Carolina Ale House*, LLC, 702 F.3d 1312, 1321 (11th Cir. 2012).While PEI could say that "the Sings were confused," U-Haul (and the Sings) could rebut that with direct testimony.

PEI also erroneously identified a phone call from potential U-Haul customer Rick Newman, which also fails to demonstrate actual confusion. As revealed in the recording, Newman uses "pods" generically, he meant to call U-Haul, and he knew how to contact U-Haul. Newman called PEI only because his daughter obtained a price quote for her "pod" from PEI and gave it to Newman, apparently along with the PEI phone number.[7] Thus, when Newman assumed the information was for U-Haul and called PEI, he was not confused as to source or

---

[4] S. Sing Dec., ¶¶ 2-3, 7.
[5] D. Sing Dec., ¶5; S. Sing Dec., ¶12.
[6] S. Sing Dec. ¶ 13; D. Sing Dec. ¶ 6.
[7] Newman recording, produced by PEI as PODS-0142780, at 06:45-09:14, attached as **Exhibit C**.

affiliation. Rather, Newman, like the Sings, reached PEI *only because he understood "pod(s)" to be a generic term*.

PEI also produced a Facebook comment posted by U-Haul customer Matthew Carroll, which—contrary to PEI's assertion—establishes an *absence* of confusion: Carroll expresses regret that he chose U-Haul over PEI.[8] When deposed, Carroll repeatedly confirmed he *never was confused* as to source or affiliation.[9]

Like the Sing, Newman, and Carroll evidence, PEI franchisees purporting to show confusion misapprehend (or omit) facts, and demonstrate either (i) an *absence* of source or affiliation confusion, or (ii) confusion relating to something other than U-Haul's generic use of "pod(s)." *See* Dkts. 222-1 (no allegation customer ever saw U-Haul's use of "pod(s)"; miscommunication among family members); 222-2 (no specific instance described); 222-3 (consumer used "pods" generically and inquired only as to how a competitor could use the term); 222-4 (consumer using "pods" generically disappointed that PEI's prices were higher than U-Haul's); 222-5 (no specific instance of confusion described); 222-6 (consumer using "pods" generically); 222-7 (consumer using "pods" generically and recognizing the parties as unrelated).

Although, as the Court noted, actual confusion may occur among customers aware of the source of the parties' products, Dkt. 227 at 3, this is true only for inquiries *as to affiliation or sponsorship*. *Univ. of Ga. Athletic Ass'n v. Laite*, 756 F.2d 1535, 1546-47 (11th Cir. 1985). No such inquiries are at issue here. When a consumer merely compares the parties' products and pricing or questions the parties' simultaneous use of the (generic) term "pod(s)," there is no *trademark* confusion, as a matter of law. *See Fisher Stoves, Inc., v. All Nighter Stove Works, Inc.*, 626 F.2d 193, 195 (1st Cir. 1980) (inquiries as to differences between products not indicative of

---

[8] A printout of Carroll's Facebook comment (PODS-0142781) is attached as **Exhibit D**.
[9] Carroll Dep., Dkt. 175 at 11:23-25 (did not think a connection); 12:4-6 (did not think working together); 19:7-9 (did not think affiliation and "perceived [U-Haul] to be a competitor."); 29:20-22 (not confused who dealing with).

confusion); *Microware Sys. Corp. v. Apple Computer, Inc.*, 126 F. Supp. 2d 1207, 1216 (S.D. Iowa 2000) (consumer bothered by defendant's use of plaintiff's logo "clearly showed . . . [the consumer] was not confused."). If PEI has shown *any* confusion, it is "largely, if not exclusively, the product of [PEI]'s lack of competition in its early years and the use of a generic phrase to describe its product. As such, it is not the type of confusion that warrants trademark protection." *Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 25 (1st Cir. 2008).

Despite receiving millions of calls, *all of which are recorded*,[10] PEI proffered just *two* recorded phone calls, one Facebook comment, and a handful of franchisee statements that it contends show actual confusion. The only people identified by name, however, would testify that they were not confused. Nevertheless, PEI suggests that a jury should hear franchisees opining that "customers were confused," even though the allegations are bereft of specifics, and such a small number of instances is *de minimis* and cannot "demonstrate actual confusion in the consuming public." *Tana v. Dantanna's*, 611 F.3d 767, 779 (11th Cir. 2010) (two instances of confusion in five years of service to over a million customers not probative); *Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606–07 (9th Cir. 1987) ("[I]n light of both parties' high volume of business, [several instances of actual confusion] proved insignificant").

The Court should exclude PEI and its franchisees from making general assertions of confusion because it will expand the trial by requiring U-Haul to "impeach" what PEI has (erroneously) identified—in discovery and to this Court—as being confusion. Alternatively, as reflected in PEI's misplaced assertions, an unclear call or statement does not necessarily evidence "confusion." As a result, if PEI wants franchisees to testify as to specific instances or events, they should do so without characterizing them as "confusion."

---

[10] G. Spowart Dep., Dkt. 172 at 120:12-18 (75-100 percent of PEI's customers book by phone); A. Parker Dep., Dkt. 184 at 92:6-93:2 (all calls are recorded and retrievable).

## CERTIFICATE OF LOCAL RULE 3.01(g) COMPLIANCE

U-Haul's counsel consulted with PEI's counsel in an attempt to resolve this matter, but

no agreement could be reached.

Dated: July 10, 2014                                    RESPECTFULLY SUBMITTED:

*/s/ R. Charles Henn Jr.*
William H. Brewster (*pro hac vice*)
R. Charles Henn Jr. (*pro hac vice*)
KILPATRICK, TOWNSEND & STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
(404) 815-6500
(404) 541-3240 (facsimile)
Email: bbrewster@kilpatricktownsend.com
chenn@kilpatricktownsend.com

William P. Cassidy, Jr.
Fla. Bar No. 332630
JOHNSON & CASSIDY, P.A.
324 South Hyde Park Avenue, Suite 325
Tampa, FL 33606
(813) 352-1042
(813) 671-0758
Email: wcassidy@jclaw.com

Leo R. Beus (*pro hac vice*)
BEUS GILBERT PLLC
701 North 44th Street
Phoenix, AZ 85008-6504
(480) 429-3000
(480) 429-3100 (facsimile)
Email: lbeus@beusgilbert.com

*Attorneys for U-Haul International, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served via the Court's CM/ECF system
on counsel of record.

Dated: July 10, 2014                                    */s/ Jared S. Welsh*
                                                       Jared S. Welsh

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

PODS ENTERPRISES, INC.,

      Plaintiff/Counterclaim-Defendant,

vs.                         CASE NO.: 8:12-cv-01479-JDW-MAP

U-HAUL INTERNATIONAL, INC.,

      Defendant/Counterclaim-Plaintiff.

### DECLARATION OF STUART SING

I, Stuart Sing, declare:

1.      I understand that PODS Enterprises, Inc. ("PEI") has claimed in this case that a recording of my phone conversation with a PEI representative "demonstrates yet another instance of actual customer confusion caused by U-Haul's use of the PODS mark on the internet in that the customer was deceived into renting a U-Box container from U-Haul when he intended on renting a PODS branded container from PODS." That statement is false. I was never deceived by anything U-Haul did, and I never intended to rent anything from PEI.

2.      I recently rented two U-Box pods from U-Haul for a cross-country move, from Stony Brook, New York, to Las Vegas, Nevada.

3.      In planning my move, I searched online for moving companies and found both U-Haul and PEI.

4.      I visited the PEI website to obtain a price quote, but it did not provide quotes online, so I entered my information and later received a quote via email. I later called PEI to confirm my understanding of the pricing. Apparently, PEI recently gave U-Haul a recording of this call, which I did not know was being recorded.

1

UHI00055528

5.     I also visited the U-Haul website, where I was able to obtain a price quote online. I noticed on the U-Haul website that its U-Box pods had orange covers, which were familiar to me, as well as a helpful video showing how the process worked. The U-Haul quote was much less expensive than the PEI quote for the same service.

6.     Since I have not moved in years, I asked a friend who had recently used U-Haul about the quality of their service. He assured me that U-Haul's service was very good and that he recommended them.

7.     Because of U-Haul's price, my friend's endorsement, and my familiarity with the U-Haul brand, I decided to use U-Haul to move my belongings in U-Box pods. A true and correct copy of U-Haul records showing when I contacted and paid U-Haul is attached as **Exhibit 1**.

8.     After selecting U-Haul, I never intentionally contacted PEI again.

9.     Because U-Haul did not have any pods in my area, U-Haul arranged for Moving Help to assist with delivering, loading, and moving the pods.

10.     When the U-Haul pods arrived for loading, I signed a contract explaining the various rules for using U-Box pods. A true and correct copy of this contract is attached as **Exhibit 2**.

11.     When the Moving Help movers packed up my U-Box pods and prepared to take them away, they asked for an authorization number for payment. I had never received such a number from U-Haul and didn't know what they were talking about. I placed a call to U-Haul to try to obtain the authorization number.

12.     While I was on hold waiting for U-Haul's customer service, I asked my wife, Deborah Sing, to try calling them too, in case she could get through more quickly. When she

2

UHI00055529

asked me for U-Haul's number, I told her to "just look online" for it. She searched for "pods," and called the first number that came up on her phone. Apparently that was PEI's phone number.

13.     Deborah searched for "pods" because that is the word we used all along to refer to the type of container we planned to use for the move, since that seems to be the word people generally use for them.

14.     When Deborah handed me the phone, I assumed I was speaking to U-Haul. Because I thought I was on the phone with U-Haul, my discussion with the PEI representative was very confusing—I thought she was trying to tell me there was another company or division in U-Haul called "U-Pod." Eventually, though, I understood that I was speaking to PEI rather than U-Haul, and I got off the phone.

15.     I then contacted U-Haul and figured out that I didn't receive the email with the authorization number I needed because U-Haul had misspelled my email address. If I had already had the authorization number, I never would have had the confusing phone call with PEI. U-Haul's record of my call to get the payment code and correct my email address is in **Exhibit 1** at the bottom of page 2.

16.     Throughout this entire process, there was no doubt in my mind that I was dealing with U-Haul. I was well aware that U-Haul's pods are a familiar orange color, that I was being charged the lower price quoted by U-Haul, and that I was using the Moving Help service arranged by U-Haul. I knew that I had contracted with U-Haul and that U-Haul and PEI are different companies, and I was never confused about the difference between U-Haul and PEI or any association between them.

17.     Other than U-Haul's mistake in failing to send me an email with the authorization number, I was very happy with my experience with U-Haul, and I would recommend them to

3

others. Attached as **Exhibit 3** are true and correct copies of my positive reviews for the movers who helped load and move my U-Box pods.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on this ⟨17⟩ day of June, 2014.

Stuart Sing

4

UHI00055531

# EXHIBIT 1

UHI00055532

# Moving Help

Home | Orders | Helpers | Reports | Admin

## OR-5C94E183 - Completed

Add note | Issue credit | Pay Helper | Send confirmation | Debit Helper | Watch order

**5/14/2014 2:02:57 PM**
U-Haul Phone Order
Edward Medina
E-Storage Sales Rep - 723018

**stuart fing**
4 BARENCOURT
STONY BROOK, NY 11790 USA
stuartsing@gmail.com
(631) 974-0852
172.31.192.99

|  | Subtotal | Discount | Total |
|---|---|---|---|
| Jobs | 569.00 | 0.00 | 569.00 |
| Job Fees | 0.00 | 0.00 | 0.00 |
| Travel Fee | 40.00 | 0.00 | 40.00 |
| Service Fee | 5.95 | 0.00 | 5.95 |
|  | **$614.95** | **$0.00** | **$614.95** |

☐ Put credit card on ho

## Jobs

### Max Power Moving

| | Job | Status | Service | Date | Payment code | Total |
|---|---|---|---|---|---|---|
| | JB-809C415E | Completed 6/11/2014 1:57:00 PM | U-Box Delivery & Load/Unload 7 miles 2 U-Boxes | 6/11/2014 - Morning | 734385 | $243.0 |

**Job location:**
District: 15  MCO: 838

stuart fing
352 Hanbury Manor Ln
Las Vegas, NV 89145
(631) 974-0852
Update job location

**Customer says:**
Full U-Box(es) will be shipped to U-HAUL
MOVING & STORAGE AT RAINBOW BLVD
at 2450 N RAINBOW BLVD LAS VEGAS, NV
89108. Keep in mind this is an estimated
arrival date for the U-Box(es), and is subject
to change based on actual date of shipping.
Please remain in contact with customer to
keep aware of any changes to this
arrival/delivery date. They may arrive sooner
or may ship later than expected.

| Travel Fee | | | | | | $0.0 |
|---|---|---|---|---|---|---|
| | | | | | **Total:** | **$243.0** |

### Proficient Moving Professionals

| | Job | Status | Service | Date | Payment code | Total |
|---|---|---|---|---|---|---|
| | JB-C0447B2D | Completed 5/29/2014 1:55:00 PM | U-Box Delivery & Load/Unload 6 miles 2 U-Boxes | 5/29/2014 - Afternoon | 957156 | $326.0 |
| Travel Fee | | | | | | $40.0 |
| | | | | | **Total:** | **$366.0** |

UHI00055533

## Cancellations

**There are no cancellations for this order.**

### Customer transactions

| | Date | Reason | Payment info | Authorization | Charge | Cred |
|---|---|---|---|---|---|---|
| | 5/14/2014 2:02:58 PM | Service fee payment | American Express - | VSHJBBAD4E21 | 5.95 | |
| | 5/14/2014 2:02:58 PM | Travel fee payment - Max Power Moving | American Express - | VSHJBBAD4E21 | 0.00 | |
| | 5/14/2014 2:02:58 PM | Travel fee payment - Proficient Moving Professionals | American Express - | VSHJBBAD4E21 | 40.00 | |
| | 5/14/2014 2:02:58 PM | Job payment - JB-C0447B2D | American Express - | VSHJBBAD4E21 | 326.00 | |
| | 5/14/2014 2:02:58 PM | Job payment - JB-809C415E | American Express - | VSHJBBAD4E21 | 243.00 | |
| | 6/11/2014 5:29:09 PM | Service fee refund | American Express - | VUYJBEC15EFB | | 5.9 |
| | | | | Total processed | $614.95 | $5.9 |

### Moving Helper transactions

| Date | Reason | Payment | Authorization | Payment | Cred |
|---|---|---|---|---|---|
| 5/29/2014 1:54:53 PM | Job payment - JB-C0447B2D | Checking - 8578 | VQCDAD2799C4 | 277.10 | |
| 5/29/2014 1:54:53 PM | Travel fee payment Proficient Moving Professionals | Checking - 8578 | VQCDAD2799C4 | 34.00 | |
| 6/11/2014 1:57:11 PM | Job payment - JB-809C415E | Checking - 6843 | VQFDADED8C31 | 206.55 | |
| | | | Total processed | $517.65 | $.0 |

### Moving Helper adjustments

**There are no adjustments for this order.**

### Administrator notes

| Job | New Issue | Cause | Note | Administrator | Date |
|---|---|---|---|---|---|
| | ✓ | Customer Requesting Receipt | Order confirmation resent to email address: stuartsing@gmail.com | Suzanne Johnson | 5/29/201 11:41:18 AM |
| | ✓ | Customer email address changed | Customer email address changed from: tewartfing@gmail.com to: stuartsing@gmail.com. | Suzanne Johnson | 5/29/201 11:41:16 AM |
| C0447B2D | ✓ | Customer Requesting Payment Code | Mr Fing calling in requesting payment code. Verified billing address and last 4 digits of the credit card used to place the order. Advised customer to fill out review. | Suzanne Johnson | 5/29/201 11:40:40 AM |

UHI00055534

## Moving Helper notes

| Job | Note | Entered by | Date |
|-----|------|-----------|------|
| JB-809C415E | Job date changed: **From:** 6/9/2014 - Anytime **To:** 6/11/2014 - Morning | Melvin Kirkwood III | 6/9/2014 10:45:13 PM |
| | call when ready | Melvin Kirkwood III | 6/9/2014 9:49:39 AM |
| JB-C0447B2D | Job date changed: **From:** 5/29/2014 - Anytime **To:** 5/29/2014 - Afternoon | Quincy Howard | 5/15/2014 10:57:13 PM |

## Resolution case

## Ratings

| Active | Date | Service | Rating | | Comment | Reply |
|--------|------|---------|--------|---|---------|-------|
| ✅ | 6/11/2014 | Max Power Moving JB-809C415E U-Box Delivery & Load/Unload 1 miles | ★★★★✰ Communication | 8 | **stuart f.** - Melvin and Frank are great to work with, they are friendly and polite. Thank you Max Power Moving team. | ✅ 6/11/2014: Thank you for the review and thank you for the business! |
| | | | Professionalism | 10 | | |
| | | | Service | 10 | | |
| | | | Satisfaction | 10 | | |
| | | **Can you please tell us what type of equipment you used for your move?** • The Moving Helper provided a box truck or trailer. | | | | |
| ✅ | 5/30/2014 | Proficient Moving Professionals JB-C0447B2D U-Box Delivery & Load/Unload 1 miles | ★★★★★ Communication | 10 | **stuart f.** - Ease of mind. Great company to work with. I would recommend and would be a repeat customer. | ✅ 5/30/2014: Thanks for your business ! It was our pleasure to put your mind at ease..Have fun in Sin City!!! |
| | | | Professionalism | 10 | | |
| | | | Service | 10 | | |
| | | | Satisfaction | 10 | | |
| | | **Can you please tell us what type of equipment you used for your move?** • I rented a U-Box Storage Pod from U-Haul. | | | | |

## Administrators watching

**This order is not being watched.**

Copyright 2012 U-Haul International, Inc. All rights reserved. U-Haul® is a registered trademark of U-Haul International, Inc.

UHI00055535

# EXHIBIT 2

UHI00055536


**Receipt**

**U-Box MovingHelp Delivery Dispatch**
Thursday, 05/29/2014 12:30

Contract No: 93656172
Dispatched From: 806072
Safe-Protection: Yes

**Customer**
Stuart Sing
4 Baron Court, STONY BROOK, NY 11790
(631) 974-0852 /

**Renting Location**
U-HAUL CO
771 NESCONSET HWY, SMITHTOWN, NY 11787
(631) 724-2494

**Destination**
SMITHTOWN, NY
(631) 724-2494

| Equipment | Rate | Safe-Protection: | Shipping Charge | Delivery Charge | Total |
|---|---|---|---|---|---|
| PO<br>Furniture Pads (Dozen) | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| AA2727E<br>U-Box | $79.95 | $18.00 | $0.00 | $0.00 | $97.95 |
| AA2731E<br>U-Box | $79.95 | $18.00 | $0.00 | $0.00 | $97.95 |
| UB1099A<br>U-BOX TRAILER 5X 8' | $14.95 | $0.00 | $0.00 | $0.00 | $14.95 |

Estimated Subtotal: $210.85
Estimated Tax: $15.09
**Estimated Total Rental Charges: $225.94**

| Card Type | Account | Auth | |
|---|---|---|---|
| AMERICANEXPRESS | | 143608 | |

Credit Card Authorization Amount: $225.94
Net Paid Today: $0.00

UHI00055537



# U-HAUL®Receipt

**U-Box MovingHelp Delivery Dispatch**
Thursday, 05/29/2014 12:30

Contract No: 93656172
Dispatched From: 806072
Safe-Protection: Yes

**Customer**
Stuart Sing
4 Baron Court, STONY BROOK, NY 11790
(631) 974-0852 /

**Renting Location**
U-HAUL CO
771 NESCONSET HWY, SMITHTOWN, NY 11787
(631) 724-2494

- I understand that I am financially responsible for at least the first $100.00 of new damage to Equipment AA2727E.
- I understand that I am financially responsible for at least the first $100.00 of new damage to Equipment AA2731E.
- I agree to indemnify, defend and hold harmless U-Haul from and against all claims, damages and expenses resulting from the use of this equipment, including any fraudulent use.
- I understand that this equipment must be returned to the same U-Haul location where it was rented. I understand that the minimum rental charge for equipment returned to a different location is twice the amount of the current One Way rate from this U-Haul location to the actual drop-off location.
- I understand that the equipment rented is water resistant and not water proof.
- I acknowledge that I have received the appropriate User Instructions and acknowledge my responsibility to fully read and understand these User Instructions before operating the equipment.
- The rental container shall not be used for residential purposes.
- Customer agrees not to store or transport any hazardous materials, hazardous substance, hazardous waste, solid waste, toxic chemicals, illegal goods, explosives, highly flammable materials, perishable foods, or any other goods which may cause danger or damage to the rental container.
- Customer agrees not to store or transport any living creature or organism, or any dead animal or other carcass.
- Customer agrees that personal property and U-Box® pod(s) shall not be used for any unlawful purpose.
- Customer agrees not to store property with a total value in excess of $20,000.
- Customer agrees not to leave waste, not to alter or affix signs on the rental space and agrees to keep the U-Box® pod(s) and its cover in good condition during the term of the rental agreement.
- Customer understands that the total weight of the container may not exceed 2,000 lbs.
- Customer acknowledges the U-Box® pod(s) maximum weight (2,000 lbs) limitation and agrees hereunder that U-Box® pod's inability to transport containers exceeding that weight limitation does not terminate or in any way change the customer's payment obligation or responsibility under this contractual agreement.
- Customer acknowledges that if a U-Box® pods Customer Care Advisor identifies a U-Box® pod which exceeds the maximum weight (2,000 lbs), the Customer Care Agent may at his or her full discretion require that the customer reduce the weight of the container to facilitate transport.
- Customer agrees to immediately remit to U-Haul any transportation fees associated with an "over-loaded" container.
- Insurance coverage is only effective for customers who have elected Safestor Mobile® coverage, and paid the appropriate Safestor Mobile® fee.
- Safestor Mobile® must be purchased separately for each U-Box pod(s). Safestor Mobile® Insurance does not cover damages or losses incurred while the U-Box pod(s) is at your residence or drop-off location. Damage or loss caused by improper packing/shifting during transit or intentional acts is not covered. Safestor Mobile® Insurance does not cover: money, credit cards, other securities, bills, property deeds, stamps, jewelry, watches, furs, precious stones, art, antiques, or motorized vehicles. See certificate of coverage for full details and a complete list of exclusions.
- Coverage period: Safestor Mobile® fees must be paid in advance for the same number of months for which you make storage-rent payments. Nonpayment or breach of rental agreement automatically terminates this coverage.
- Valuation of loss: loss is adjusted at actual cash value. There is a $100 deductible for each occurrence.
- Underwritten by Repwest Insurance Company. REPORT CLAIMS TO: Repwest Insurance Company (www.repwest.com). Phone 1-800-528-7134.
- Customer maintains sole responsibility for providing accurate and required transportation documentation for Your shipment. Customer agrees to pay any and all fees (including late and detention fees) for late shipments due to Customer's failure to provide required and accurate transportation documentation. Documentation, includes, but is not limited to: Gypsy Moth paperwork for all shipments in and to California; Cross-Border documentation for shipments crossing in or out of the United States; and any and all other documentation required by applicable law.
- I agree that distracted driving is dangerous and that driving while distracted is likely to lead to an accident/crash causing serious injury or death. I agree not to use a hand held mobile phone (other than for an emergency call) and not to text while driving any U-Haul truck or towing any U-Haul Trailer, Tow Dolly or Auto Transport. My agreement not to do so is material to U-Haul's decision to enter into this Agreement. My failure to comply is material breach of this Agreement.
- " The following shall be admissible as evidence of negligence and breach of contract in any lawsuit or arbitration: 1) that the driver of the U-Haul truck, or vehicle towing any U-Haul Trailer, Tow Dolly or Auto Transport was texting while driving; 2) that the driver of the U-Haul truck, or vehicle towing any U-Haul Trailer, Tow Dolly or Auto Transport, was using any mobile phone (other than hands free or for an emergency call) while driving.
- I agree to submit all claims against U-Haul in accordance with the U-Haul Arbitration Agreement, incorporated by reference, and available at uhaul.com/arbitration or from your local U-Haul representative.
- I acknowledge that I have received and agree to the terms and conditions of this Rental Contract and the Rental Contract Addendum.



U-Haul Signature (Bryan Kern)

Customer Signature (Stuart Sing)

UHI00055538

# EXHIBIT 3

UHI00055539

| Active | Date | Service | Rating | | Comment | Reply |
|--------|------|---------|--------|---|---------|-------|
| ✓ | 6/11/2014 | Max Power Moving<br>JB-809C415E<br>U-Box Delivery &<br>Load/Unload<br>1 miles | ★★★★½ | | stuart f. - Melvin and Frank are great to work with, they are friendly and polite. Thank you Max Power Moving team. | ✓ 6/11/2014:   Thank you for the review and thank you for the business! |
| | | | Communication | 8 | | |
| | | | Professionalism | 10 | | |
| | | | Service | 10 | | |
| | | | Satisfaction | 10 | | |
| | | **Can you please tell us what type of equipment you used for your move?** | | | | |
| | | • The Moving Helper provided a box truck or trailer. | | | | |
| ✓ | 5/30/2014 | Proficient Moving Professionals<br>JB-C0447B2D<br>U-Box Delivery &<br>Load/Unload<br>1 miles | ★★★★★ | | stuart f. - Ease of mind. Great company to work with. I would recommend and would be a repeat customer. | ✓ 5/30/2014:   Thanks for your business ! It was our pleasure to put your mind at ease..Have fun in Sin City!!! |
| | | | Communication | 10 | | |
| | | | Professionalism | 10 | | |
| | | | Service | 10 | | |
| | | | Satisfaction | 10 | | |
| | | **Can you please tell us what type of equipment you used for your move?** | | | | |
| | | • I rented a U-Box Storage Pod from U-Haul. | | | | |

UHI00055540

# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PODS ENTERPRISES, INC.,

     Plaintiff/Counterclaim-Defendant,

vs.                                                                  CASE NO.: 8:12-cv-01479-JDW-MAP

U-HAUL INTERNATIONAL, INC.,

     Defendant/Counterclaim-Plaintiff.

## DECLARATION OF DEBORAH SING

I, Deborah Sing, declare:

1.     I understand that PODS Enterprises, Inc. ("PEI") has claimed in this case that a recording of a phone conversation my husband, Stuart Sing, had with a PEI representative "demonstrates yet another instance of actual customer confusion caused by U-Haul's use of the PODS mark on the internet in that the customer was deceived into renting a U-Box container from U-Haul when he intended on renting a PODS branded container from PODS." That statement is false. My husband and I were never deceived or confused by anything U-Haul did, and we never intended to rent anything from PEI.

2.     My husband recently rented two U-Box pods from U-Haul for a cross-country move, from Stony Brook, New York, to Las Vegas, Nevada. He made all the arrangements with U-Haul for the move. I understand that he obtained a price quote from PEI early on, but decided to use U-Haul instead. I was always aware that we were using U-Haul for our move.

3.     U-Haul arranged for our pods to be delivered, loaded, and shipped by Moving Help. When the Moving Help movers packed up our U-Box pods and prepared to take them away, they asked for an authorization number for payment. Stuart had never received such a

1

UHI00055526

number from U-Haul, and we didn't know what they were talking about.

4.     Stuart placed a call to U-Haul to try to obtain the authorization number. Since we were anxious to get the number for the movers, he asked me to try to call in as well while he was trying to get through to U-Haul.

5.     I asked Stuart for the U-Haul number, and he told me to "just look online" for it. So, I searched on Google for "pods," and I called the first number that appeared on my phone. Apparently that number was for the PEI company.

6.     I searched for "pods" because that is the word we used all along to refer to the type of container we planned to use for the move. I thought everyone in the moving industry referred to portable moving and storage containers in general as "pods."

7.     When PEI customer service answered, I quickly passed the phone off to Stuart, without realizing that I had called PEI. Since we never rented anything from PEI, they couldn't provide the authorization number we needed. When he figured this out, Stuart hung up and called U-Haul again.

8.     I was never confused about who I was trying to call, and I was well aware that we were renting the orange U-Box pods from U-Haul. I never even looked at U-Haul's website or noticed whether they used the word "pods," and I certainly was not confused as a result of anything on U-Haul's website.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on this 17 day of June, 2014.

_Deborah Sing_
Deborah Sing

2

UHI00055527

**EXHIBIT C**

[This exhibit consists of an audio file, which is being hand-delivered to the Court.]

# EXHIBIT D

Chip Matthew Carroll

I used U-Haul's POD service, boy am I sorry I didn't use PODS. My belongings were picked up in NY on 11/9/13 and after filing 3 complaints and escalating my plight to Mark Buford the President of u-haul (who told me to call back and leave my concerns on his voice mail!!!) I sit here in my new home in AZ as of 12/4/13 without my belongings. I told Mr. Buford that I will be seeking legal actions against u-haul, his reply was that he would get to it tomorrow… WHAT A DISASTER!!!!!!!!! I am SO SO SO sorry I every used u-haul instead of PODS. Feel free to use my story to save any other poor souls that think about using u-haul, they are inept, rude and could care less about me, I am only the customer…..

Matthew Carroll

Unlike · Comment · Yesterday at 1:51am




EXHIBIT NO. 357
1/18/14
Carroll

PODS-0142781