**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**PODS ENTERPRISES, INC.,**

      **Plaintiff,**

**vs.**                                                    **Case No. 8:12-cv-01479-T-27MAP**

**U-HAUL INTERNATIONAL, INC.,**

      **Defendant.**

_____/

**<u>INSTRUCTIONS TO THE JURY</u>**

Members of the jury:

It is my duty to instruct you on the rules of law that you must use in deciding this case.

When I have finished, you will go to the jury room and begin your discussions, sometimes called deliberations.

1

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it—even if you do not agree with the law—and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees that are made within the scope of their duties as employees of the company.

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of witnesses and the exhibits admitted. But, anything the lawyers say is not evidence and isn't binding on you.

You should not assume from anything I have said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You should not be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There is no legal difference in the weight you may give to either direct or circumstantial evidence.

As an example, "direct evidence" that it is raining is testimony from a witness who says, "I was outside a minute ago and I saw it raining." "Circumstantial evidence" that it is raining is the observation of someone entering a room carrying a wet umbrella.

When I say you must consider all the evidence, I do not mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point does not necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

•       Did the witness impress you as one who was telling the truth?

•       Did the witness have any particular reason not to tell the truth?

•       Did the witness have a personal interest in the outcome of the case?

•       Did the witness seem to have a good memory?

•       Did the witness have the opportunity and ability to accurately observe the things he or she testified about?

•       Did the witness appear to understand the questions clearly and answer them directly?

•       Did the witness's testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or did not say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake does not mean a witness was not telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

When scientific, technical, or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that does not mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

In this case it is the responsibility of PODS to prove every essential part of its claims under the proper "burden of proof" or the "burden of persuasion."  PODS must prove every essential part of its claims by a "preponderance of the evidence."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that the claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention under the relevant burden of proof, you should find against the party making that claim.

You should consider each claim separately.

In deciding whether any fact has been proved under the relevant burden of proof, you may consider the testimony of all the witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of PODS' claims under the relevant burden of proof, you should find for U-Haul as to that claim.

In this case, U-Haul asserts the affirmative defenses of descriptive fair use, genericness ab initio, and genericness as a result of genericide.  Even if PODS proves its claims by a preponderance of the evidence, U-Haul can prevail in this case if it proves any one of the applicable affirmative defenses by a preponderance of the evidence.

You should consider each of U-Haul's affirmative defenses separately.

I caution you that U-Haul does not have to disprove PODS' claims, but if U-Haul raises an affirmative defense, the only way it can prevail on that specific defense is if it proves it by a preponderance of the evidence.

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT

A trademark is any word, symbol, device, or any combination thereof, used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods.

Subject to certain defenses, a trademark owner may prevent others from using an identical or confusingly similar imitation of a mark in an action for trademark infringement or trademark dilution.

In Count I, PODS claims that U-Haul has infringed its registered trademark. To prove its claim, PODS must prove the following facts by a preponderance of the evidence:

1. PODS owns a trademark that is entitled to protection; and

2. That U-Haul is using a reproduction, counterfeit, copy, or colorable imitation of PODS' trademark that infringes upon PODS' trademark.

You are instructed and must accept as a fact that PODS owns federal registrations for the trademarks it seeks to protect in this action, which include the word PODS, the acronym P.O.D.S., and its logo. It is U-Haul's burden to prove that PODS' trademarks are invalid. PODS does not own a federal or state trademark registration for the singular term "pod." PODS does hold a "standard character" registration that makes no claim to any particular font style, color, or size of display for the trademark "PODS."

Because PODS' trademark is covered by a federal registration, PODS enjoys what is known as "constructive nationwide priority" in its trademark, whether or not PODS uses the trademark on a nationwide basis. PODS is presumed to have started using the trademark nationwide as of its filing date, even if it only used it in a limited area. In this case, PODS enjoys nationwide priority of rights dating back to the filing date of the application, which is November 11, 1998 for the "PODS" mark and May 4, 2006 for the "PODS PORTABLE ON DEMAND STORAGE" mark.

Because PODS owns a federal registration of the trademark, U-Haul is deemed to have knowledge of the registration and of the rights claimed in the registration. This is known as "constructive notice," and U-Haul cannot claim that it adopted "pods" or "pod" without knowledge of PODS' trademark. In this case, PODS enjoys nationwide constructive notice of

10

rights dating back to the filing date of the application, which is November 11, 1998 for the "PODS" mark and May 4, 2006 for the "PODS PORTABLE ON DEMAND STORAGE" mark.

Because PODS owns a trademark that is entitled to protection, you must next consider whether U-Haul infringed PODS' trademark. The test for infringement is whether U-Haul's use of "pods" or "pod" is "likely to cause confusion" with PODS' trademark.

That is, you must determine if U-Haul, without PODS' consent, used a reproduction, counterfeit, copy, or colorable imitation of PODS' trademark(s) that is likely to cause confusion among consumers as to the source, affiliation, approval, or sponsorship of the goods. "Source," "origin," "affiliation," "approval," or "sponsorship" means that the public believes that U-Haul's goods come from, are affiliated with, are approved by, or sponsored by PODS.

It is not necessary that the trademark used by U-Haul be an exact copy of PODS' trademark. Instead, PODS must demonstrate, by a preponderance of the evidence, that U-Haul's use of "pods" or "pod" is, when viewed in its entirety, likely to cause confusion as to the source, origin, affiliation, approval, or sponsorship of the goods in question.

PODS claims that U-Haul has infringed its trademark. For PODS to succeed on this claim you must find by a preponderance of the evidence that U-Haul:

1. used a reproduction, counterfeit, copy, or colorable imitation of PODS' trademark in connection with the sale or offer to sell goods;

2. used a reproduction, counterfeit, copy, or colorable imitation of PODS' trademark in commerce; and,

3. used a reproduction, counterfeit, copy, or colorable imitation of PODS' trademark in a manner that is likely to:

a. cause confusion, mistake, or deception as to

b. the source, origin, affiliation, approval, or sponsorship of U-Haul's goods.

There are seven factors you can use to determine whether a likelihood of confusion exists. No single factor or consideration controls, and PODS is not required to prove all, or even most, of the factors are present. You may also use factors other than these seven. You should weigh all of the relevant evidence in determining whether a likelihood of confusion exists.

The first factor is the "type and strength" of the trademark. Trademarks come in different "types" or categories, namely, "generic," "descriptive," "suggestive," "arbitrary," and "fanciful" or "coined." The type of a claimed trademark is relevant to the trademark's strength.

Some trademarks are stronger than others. The "stronger" the trademark, the more protection should be given to it.

I will now describe each type of trademark in the order of their general relative strength, from weakest to strongest.

First, a claimed trademark is generic if it is the word, name, symbol, device, or any combination thereof, by which the good commonly is known.   An example of a generic trademark is "escalator" for moving stairs.

Whether a claimed trademark is generic does not depend on the term itself, but on use of the term. A word may be generic of some things but not of others. For example, "ivory" is generic for elephant tusks, but it is not generic for soap.

Whether a claimed trademark is a generic term is viewed from the perspective of a member of the relevant public evaluating the trademark.

Generic trademarks are not protected. They cannot be registered with the U.S. Patent and Trademark Office.

Notwithstanding the registration of a trademark, if one accused of trademark infringement

14

proves by a preponderance of the evidence that the trademark was generic when registered or is generic today, a jury may find that the registered trademark is invalid.  That will be addressed by you on U-Haul's affirmative defense for genericness.

Second, a "descriptive" trademark only describes an ingredient, quality, characteristic, function, feature, purpose, or use of the good provided under it. An example of a descriptive trademark would be VISION CENTER for an eyeglasses store.

Descriptive trademarks are eligible for registration with the U.S. Patent and Trademark Office if the trademark has acquired "secondary meaning." A trademark has acquired secondary meaning if the primary significance of the trademark in the minds of the consuming public is not the associated good itself, but instead the source or producer of the good.

There are four factors you may use in determining whether secondary meaning exists:

- The length and nature of the trademark's use;
- The nature and extent of advertising and promotion of the trademark;
- The efforts of the trademark owner to promote a conscious connection between the trademark and its business; and
- The degree to which the public recognizes PODS' good by the trademark.

In this case, I have determined that PODS' trademarks are covered by incontestable registrations on the Principal Register. The effect of that determination is that the registration is conclusive evidence that the trademark is at least descriptive with secondary meaning. You must accept that PODS' trademarks were at least descriptive and possessed secondary meaning at the time PODS applied for registration.  This does not mean that U-Haul cannot prevail on its affirmative defense of genericness, on which I will instruct you later.

Third, a "suggestive" trademark suggests, rather than describes, qualities of the underlying good. If a consumer's imagination is necessary to make the connection between the

trademark and the goods then the trademark suggests the features of the good. An example of a suggestive trademark is ICEBERG for a refrigerator. Suggestive trademarks are eligible to be registered in the U.S. Patent and Trademark Office without proof of secondary meaning.

Fourth are arbitrary and fanciful trademarks. An "arbitrary" trademark is a real word but has no logical relationship to the underlying goods. An example of an arbitrary trademark is DOMINO for sugar.

A "fanciful" or "coined" trademark is a trademark created solely to function as a trademark but which has no meaning beyond the trademark itself. An example of a fanciful or coined trademark is EXXON for gasoline.

Arbitrary and fanciful or coined trademarks are eligible to be registered in the U.S. Patent and Trademark Office without proof of secondary meaning.

When evaluating the strength of PODS' trademark, you may also consider the extent of any use by third parties of similar trademarks, PODS' promotional expenditures, the volume of PODS' sales under its trademark, and that PODS' registrations have achieved incontestable status.

The second factor is the similarity of the parties' trademarks.  In evaluating whether trademarks are similar, you may consider the "overall impression" that PODS' and U-Haul's trademarks create, including the sound, appearance, and manner in which they are used. You may look at the trademarks as a whole rather than simply comparing their individual features.

The third factor is the similarity of the parties' goods.  This factor considers not only whether the consuming public can readily distinguish between the parties' goods, but also whether the goods at issue are of a kind that the public attributes to a single source.

The fourth factor is similarity of the parties' sales channels, distribution, and customers. It considers where, how, and to whom the parties' goods are sold. Similarities increase the possibility of consumer confusion, mistake, or deception.

The fifth factor looks to each party's method of advertising. It is not a requirement that PODS and U-Haul advertise in the same magazines, publications, or other advertising outlets. The issue is whether the parties use the same forums and media outlets to advertise, leading to possible confusion.

The sixth factor is defendant's intent.  You may also consider whether U-Haul intended to infringe on PODS' trademark. That is, did U-Haul use the words "pods" or "pod" with the intention of deriving a benefit from PODS' reputation? If you determine that U-Haul intentionally ignored the potential for infringement, you may impute to U-Haul an intent to infringe.

The seventh factor is actual confusion.  Because the presence of actual confusion usually is difficult to show, a finding of actual confusion is not required to find trademark infringement. Alternatively, the absence of actual confusion does not necessarily mean U-Haul is not liable for trademark infringement.

The evidence of actual confusion of trademarks should be reasonably significant. You should weigh the alleged actual confusion using the following factors:

- The amount and duration of the confusion;
- The degree of familiarity the confused party has with the goods;
- The type of person complaining of the alleged actual confusion (for example, whether that person is a customer or a non-customer); and
- The alleged number of people who are actually confused (for example, whether the confused person is an actual customer or someone else).

If you find that U-Haul has infringed PODS' trademark, you must next consider U-Haul's affirmative defenses.

**<u>Affirmative Defenses to Claim of Federal Trademark Infringement: Descriptive Fair Use</u>**

PODS has argued there is a likelihood of confusion, but U-Haul claims that U-Haul is not liable to PODS for trademark infringement, based on its defense of descriptive fair use.

Descriptive fair use is a defense to trademark infringement.  U-Haul is not liable for infringement if it proves by a preponderance of the evidence that its use of "pods" and "pod" is necessary to accurately describe a characteristic of its goods. To establish this defense, U-Haul must prove PODS' trademark is used:

•    Other than as a trademark;

•    In a descriptive sense; and

•    Fairly and in good faith – that is, U-Haul did not intend to trade on the goodwill of PODS by creating confusion as to the source of U-Haul's goods.

U-Haul has the burden of proving its defense to trademark infringement by a preponderance of the evidence.

## Affirmative Defense of Genericness

PODS has registered trademarks that are presumed to be valid, and PODS enjoys nationwide priority of rights and nationwide constructive notice of its rights. You must consider U-Haul's affirmative defense that the words "pod" and "pods" are generic. You must determine whether U-Haul has proved by a preponderance of the evidence that the words "pod" and "pods" are generic.

A claimed trademark that is generic may not be registered in the U.S. Patent and Trademark Office. You must consider whether the registered trademark was a generic trademark which is invalid. That is, if U-Haul proves by a preponderance of the evidence that PODS' registered trademark is generic, both the trademark and the registration covering it are invalid.

A claimed trademark is generic if it is the word, name, symbol, device, or any combination thereof, by which the good is commonly known. Examples of generic trademarks include "ale house" for a facility that serves beer or ale, "automobile" for a motor vehicle, "lite beer" for a beer light in body and taste, and "escalator" for moving stairs.

Whether a claimed trademark is generic does not depend on the term itself, but on use of the term. A word may be generic of some things but not of others. For example, "ivory" is generic for elephant tusks, but it is not generic for soap.

Whether a claimed trademark is a generic term is viewed from the perspective of a member of the relevant public.

Generic trademarks are not eligible for registration in the U.S. Patent and Trademark Office and they are not protected.

With respect to U-Haul's affirmative defense of genericness, there are two types of genericness that you should consider in evaluating whether the term "pod" and its plural, "pods" are generic.

First, a term is considered generic ab initio if it was generic at the time a company adopted it as a trademark. If a term is generic ab initio, it does not matter if consumers associate the term with one source; such consumer association cannot transform the generic word into a trademark.

Second, a term can become generic through what is called genericide. If after a trademark was issued, the primary significance of the words became generic rather than a reference to PODS' trademark, the trademark is generic and invalid.

If you find in favor of U-Haul on its affirmative defense that PODS' registered trademarks are invalid, your verdict on PODS' trademark infringement claim is for U-Haul.

## COUNT II: FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C §1125(A)

In Count II, you will consider if U-Haul is liable for federal unfair competition under the Lanham Act.  If you find U-Haul liable on Count I (federal trademark infringement), you will not address Count II.  However, if you do not find that U-Haul is liable on Count I, you should consider Count II.

In Count II, you may find U-Haul liable for federal unfair competition under the Lanham Act if U-Haul made a false or misleading description of fact that is likely to cause confusion or mistake.

If you find by a preponderance of the evidence that  U-Haul made a false or misleading description or representation that is likely to:

- Cause confusion; or
- Cause mistake; or
- Deceive as to the affiliation, connection, or association of PODS with U-Haul; or
- Deceive as to the origin, sponsorship, or approval of U-Haul's goods, services, or commercial activities by PODS;

you may find U-Haul liable for federal unfair competition under Count II.

## Affirmative Defenses to Federal Unfair Competition

If you find that U-Haul has engaged in federal unfair competition, you should next consider U-Haul's affirmative defenses of descriptive fair use and genericness, on which I previously instructed you. If you find that U-Haul has proven its descriptive fair use or genericness defenses by a preponderance of the evidence, it is also a defense to federal unfair competition.

On Counts I and II, if you find U-Haul has infringed PODS' trademarks or that U-Haul is liable for federal unfair competition, and that U-Haul does not have a defense, you must consider whether, and to what extent, monetary relief should be awarded.

You may award actual damages that PODS has sustained. PODS may recover the economic injury to its business proximately resulting from U-Haul's wrongful acts.  You are not required to calculate actual damages with absolute exactness—you may make reasonable approximations. But an award of actual damages to PODS must be just and reasonable, based on facts, and proved by PODS by a preponderance of the evidence.

In addition to PODS' actual damages, you may also make an award based on an accounting of U-Haul's profits if you find that:

- U-Haul's conduct was willful and deliberate; or
- U-Haul was unjustly enriched; or
- An award of U-Haul's profits is necessary to deter U-Haul's future conduct.

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalizes on and appropriates the goodwill of a plaintiff.

"Unjust enrichment" occurs if U-Haul receives a benefit to which it is not entitled.

In determining U-Haul's profits, PODS only is required to prove U-Haul's gross sales. U-Haul may then prove the amount of sales made for reasons other than the infringement.  U-Haul may also prove its costs or other deductions which it claims should be subtracted from the amount of its sales to determine its profits on such sales. Any costs or deductions that U-Haul proves by a preponderance of the evidence are required to be subtracted from the sales attributable to the infringement and the difference is the amount that may be awarded to PODS.

If you find that U-Haul infringed PODS' trademark, but you do not find that PODS sustained any actual damages or damages based on U-Haul's profits, you may return a verdict for PODS and award what are called "nominal" damages. By "nominal" I mean a small amount of damages that you, in your discretion, determine.

## COUNT III: FEDERAL TRADEMARK DILUTION

In Count III, PODS claims that U-Haul's use of "pods" or "pod" is likely to dilute the distinctiveness of PODS' trademarks. To prove its claim of likely dilution, PODS must prove the following facts by a preponderance of the evidence:

- PODS' trademark is famous and distinctive, either inherently or through acquired distinctiveness;
- U-Haul's use of "pods" or "pod" began after PODS' trademark "PODS" became famous; and
- U-Haul's use of "pods" or "pod" is likely to cause dilution by blurring of PODS' famous trademark.

To prevail on a claim for likely dilution of its trademarks, PODS must prove by a preponderance of the evidence that its trademarks were "famous" at the time of U-Haul's first use of "pods" or "pod." A trademark is "famous" if it is widely recognized by the general consuming public of the United States as the designation of the source of the owner's goods. In considering whether PODS' trademarks are "famous," you may consider all relevant factors, including the following:

- The duration, extent, and geographic reach of advertising and publicity of the trademark, whether advertised or publicized by PODS or third parties;
- The amount, volume, and geographic extent of sales of goods offered under PODS' trademark;
- The extent of actual recognition of PODS' trademark; and
- Whether PODS' trademark was registered on the Principal Register of the United States Patent and Trademark Office.

PODS claims that U-Haul's use of "pods" or "pod" is likely to blur PODS' trademark. Likelihood of dilution by blurring occurs when the similarity between U-Haul's use of "pods" or "pod" and PODS' famous trademark impairs the distinctiveness of the famous trademark. In

determining whether U-Haul's use of "pods" or "pod" is likely to blur the distinctiveness of

PODS' trademark you may consider all relevant factors, including the following:

- The degree of similarity between U-Haul's use of "pods" or "pod" and PODS' trademarks;
- The degree of inherent or acquired distinctiveness of PODS' trademark;
- The extent to which PODS is engaged in substantially exclusive use of its trademark;
- The degree of recognition of PODS' trademark;
- Whether U-Haul intended to create an association with PODS' trademark; and
- Any actual association between U-Haul's use of "pods" or "pod" and PODS' trademarks.

PODS is not required to prove actual or likely confusion or actual economic injury to

prove that blurring is likely.

## **Affirmative Defenses to Claim of Federal Trademark Dilution**

If you find that U-Haul has engaged in federal trademark dilution, you should next consider U-Haul's affirmative defenses of descriptive fair use and genericness, on which I previously instructed you. If you find that U-Haul has proven its descriptive fair use or genericness defenses by a preponderance of the evidence, it is also a defense to federal trademark dilution.

If you find that U-Haul's use of "pod" and "pods" is likely to dilute PODS' trademark, and U-Haul does not have a defense to the likely dilution, you must consider whether, and to what extent, monetary relief should be awarded. You may award PODS monetary relief if U-Haul's conduct was willful.

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalized on and appropriated for itself the goodwill of a plaintiff.

If you find U-Haul has willfully violated PODS' trademark rights, you may award actual damages. PODS may recover the economic injury to its business proximately resulting from U-Haul's wrongful acts. You are not required to calculate actual damages with absolute exactness—you may make reasonable approximations. But any award of actual damages to PODS must be just and reasonable, based on facts, and proved by PODS by a preponderance of the evidence.

In addition to PODS' actual damages, you may also make an award based on an accounting of U-Haul's profits as a result of U-Haul's willful violation of PODS' trademark rights.

A defendant commits a "willful violation" of a trademark when that defendant knowingly and purposefully capitalized on and appropriated for itself the goodwill of a plaintiff.

In determining U-Haul's profits, PODS is only required to prove U-Haul's gross sales. U-Haul may then prove the amount of sales made for reasons other than the infringement. U-Haul also may prove its costs or other deductions which it claims should be subtracted from the amount of its sales to determine its profits on such sales. Any costs or deductions that U-Haul proves, by a preponderance of the evidence, are required to be subtracted from the sales attributable to the infringement and the difference is the amount that may be awarded to PODS.

**COUNT IV: <u>COMMON LAW TRADEMARK INFRINGEMENT</u>**

If you find for PODS on Count I (federal trademark infringement), you will also find in favor of PODS on Count IV, common law trademark infringement.  If you find against PODS on Count I, you will find against PODS on Count IV.  Therefore, you do not need to separately consider Count IV in your deliberations.

## COUNT V: <u>FLORIDA STATUTORY TRADEMARK DILUTION</u>

In Count V, PODS claims that under state law U-Haul's use of the word "pod" or "pods" is likely to dilute the distinctiveness of PODS' trademark. PODS' dilution claim under Florida state law is similar to its federal dilution claim. To prove its claim of likely dilution under state law, PODS must prove the following facts by a preponderance of the evidence:

- PODS' trademark is famous in the State of Florida;
- U-Haul's use of the term "pod" and "pods" began after PODS' trademarks became famous;
- U-Haul's use of the term "pod" and "pods" was commercial;
- U-Haul's use of the term "pod" and "pods" is likely to cause dilution by blurring of PODS' famous trademark; and
- U-Haul's use of the term "pod" and "pods" decreases the commercial value of PODS' trademarks.

To prevail on a claim for likely dilution of its trademark, PODS must prove by a preponderance of the evidence that its trademark was "famous" in Florida at the time of U-Haul's first use of the term "pod" or "pods."  A claimed trademark is "famous" in Florida if it is widely recognized by the general consuming public in Florida as the designation of the source of the owner's goods.

In considering whether PODS' trademark is "famous" in the State of Florida, you may consider all relevant factors, including the following:

- The degree of inherent or acquired distinctiveness of PODS' trademark in Florida;
- The duration and extent of use of PODS' trademark in connection with the goods and services with which PODS uses the mark;
- The duration and extent of advertising and publicity of PODS' trademark in Florida;
- The geographical extent of the trading area in which PODS' trademark is used;
- The channels of trade for the goods or services with which PODS' trademark is used;
- The degree of recognition of PODS' trademark in the trading areas and channels of trade in this state used by PODS and U-Haul;

36

- The nature and extent of use of the same or similar mark by third parties; and
- Whether PODS' claimed "PODS" trademark is the subject of a Florida state registration or a federal registration.

**<u>Affirmative Defenses to Florida Statutory Trademark Dilution</u>**

If you find that U-Haul has engaged in state trademark dilution, you should next consider U-Haul's affirmative defenses of descriptive fair use and genericness, on which I previously instructed you. If you find that U-Haul has proven its descriptive fair use or genericness defenses by a preponderance of the evidence, it is also a defense to state trademark dilution.

If you find that U-Haul's use is liable for state trademark dilution, and U-Haul does not have a defense, you must consider whether, and to what extent, monetary relief should be awarded. Monetary relief is appropriate under this cause of action if PODS' mark is registered in Florida and PODS has proven by a preponderance of the evidence that U-Haul willfully intended to trade on PODS' reputation or cause dilution of PODS' famous mark.

If you find U-Haul has willfully violated PODS' trademark rights, you may award actual damages. PODS may recover the economic injury to its business proximately resulting from U-Haul's wrongful acts. You are not required to calculate actual damages with absolute exactness—you may make reasonable approximations. But any award of actual damages to PODS must be just and reasonable, based on facts, and proved by PODS by a preponderance of the evidence.  PODS is only claiming actual damages based on corrective advertising.

In addition to PODS' actual damages, you may also make an award based on an accounting of U-Haul's profits as a result of U-Haul's willful violation of PODS' trademark rights. In determining U-Haul's profits, PODS is only required to prove U-Haul's gross sales.  U-Haul may then prove the amount of sales made for reasons other than the infringement. U-Haul also may prove its costs or other deductions which it claims should be subtracted from the amount of its sales to determine its profits on such sales. Any costs or deductions that U-Haul proves, by a preponderance of the evidence, are required to be subtracted from the sales attributable to the infringement and the difference is the amount that may be awarded to PODS.

## COUNT VI: COMMON LAW UNFAIR COMPETITION

If you find for PODS on either Count I (federal trademark infringement) or Count II (federal unfair competition), you will find for PODS on Count VI, common law unfair competition.  If you find against PODS on both Count I and Count II, you will find against PODS on Count VI.  Therefore, you do not need to separately consider Count VI in your deliberations.

## COUNT VII: FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

In Count VII, PODS claims that U-Haul violated the Florida Deceptive and Unfair Trade Practices Act.  You may find U-Haul liable under the Florida Deceptive and Unfair Trade Practices Act if PODS proves by a preponderance of the evidence that:

1. U-Haul's conduct amounted to a deceptive act or unfair trade practice (that is, if you found U-Haul was liable under Count I, Count II, or both);

2. U-Haul's conduct caused PODS' injury; and

3. PODS suffered actual damages resulting from U-Haul's conduct.

If you found that U-Haul was liable for trademark infringement and/or unfair competition, you have already found that U-Haul has engaged in a deceptive act or unfair trade practice (Part 1).  You must still determine whether the second and third elements of the Florida Deceptive and Unfair Trade Practices Act have been met.

41

## Affirmative Defenses to FDUTPA Claim


If you find that U-Haul has violated FDUTPA, you should next consider U-Haul's

affirmative defenses of descriptive fair use and genericness, on which I previously instructed you.

If you find that U-Haul has proven its descriptive fair use or genericness defenses by a

preponderance of the evidence, it is also a defense to FDUTPA.

PODS must show that it suffered actual damages in order to prevail on its claim under the Florida Deceptive and Unfair Trade Practices Act.

You are not required to calculate actual damages with absolute exactness—you may make reasonable approximations. But an award of actual damages to PODS must be just and reasonable, based on facts, and proved by PODS by a preponderance of the evidence.

## COUNT VIII: UNJUST ENRICHMENT UNDER STATE LAW

In Count VIII, PODS claims that U-Haul has been unjustly enriched by U-Haul's use of

PODS' trademarks. The elements of unjust enrichment are:

• A benefit has been conferred upon U-Haul by PODS;
• U-Haul has knowledge of the benefit;
• U-Haul accepted and retained the benefit conferred by PODS; and
• The circumstances are such that it would be inequitable for U-Haul to retain the benefit without paying the value thereof.

If you find that the above elements have been met in this case by a preponderance of the

evidence, you may find U-Haul liable for unjust enrichment under Florida state law.

**Affirmative Defenses to Unjust Enrichment**

If you find that U-Haul has engaged in unjust enrichment, you should next consider U-Haul's affirmative defenses of descriptive fair use and genericness, on which I previously instructed you. If you find that U-Haul has proven its descriptive fair use or genericness defenses by a preponderance of the evidence, it is also a defense to unjust enrichment.

If you find that U-Haul is liable for unjust enrichment under Florida law, PODS may recover monetary damages as measured by the amount of unjust or wrongful enrichment, i.e., disgorgement of the benefits U-Haul realized for its wrongful acts. In determining U-Haul's profits, PODS only is required to prove U-Haul's gross sales. U-Haul may then prove the amount of sales made for reasons other than the infringement. U-Haul also may prove its costs or other deductions which it claims should be subtracted from the amount of its sales to determine its profits on such sales. Any costs or deductions that U-Haul proves by a preponderance of the evidence are required to be subtracted from the sales attributable to the infringement and the difference is the amount that may be awarded to PODS.

Of course, the fact that I give you instructions concerning the issue of PODS' damages should not be interpreted in any way as an indication that I believe that PODS should, or should not, prevail in this case.

Your verdict must be unanimous—in other words, you must all agree. Your deliberations are secret, and you will never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you are discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But do not give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you are judges—judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court. A verdict form has been prepared for your convenience.

[Explain verdict form]

Take the verdict form with you to the jury room. When you have all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you will return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I will respond as promptly as possible—either in writing or by talking to you in the courtroom.

Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.