# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

PODS ENTERPRISES, LLC,

  Plaintiff/Counterclaim-Defendant,

v.                                                                  CASE NO.: 8:12-cv-01479-JDW-MAP

U-HAUL INTERNATIONAL, INC.,

  Defendant/Counterclaim-Plaintiff.

---

## U-HAUL'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, MOTION FOR NEW TRIAL, OR TO ALTER THE JUDGMENT

Pursuant to Fed. R. Civ. P. 50(b), U-Haul renews its motions for judgment as a matter of law on PEI's claims, PEI's requests for actual damages and disgorgement of profits, U-Haul's defense of genericness *ab initio*, and U-Haul's Second and Third Counterclaims for cancellation of two PEI trademark registrations. In the alternative, U-Haul moves under Fed. R. Civ. P. 59 for a new trial on the foregoing and on its defenses of genericide and descriptive fair use, or for a reduction of the damages and profits award.

## I.     Introduction

U-Haul never used the word "pod" or its plural, "pods," as a trademark. Instead, U-Haul always used "pod" or "pods" in the same way it uses other generic words like "truck," "van," or "box"—together with the famous U-HAUL® trademark and in the dictionary sense of the word, "broadly, a protective container or housing" (MERRIAM-WEBSTER DICTIONARY 1983, DX0588) or a "detachable container of some kind" (RANDOM HOUSE DICTIONARY 1987, DX0589).

A trademark owner's "exclusive right to use" a registered mark does not extend to fair, descriptive use by a competitor. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117-18 (2004). And even an incontestable federal registration is void and cancellable if

1

the term was generic at the time it was adopted or if it currently is generic.

Here, the jury created liability where none could exist as a matter of law. Federal dilution cannot occur unless a defendant uses the term as a mark, which U-Haul did not do. And, even fully credited, the *de minimis* actual confusion asserted by PEI does not support a finding of likelihood of confusion—and the same can be said of every other factor identified by the Eleventh Circuit as relevant. Regardless, some amount of confusion is the price a plaintiff pays for choosing a mark that can be (and often is) used in a descriptive or generic sense. *Id.* at 122.

Having found liability where the law says none exists, the jury awarded excessive damages for corrective advertising and an accounting for profits untethered to any evidence. PEI has spent zero money on corrective advertising, and PEI's purported mark suffered no diminution in value. Yet the jury awarded $45 million in corrective advertising damages alone— enough to fund PEI's entire annual internet advertising budget *for fifteen years*. The jury effectively required U-Haul to fund a Super Bowl ad, where the evidence—as a matter of law— supported nothing more than a local-access cable commercial, if anything at all. Such an award cannot survive the "greater scrutiny"[1] required of corrective advertising damages. Similarly, despite the lack of evidence that U-Haul earned any profits *caused by* the generic use of "pod(s)" on its website, the jury awarded $15.7 million in profits, an amount that could only be appropriate if *every person who saw the term* generated profits for U-Haul—even those who thought "pod(s)" was generic, or specifically sought to rent from U-Haul. The law does not permit such speculative awards.

U-Haul is entitled to judgment as a matter of law because, even when all evidence is viewed in PEI's favor, it was legally insufficient for the jury to find for PEI. Fed. R. Civ. P. 50(a)(1); *Optimum Techs, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1251-52

---

[1] Restatement (Third) of Unfair Competition  ("Restatement") § 36 cmt. f at 382 (1995).

(11th Cir. 2007).[2] Alternatively, U-Haul is entitled to a new trial because the verdict is "contrary to the weight of the evidence." *King v. Exxon Corp.*, 618 F.2d 1111, 1115 (5th Cir. 1980).

## II.  The Jury's Monetary Award Is Improper as a Matter of Law and Equity

PEI sought two forms of monetary relief: (1) actual damages "based on corrective advertising" and (2) U-Haul's profits "attributable to the infringement."[3] The Lanham Act makes clear that monetary awards are "subject to the principles of equity." 15 U.S.C. § 1117(a). The jury's award of $45 million in actual damages and $15.7 million in profits[4] is excessive, legally unsupported, improper, and entirely inequitable. Accordingly, U-Haul is entitled to judgment as a matter of law that PEI failed to establish any basis for damages or profits or, alternatively, a new trial on damages and profits or remittitur of the verdict under Rule 59.

### A.  The Jury's Actual Damages Award Was Legally Improper

PEI "is only claiming actual damages based on corrective advertising."[5] Corrective advertising damages, usually reserved for false advertising and Federal Trade Commission cases, are "intended to compensate a plaintiff for the cost of advertising undertaken to restore the loss in value of plaintiff's mark due to the defendant's infringing activity." *Eu Yan Sang Int'l. Ltd. v. S & M Enters. (U.S.A.) Enter. Corp.*, No. 09-CV-4235, 2010 WL 3824129, at *6 (E.D.N.Y. Sept. 8, 2010); *see also Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1375 (10th Cir. 1977); McCarthy, Thomas J., 4 *McCarthy on Trademarks & Unfair Competition*  §§ 30:80, 30:85 (4th ed. 2015) ("McCarthy").

To support a damages award, PEI had to present evidence from which the jury could find (1) the "existence of damages," (2) proximately caused by U-Haul, and (3) a basis for

---

[2] U-Haul did not move for judgment as a matter of law on its affirmative defenses of genericide or fair use, and therefore, U-Haul only moves for a new trial as to those issues.
[3] Dkt. 341 at 25-27, 33-34, 39, 43, 46.
[4] Dkt. 337 at 4-5.
[5] Dkt. 341 at 39; *see also* Dkt. 382 at 59:4-11.

determining the amount of damages "with specificity."[6] *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, No. 1:04-CV-1082, 2006 WL 1663357, *2-*3 (N.D. Ga. June 14, 2006), *aff'd*, 496 F.3d 1231 (11th Cir. 2007); *see also Babbit Elecs., Inc., v. Dynascan Corp.*, 38 F.3d 1161, 1182 (11th Cir. 1994). PEI failed as to each element.

### 1.   PEI Failed to Present Evidence of Harm to the PEI Brand

No witness identified any profits or sales PEI lost to U-Haul.[7] In fact, PEI's sales and profits did nothing but *increase* while "pod(s)" was on U-Haul's website. PEI's volume and profitability went up, corporate-owned locations had growth rates over 10%, and franchisee profitability went up over 200%.[8] PEI's financial health was totally unaffected by U-Haul.[9]

To show the "existence of damages" for corrective advertising, PEI therefore had to present evidence that the PODS mark lost value. But the only evidence, PEI's own "trade name" valuation, showed that the fair market value of PODS *increased* by over $15 million—more than 25%—while U-Haul used "pod(s)" on its website.[10] PEI offered no evidence that its brand value would have increased further without U-Haul's actions.[11] Instead, PEI admitted that U-Haul's alleged "misuse" of its trademark "hasn't at all" affected PEI's brand awareness.[12]

PEI relied solely on Dr. Winer for its corrective advertising theory, although Dr. Winer admitted that he (1) did not attempt to value the PEI brand and (2) is not an expert in brand

---

[6] The Court refused, over U-Haul's objection, to instruct the jury on how to calculate corrective advertising as a measure of damages. Dkt. 381 at 268:14-269:12, 274:23-275:2.

[7] Dkt. 376 at 184:1-6; Dkt. 377 at 28:4-10.

[8] DX00289; Dkt. 375 at 243:1-245:10.

[9] Dkt. 375 at 245:15-19. Ms. Lehman said that PEI did well financially but not as well as it would have liked. *Id.* The Court sustained U-Haul's objection to this speculative assertion. *Id.* at 246:6-11.

[10] DX0360.0025; DX0361a.0026; Dkt. 376at 184:7-186:10.

[11] While PEI mentioned a lost sales survey, Dkt. 373 at 247:23-248:3; Dkt. 375 at 218:7-14, it failed to offer that survey, and admitted it did not show a causal link between U-Haul's use of "pods" and PEI's alleged lost sales, *id.* at 237:1-239:20; *see also* Dkt. 374 at 165:20-24.

[12] Dkt. 373 at 242:10-13.

valuation.[13] Dr. Winer testified about the harm he *felt* "ha[d] been done to the PODS brand by U-Haul's actions," but never identified that harm or provided any evidence that the PODS mark had declined in value.[14] The jury thus had no evidence demonstrating the "existence of damages."

### 2.   PEI Failed to Present Evidence That U-Haul Proximately Caused It Injury

PEI also had to show that U-Haul proximately caused its alleged injuries—namely, that it was harmed by U-Haul's use of the word "pod(s)." *Optimum Techs.*, 496 F.3d at 1252. As in *Optimum*, PEI offered only an expert opinion, and Dr. Winer never tied any purported harm to the PEI brand to *any* actions by U-Haul—much less to U-Haul's use of "pod(s)" on its website.[15]

An award of corrective advertising requires (1) evidence of actual confusion *plus* (2) a showing of past corrective advertising by the plaintiff *or* plaintiff's financial inability to pay for such advertising in the future:

> The fact that the plaintiff has engaged in the curative activities . . . is evidence that the expenditures were reasonable. On the other hand, a claim for expenditures to be undertaken in the future should be subject to greater scrutiny, and recovery for future expenses may be inappropriate unless the plaintiff can demonstrate a lack of resources or other reasonable justification for the failure to take the corrective measures prior to the litigation.

Restatement (Third) of Unfair Competition  ("Restatement") § 36 cmt. f at 382 (1995); *see also Data Race, Inc. v. Lucent Techs., Inc.*, 73 F. Supp. 2d 698, 725-26 (W.D. Tex. 1999); *Lurzer GMBH v. Am. Showcase, Inc.*, 75 F. Supp. 2d 98, 101 (S.D.N.Y. 1998), *aff'd*, 201 F. 3d 431 (2d Cir. 1999); *Thompson v. Haynes*, 305 F.3d 1369, 1382 (Fed. Cir. 2002).

PEI presented no evidence of actual confusion sufficient to establish causation. It offered no confusion survey, but relied entirely on eight purported instances of actual confusion. Even if all eight instances were credited, they are insufficient as a matter of law to establish actual

---

[13] Dkt. 376 at 184:7-186:10.
[14] *Id*. at 126:7-18.
[15] *Id*. at 141:25-142:10.

confusion. PEI receives calls from a million customers each year, and it records every call.[16] PEI has approximately *seven million recorded phone calls* from which it could draw evidence of confusion—yet it offered *just one* recording of an allegedly confused customer, and that person took the stand and denied ever having been confused, consistent with his earlier sworn affidavit.[17] The other purported instances similarly failed to establish that any confusion was caused by U-Haul's use of the word "pod(s)" on its website.[18] Nor did PEI put forth any evidence of confusion from the voluminous records that U-Haul produced in discovery.

Given PEI's vast numbers of customers and recorded calls, even eight legitimate instances of confusion are *de minimis. Tana v. Dantanna's*, 611 F.3d 767, 779 (11th Cir. 2010); *Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1509 (11th Cir. 1985). Moreover, these isolated incidents must be considered in conjunction with all other evidence relating to confusion, including survey evidence. *Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 319 (5th Cir. 1981). As discussed below, PEI provided no survey, whereas U-Haul presented two surveys demonstrating that confusion is <u>not</u> likely. Thus, the evidence did not support any liability based on likelihood of confusion, much less establish the causation required for a corrective advertising damages award.

Moreover, even if PEI's *de minimis* actual confusion evidence is fully credited, the record is devoid of any evidence that PEI previously engaged in corrective advertising, and PEI's expert admitted that PEI was fully capable of funding its own corrective advertising campaign.[19] This Court previously relied upon *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1241 (11th Cir. 2008) in noting that "corrective advertising damages have been awarded in the Eleventh Circuit

---

[16] Dkt. 374 at 150:19-151:3, 151:8-22, 152:2-18; DX0283.0052; Dkt. 375 at 60:2-5.
[17] Dkt. 375 at 85:9-13, Dkt. 378 at 77:3-9, DX0521.
[18] *See, e.g.*, Dkt. 375 at 178:16-179:21 (PEI franchisee unable to provide name of allegedly confused consumer); 189:22-190:2, 191:10-19 (same); 203:24-204:13 (no knowledge of whether customer used U-Haul website).
[19] Dkt. 374 at 47:7-48:6; Dkt. 381 at 132:14-133:2.

without regard to financial ability to pay." Dkt. 258 at 7. But the Eleventh Circuit did not discuss

that issue—it merely mentioned it in passing as one of the defendant's arguments. *Aronowitz* did

not hold that a plaintiff's ability to pay was irrelevant. Further, the *Aronowitz* jury awarded only

"a small percentage" of the modest corrective advertising damages sought in that case, 513 F.3d

at 1241 ($25,000 of the $75-120,000 claimed), a stark contrast to the $45 million awarded here.

### 3.   PEI Failed to Support the Amount of Actual Damages Awarded

The jury awarded $45 million in corrective advertising damages (Dkt. 337 at 4), based

entirely on the testimony of Dr. Winer, who suggested that PEI needed such excessive amounts

to run corrective advertisements on the internet. Putting this amount in perspective, PEI's *total*

annual spend on pay-per-click advertising is only around $2 million, and PEI's *total* annual

spend on internet display advertising is less than $1 million.[20] Thus, the award is over _twenty_

_times_ PEI's annual pay-per-click budget, nearly _fifty times_ its display advertising budget, and

_more than twice_ PEI's annual ad spend in _all_ media (TV, radio, etc.) from 2010 to 2014.[21]

The jury's award is excessive and inequitable because it is not based on reliable evidence

following a legally proper methodology for calculating corrective advertising damages.[22] The

seminal corrective advertising case, *Big O*,[23] and its progeny use the *defendant's* relevant

advertising expenditures as the starting point: they award a portion of those expenditures for use

in corrective advertising. As PEI repeatedly pointed out, U-Haul did not spend any money

advertising on the internet.[24]

Dr. Winer could not start with U-Haul's nonexistent internet advertising, so he started

---

[20] DXDEM055; DX0704.

[21] *See* Dkt. 380 at 271:16-272:2; Dkt. 373 at 197:12-198:5; PX-16.

[22] U-Haul filed a pretrial *Daubert* motion to exclude Dr. Winer's testimony on damages (Dkt. 152 at 22-24), which the Court denied (Dkt. 245).

[23] Although without corrective advertising discussion, the old Fifth Circuit adopted and relied upon *Big O* in *Capital Films Corp. v. Charles Fries Prods., Inc.*, 628 F.2d 387, 393 (5th Cir. 1980).

[24] Dkt. 373 at 201:3-9; Dkt. 382 at 57:13-17.

with PEI's. But, because PEI has not spent one cent on *corrective* advertising, Dr. Winer used an inflated version of PEI's normal expenditures. First, he relied on Mr. Smith's calculation of "impressions" of U-Haul's use of the word "pod" or "pods"—a number he defined to include not just those who actually visited U-Haul's website but also everyone who searched for "pods" on Google, even using the term generically.[25] Then, Dr. Winer multiplied the number of impressions by three, on the unsupported theory that it takes three correct impressions to remedy one incorrect impression.[26] He then multiplied that number *not* by the actual cost of PEI's pay-per-click advertising campaigns, but by a higher purported cost to obtain impressions with pay-per-click advertising.[27] He thus argued that PEI would need to spend $95 million on corrective pay-per-click advertising[28]—nearly *fifty times* PEI's annual pay-per-click budget.

PEI's actual pay-per-click advertising spend was only about $2 million a year.[29] The *Big O* line of cases caps corrective advertising at 25% of the relevant spend. *See Big O*, 561 F.2d at 1375. Thus, while any corrective advertising damages should have been based on U-Haul's internet advertising spend ($0), at a minimum they should have been capped at $1 million (25% of PEI's $4 million two-year spend), even using PEI's novel theory based on its own spending.

Finally, the corrective advertising award is arbitrary. PEI argued that it should receive $95.4 million; U-Haul's expert testified that PEI was entitled, if at all, only to $1.63 million.[30] In awarding $45 million, the jury appears simply to have split the difference. But corrective advertising is to correct an *actual* and *quantifiable* harm—not to provide a windfall based on speculation. 5 McCarthy § 30:84. No reasonable jury could have found that $45 million in

---

[25] Dkt. 376 at 145:15-146:16 (Dr. Winer explaining his reliance on Mr. Smith's calculations); 84:24-92:22 (Mr. Smith's explanation of his calculations).
[26] Dkt. 376 at 148:2-17.
[27] *Id*. at 148:18-149:12.
[28] *Id*. at 149:17-19.
[29] Dkt. 380 at 271:24-25.
[30] *Id*. at 268:5-270:1.

damages was necessary when the same result could be achieved for tens of millions less.

**B. PEI Is Not Entitled to U-Haul's Alleged Profits**

**1. The Evidence of Profits "Attributable to" U-Haul's Use of "pod(s)" Was Legally Insufficient**

U-Haul is entitled to judgment as a matter of law on PEI's claim for profits. PEI had the burden of proving (1) that U-Haul's U-Box business made a profit, and (2) the amount of those profits "attributable to" U-Haul's use of "pod(s)." *Optimum Techs., Inc. v. Home Depot USA, Inc.*, 217 F. App'x 899, 902 (11th Cir. 2007); *Drew Estate Holding Co. v. Fantasia Distrib., Inc.*, No. 11-CV-21900, 2014 WL 1319328, at *7 (S.D. Fla. Apr. 1, 2014). Even accepting the flawed contention that U-Haul's U-Box business made profits (although it did not),[31] PEI still failed to present any evidence establishing that U-Haul's use of "pod(s)" contributed at all to those alleged profits—much less a specific *amount* of profits attributable to that use.

PEI submitted that U-Haul gained a 34% increase in website traffic from its use of the word "pod(s),"[32] but even if this number were not misleading, PEI never showed that the marginal increase in traffic resulted in any sales or profits. The evidence actually showed only a 1.98% difference in *traffic*.[33] But PEI offered no evidence that such additional traffic resulted in a single *sale* by U-Haul[34]—which is not surprising, because stores and phone sales, not the website, are U-Haul's primary sales source.[35]

Recognizing that PEI bears the burden of showing causation but had no evidence,[36] PEI's damages expert skirted the issue by opining that PEI is entitled to a portion of U-Haul's revenues

[31] Dkt. 380 at 286:3-6; 288:12-20; 303:19-23; 304:3-11.
[32] Dkt. 376 at 254:16-17, 255:6-7.
[33] PEI found its number in a document showing that—during a short period in one market—only 3.65% of all visits to U-Haul's website through search engines came from searches including "pod" or "pods." DX0406.0005; Dkt. 377 at 254:7-15. After U-Haul added "pod(s)" to the website, the number increased to 5.63%, or as PEI characterized it, a 34% increase—which included searches like "uhaul pod rental" and "can you play ipod in a uhaul." *Id.*
[34] PEI's damages experts admitted they did not undertake this analysis. Dkt. 376 at 184:1-6; Dkt. 377 at 52:4-53:8.
[35] Dkt. 377 at 251:16-252:14; DX0408A.
[36] Dkt. 377 at 53:5-8; Dkt. 376 at 257:13-258:12.

(not profits) that "correlates" with U-Haul's use of "pod(s)."[37] But correlation is not causation. *Empire Today, LLC v. Nat'l Floors Direct, Inc.*, 788 F. Supp. 2d 7, 30 (D. Mass. 2011). A reasonable jury could not have found that PEI was entitled to any portion of U-Haul's alleged profits.

### 2.   The Profits Award Is Unsustainable Under Principles of Equity

Monetary awards under the Lanham Act are "subject to the principles of equity" and must "constitute compensation and not a penalty." 15 U.S.C. § 1117(a). The Court must ensure that the jury award meets both principles. *See Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993). "The statute . . . provides for the adjustment of any profits award if it is . . . excessive." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1495 (11th Cir. 1983).

Disgorgement of U-Haul's profits is not automatic simply because liability was found. *Champion Spark Plug Co. v. Sanders*, 331 U.S. 125, 131 (1947). Rather, the final determination of a profits award is an equitable decision for the Court that turns on the circumstances of the case. *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *see also* 5 McCarthy § 30:59; 15 U.S.C. § 1117(a). None of the three justifications for an award of profits—that U-Haul's conduct was willful, that U-Haul needs to be deterred, or that U-Haul was unjustly enriched—is applicable here. *Optimum Techs., Inc.*, 217 F. App'x at 902.

The equities clearly disfavor an award of U-Haul's profits. The only evidence with regard to U-Haul's intent shows that it <u>never</u> intended to deceive anyone, nor did it palm off its U-Box pods as PODS brand pods from PEI, as the Court already acknowledged.[38] The evidence shows that U-Haul long believed the words "pod" or "pods" were generic; U-Haul never used those words other than generically or descriptively; U-Haul never used the words on U-Box containers

---

[37] Dkt. 376 at 258:8-12.
[38] Dkt. 381 at 262:20-265:20 (overruling PEI's objections).

themselves; U-Haul's website contained clear U-Haul brand elements distinguishing it from the PODS brand; and U-Haul never used any of the PODS brand elements anywhere.[39]

As with punitive damages, the purpose of disgorgement is deterrence, not compensation. 5 McCarthy § 30:96; *see* 22 Am. Jur. 2d *Damages* § 559 (2015). This Court already held that this is not "the type of case that supports an award of punitive damages" because "[t]here is a legitimate and substantial dispute about whether there was an infringement."[40] For the same reason, an award of profits is inappropriate. U-Haul believed it could fairly use "pod(s)," and the Court recognized the strength of U-Haul's evidence supporting that belief.[41] An injunction is more than sufficient to deter U-Haul's future use of "pod(s)."

Finally, the jury lacked sufficient evidence to conclude that U-Haul was unjustly enriched. "Under the unjust enrichment rationale, 'a defendant becomes accountable for its profits when the plaintiff can show that were it not for defendant's infringement, the defendant's sales would otherwise have gone to the plaintiff.'" *Gidaex, S.r.L v. Campaniello Imps., Ltd.*, 82 F. Supp. 2d 136, 141-42 (S.D.N.Y. 2000) (quoting *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1538 (2d Cir. 1992). Here, not only did PEI fail to show evidence of any lost sales, but it also offered no evidence showing U-Haul earned a profit based on its use of the word "pod(s)." *See supra* Section II.B.1. The unsupported and excessive damages award cannot be sustained under the Lanham Act as a matter of law or under the principles of equity.

### C.  PEI Is Not Entitled to Monetary Recovery on Its State Law Claims

For the reasons stated above and the additional reasons stated below, PEI is not entitled to damages for its claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") or the Florida dilution statute.

---

[39] Dkt. 377 at 207:7-23; DX0412; DX0415; DX0420; DXDEM021; DXDEM028.
[40] Dkt. 381 at 202:24-203:5.
[41] *Id*. at 217:12-20.

11

To the extent it is based on allegations independent of those underlying PEI's trademark infringement claims, "[PEI's] claim for damages under FDUTPA has three elements: '(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.'" *N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, 666 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) (citation omitted). No other forms of damages are available, including lost profits. *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1331 (S.D. Fla. 2012); *City First Mortg. Corp. v. Barton*, 988 So.2d 82, 86 (Fla. Dist. Ct. App. 2008); *Rollins, Inc. v. Butland*, 951 So.2d 860, 869-70 (Fla. Dist. Ct. App. 2006). And "causation must be direct, rather than remote or speculative." *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012).

Moreover, "actual damages" is limited in the context of FDUTPA and does not include corrective advertising. *Eclipse Med., Inc. v. Am. Hydro-Surgical Instr., Inc.*, 262 F. Supp. 2d 1334, 1357 (S.D. Fla. 1999). Because PEI presented no evidence showing (1) reduction in the value of the PODS mark, (2) causation, or (3) how much *actual* damage was done, U-Haul is entitled to judgment as a matter of law on PEI's FDUTPA claim (Count VII).

A prerequisite to recovery under the Florida dilution statute is ownership of a Florida state trademark registration, which PEI did not have when it filed this lawsuit.[42] Accordingly, PEI is not entitled to damages under that statute, or at the very least, is not entitled to damages incurred before August 4, 2014, the date PEI's state registrations issued. *See* Fla. Stat. § 495.151(2); *cf. Gaia Techs. Inc. v. Recycled Prods. Corp.*, 175 F.3d 365, 375-76 (5th Cir. 1999) (JMOL where plaintiff obtained trademark *after* filing suit). Further, the same arguments regarding PEI's inability to recover under the Lanham Act apply equally here. PEI presented no evidence showing harm or the amount of harm, including in the state of Florida.

---

[42] PX-11-PX-14.

### III.   U-Haul Is Entitled to Judgment as a Matter of Law

#### A.  The Term "pod(s)" Was Generic *Ab Initio*

Pursuant to Rule 50(b), U-Haul renews its Motion for Judgment as a Matter of Law on the issue of genericness *ab initio* (Dkt. 348), for the reasons stated in the Motion and Reply (Dkt. 353).[43] The evidence was overwhelming and uncontroverted that "pod(s)" meant "containers for the storage and transportation of goods"—the very goods described in PEI's earliest trademark registration—before PEI's adoption of "pods" as its trademark.[44] The Court's Order (Dkt. 369) denying U-Haul's motion erred in several respects, two of which are highlighted here.

*First*, the Court refused to set aside the jury's acceptance of PEI's legally flawed, overly narrow interpretation of the relevant scope of analysis, under which genericness would be determined solely by focusing on the use of "pod(s)" *within the residential portable storage industry*. The Court acknowledged the *legal* support for U-Haul's position that the genericness analysis should not be limited to the industry.  *See* Dkt. 369 at 18 ("[t]here is authority for U-Haul's position"), 19 ("U-Haul's position has some support in the case law"). But it concluded that "to adopt U-Haul's position in this case would require drawing inferences from the evidence that the jury declined to draw." *Id.* at 18. That was error, as the jury is not entitled to draw inferences contrary to law. As a matter of law, the first to use a generic term in a particular industry does not acquire trademark rights in the term; if it did, only one airline could now operate "shuttle" flights between cities. *See E. Air Lines, Inc. v. N.Y. Air Lines, Inc.*, 559 F. Supp. 1270, 1274-75 (S.D.N.Y. 1983). PEI's evidence that it found no use of the term *in the industry* prior to adopting it as a mark, Dkt. 369 at 16-17, is legally irrelevant.

*Second*, the Court held that "the jury did not have to believe [the documents relied on by

---

[43] U-Haul's motion on the issue of genericness *ab initio* (Dkt. 348) was made under Rule 50(a), pursuant to the Court's pre-judgment Order (Dkt. 343) that U-Haul brief its oral motion for directed verdict made during trial.
[44] *See* Dkt. 348 at 5-11; Dkt. 380 at 28:14-21.

Dr. Leonard] were a representative 'cross-section' of documents," Dkt. 369 at 8. The law, however, does not require any weighing of genericness *ab initio* evidence against some larger volume of which it is a "cross-section." "[E]vidence of *any significant generic usage*" establishes genericness *ab initio*, regardless of any non-generic usage. Restatement § 15 cmt. c (emphasis added). No case law requires balancing generic and non-generic uses; instead, cases finding marks generic *ab initio* rely universally on the types of evidence U-Haul presented—though much less of it. *See, e.g.*, *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1359 (11th Cir. 2007); *Harley Davidson, Inc. v. Grottanelli*, 164 F.3d 806, 812 (2d Cir. 1999); *Nassau v. Unimotorcyclists Soc'y of Am., Inc.*, 59 F. Supp. 2d 1233, 1239 (M.D. Fla. 1999).

Moreover, the Court acknowledged that the documents described and offered by Dr. Leonard (including dictionaries, articles, books, and patents) "speak for themselves and should have been considered by the jury"—yet it apparently disregarded them based on PEI's argument that many of them were provided by counsel.[45] But nothing precludes an expert from relying on others to collect relevant materials,[46] and the documents at issue constituted significant, relevant evidence that should have been considered regardless of its source. Even if U-Haul "cherry picked" examples, as PEI argues, it is telling that PEI presented <u>no</u> evidence rebutting or contradicting the significant documentary evidence that "pod(s)" was generic *ab initio*. Thus, the evidence was "so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." *Kaw v. Sch. Dist. of Hillsborough Cnty.*, No. 8:07-CV-2222, 2010 WL 1730794, at *2 (M.D. Fla. Apr. 27, 2010), *aff'd*, 434 F. App'x 858 (11th Cir. 2011).

---

[45] Dkt. 369 at 8.
[46] *See* Dkt. 380 at 56:6-57:20.

### B.  U-Haul is Entitled to Judgment on Dilution (Counts III and V)

#### 1.  U-Haul Never Used "pod" or "pods" as a Trademark

"A non-trademark use does not and cannot dilute by blurring." 4 McCarthy § 24:122.

Thus, PEI's dilution claims can survive only if U-Haul used "pods" as a trademark. *See* 15

U.S.C. § 1125(c)(1); 15 U.S.C. § 1125(c)(2)(B); *see also Nat'l Bus. Forms & Printing, Inc. v.*

*Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012).

No evidence showed U-Haul ever using "PODS" as a trademark—for example, with a

"TM" symbol, in all caps, as an acronym, or otherwise as a source-identifier. Instead, the words

"pod" and "pods" appeared on the U-Haul website only as generic and descriptive nouns, always

in combination with U-Box or U-Haul branding. PEI repeatedly admitted that U-Haul's use of

"pod(s)" was in its generic or descriptive sense.[47] Letters from PEI's general counsel sent prior

to the lawsuit accused U-Haul of using the words "generically" and "descriptively," and no

witness refuted this characterization.[48] Such use, by definition, is <u>not</u> trademark use. *See Lone*

*Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 361 (11th Cir. 2007). It

is thus insufficient to establish dilution. *See Avery Dennison Corp. v. Sumpton*, 189 F.3d 868,

880 (9th Cir. 1999); *see also World Triathlon Corp. v. Dawn Syndicated Prods.*, No. 8:05-CV-

983, 2007 WL 2875456, at *9 (M.D. Fla. Sept. 28, 2007) (Whittemore, J.) (summary judgment

for defendants where defendants, "like many third parties, used the term . . . in accordance with

its general meaning as an English word."), *aff'd*, 303 F. App'x 808 (11th Cir. 2008).

Moreover, U-Haul used the term "pod(s)" only in lower case and in combination with the

U-HAUL® and Orange Color marks,[49] which PEI's Vice President of Marketing admitted were

---

[47] Dkt. 373 at 200:13-14; Dkt. 374 at 102:4-103:10; 105:2-106:13; Dkt. 376 at 97:21-26, 162:13-17, 163:3-8.
[48] DX0290, DX0292, Dkt. 374 at 106:8-13.
[49] *See* Dkt. 375 at 106:24-107:1; Dkt. 376 at 71:24-72:18; Dkt. 377 at 122:16-123:12, 223:16-224:6; Dkt. 379 at 48:4-49:5; DX0420; DX0701.

"famous" marks,[50] or with the registered U-BOX® mark.[51] U-Haul's use of "pod(s)" in this
manner cannot support a dilution claim. *See Merriam-Webster, Inc. v. Random House, Inc.*, 35
F.3d 65, 73 (2d Cir. 1994); *Munters Corp. v. Matsui Am., Inc.*, 730 F. Supp. 790, 795, 802 (N.D.
Ill. 1989), *judgment aff'd*, 909 F.2d 250 (7th Cir. 1990).

### 2.   PEI Failed to Provide Sufficient Evidence that the PODS Mark Is Famous

To prevail on a dilution claim, the Lanham Act requires a plaintiff to prove that its mark
is "famous," meaning "it is widely recognized by the general consuming public of the United
States as a designation of source of the goods or services of the mark's owner." 15 U.S.C.
§ 1125(c)(2)(A). Only the most famous marks, such as Coca-Cola®, meet this definition; "niche
fame," in which a mark is famous only within a certain industry, is insufficient. *See* 4 McCarthy
§ 24:104 (dilution statute is "restricted to 'household names'"). "Even a showing that a mark is
well-known in its particular market is insufficient, and instead the mark must 'engender
immediate recognition in the general public.'" *It's a 10, Inc. v. Beauty Elite Grp., Inc.*, No. 13-
CV-60154, 2013 WL 6834804, at *8 (S.D. Fla. Dec. 23, 2013) (citation omitted); *see also Top
Tobacco, LP v. N. Atl. Operating Co.*, 509 F.3d 380, 384 (7th Cir. 2007) (the Trademark Dilution
Revision Act ("TDRA") "eliminated any possibility of 'niche fame'"); *Bd. of Reg. Univ. of
Texas Sys. v. KST Elec. Ltd.*, 550 F. Supp. 2d 657, 678-79 (W.D. Tex. 2008) (Texas Longhorns
logo not "famous" outside of college sports fans); *Michael Caruso & Co. v. Estefan Enters., Inc.*,
994 F. Supp. 1454, 1463 (S.D. Fla.), *aff'd*, 166 F.3d 353 (11th Cir. 1998).

*First*, PEI's evidence failed to establish that the PODS mark is widely recognized by the
general consuming public of the United States. Instead, PEI's evidence showed only recognition
within the portable container industry, which comprises just 1% of the moving and storage

---

[50] Dkt. 374 at 9:15-9:21.
[51] *See* DX0420, DX0701.

industry,[52] which, in turn, is a small proportion of the "general consuming public of the United States." PEI offered a consumer survey, but it was designed only to "find out if [PODS] was well known in the industry in which it actually competes, which is the portable container industry."[53] That is the very definition of niche fame.

**Second**, even within its niche, PEI failed to establish awareness levels sufficient to show fame under the TDRA. *See* 4 McCarthy § 24:104 ("[A] minimum threshold survey response to prove 'fame' for dilution law should be in the range of 75%."). PEI's brand-tracking research, even if accepted as reliable, shows unaided awareness levels below 20% throughout, and aided awareness levels too low to establish widespread fame among the general consuming public.[54]

**Third**, PEI's mark cannot have been diluted unless it was famous before U-Haul's first use of the word "pod(s)." 4 McCarthy § 24:103; *Brain Pharma, LLC v. Scalini*, 858 F. Supp. 2d 1349, 1356-58 (S.D. Fla. 2012). U-Haul first used "pod(s)" on its rate cards in 2008 and on its website in 2010.[55] PEI's evidence did not establish fame among the general consuming public prior to 2008 or 2010. PEI's survey was conducted during the litigation and well after U-Haul began using "pod(s)."[56] Testimony regarding advertising and sales did not establish *any* amounts prior to 2008 or the amount of the 2010 ad spend pre-dating U-Haul's first use.[57] The only pre-2008 evidence to which PEI pointed was a 2006 "study" performed by a U-Haul vendor, which showed only 29% unaided awareness and 49% aided awareness in the niche portable storage market—after twice using the term "portable storage" and describing the relevant product as a

---

[52] DX0283.0005.
[53] Dkt. 376 at 14:2-13. U-Haul, conversely, presented a survey testing recognition among the "general consuming public of the United States," and it confirmed that the purported PODS mark is not famous. DX0642; Dkt. 380 at 205:25-206:11, 18-21.
[54] Dkt. 376 at 171:11-172:14; Dkt. 379 at 110:7-111:5, 112:18-25; DX0316.0041-0045.
[55] Dkt. 377 at 108:3-20, 23-25, 109:1-15, 194:3-5; DX0389.
[56] Dkt. 376 at 46:25-47:5; DX0313.0037.
[57] Dkt. 373 at 197:12-20.

"large" container delivered to your home.[58] Even viewed most favorably to PEI, these awareness

levels fall far below the legally-required threshold for fame. *See Carnival Corp. v. SeaEscape*

*Casino Cruises, Inc.*, 74 F. Supp. 2d 1261, 1271 (S.D. Fla. 1999); 4 McCarthy § 24:104.

### 3. PEI Presented No Evidence of Likelihood of Dilution by Blurring

"[L]ikelihood of confusion is not the test of dilution." 4 McCarthy § 24:72. Instead,

dilution by blurring requires that the plaintiff "comes to [] mind" for some appreciable number of

consumers when they view the defendant's use. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,

736 F.3d 198, 212 (2d Cir. 2013); McCarthy § 24:116. PEI offered no evidence that PEI "comes

to mind" when consumers view the U-Haul website.[59] U-Haul, conversely, presented a survey

demonstrating that PEI *does not* come to mind when consumers see the U-Haul site.[60]

Because no evidence showed that U-Haul used "pod(s)" as a trademark, that PODS was a

famous mark among the general consuming public of the United States before 2008, or that

consumers think of PEI when viewing "pod(s)" on U-Haul's website, PEI's evidence was legally

insufficient on Count III. For the same reasons, and because PEI presented insufficient evidence

that the PODS mark was famous in Florida, particularly prior to 2008, U-Haul also is entitled to

judgment on Count V. *See Provide Commerce, Inc. v. Preferred Commerce, Inc.*, No. 07-CV-

80185, 2008 WL 926777, at*4 (S.D. Fla. Apr. 4, 2008).

### C. U-Haul Is Entitled to Judgment as a Matter of Law on Counts I, II, IV, VI, & VIII Because PEI Did Not Demonstrate a Likelihood of Confusion

To prevail on its trademark infringement (Counts I and IV), unfair competition (Counts II

and VI), and unjust enrichment claims (Count VIII), PEI had to prove that (1) U-Haul used PEI's

---

[58] PX-77; Dkt. 379 at 20:23-22:6.
[59] Mr. Davis expressed an unsupported personal opinion that "pods" on the site "contribute[s] to the dilution," but not referring to dilution by blurring; he did not suggest consumers would associate the term with PEI, but instead that it would cause *genericide* (*i.e.*, lack of association with *any* company). Dkt. 373 at 176:25-177:14.
[60] DX0644; Dkt. 380 at 234:17-235:2.

trademark in commerce and (2) such use was likely to cause confusion. *Optimum Techs, Inc.*, 496 F.3d at 1241; *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012); *Hi Ltd. P'ship v. Winghouse of Fla., Inc.*, 451 F.3d 1300, 1301 (11th Cir. 2006).

Confusion must be likely, not merely possible. *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 651 (11th Cir. 2007). Infringement occurs only when confusion is likely among an "*appreciable number* of ordinarily prudent purchasers" in the relevant consuming public. *Id.* at 651 (emphasis added); *see also Vraiment Hospitality, LLC v. Binkowski*, No. 8:11-CV-1240, 2012 WL 1493737, at *10 (M.D. Fla. Mar. 19, 2012).[61]

PEI offered no empirical evidence (such as consumer surveys) and made no other effort to quantify the alleged likelihood of confusion.[62] U-Haul, conversely, submitted two surveys demonstrating that <u>confusion is not likely</u> when consumers (1) view the U-Haul website; or (2) encounter Google search results for "pods."[63] Mr. Poret's survey found a 0% net confusion rate, and Mr. Johnson's survey found that net confusion fell below 7% of survey respondents.[64] PEI's own expert, Dr. Ericksen, admitted that these percentages constitute affirmative evidence that confusion is not likely.[65] And, as discussed above in Section II.A.2, PEI's purported direct evidence of actual confusion was *de minimis*, not appreciable, *see Tana*, 611 F.3d at 779, particularly in light of the survey evidence, *see Sun Banks*, 651 F.2d at 319.

Setting aside the dearth of evidence suggesting *actual* confusion, PEI also failed to present evidence that would support a finding by the jury of likelihood of confusion among an *appreciable number* of reasonably prudent buyers based on the following factors: "(1) type of

---

[61] The Court declined to include this standard in the jury instructions, overruling U-Haul's objection. *See* Dkt. 381 at 227:11-228:5; Dkt. 294-3 at 39.
[62] When a plaintiff has the means, its failure to present such surveys "weighs against a finding of consumer confusion." *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 387-88 (2d Cir. 2005).
[63] Dkt. 379 at 148:13-149:3, 175:12-176:10; DX0517 and DX0519.
[64] Dkt. 379 at 148:24-149:3, 190:3-18.
[65] Dkt. 381 at 63:23-64:3.

mark; (2) similarity of mark[s]; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion." *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1313-14 (11th Cir. 2001) (affirming directed verdict under Rule 50(a) on § 43(a) claim). The evidence on these factors weighed clearly against a likelihood of confusion here.

*First*, the term "pod(s)" is weak as an indicator of source; PEI's competitors use it generically, as do thousands of customers and PEI's own employees and franchisees. *See infra* Section IV.A; *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 259 (5th Cir. 1980). Widespread generic or descriptive use establishes that a mark is weak, regardless of its incontestable status. *See* 6 McCarthy § 32:155; *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 171 (5th Cir. 1986). A certain amount of confusion "is a risk the plaintiff accepted when it decided to identify its product with a mark that uses a well known descriptive phrase." *KP Permanent Make-Up*, 543 U.S. at 122.

*Second*, the parties' respective uses of the term "pod(s)" create entirely different overall commercial impressions. PEI's trademark use of "PODS" always appears in all capital letters and in bold white text on a background of red squares, usually in conjunction with the phrase "Portable On Demand Storage."[66] U-Haul, conversely, always uses the term "pods" or its singular "pod" in lowercase letters identical to the surrounding plain text, and in proximity to the U-HAUL® and U-BOX® marks, which appear in much more prominent bold, stylized text, and the famous orange U-Haul color scheme.[67] The parties' websites and mobile apps each present these different commercial impressions.[68] These differences weigh heavily against likely confusion. *See, e.g.*, *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 796-97 (6th Cir. 2004); 4

---

[66] PX036; PX019A; DX0045; Dkt. 379 at 101:23-102:8.
[67] DX0412; DX0415; DX0420; DXDEM021; DXDEM028.
[68] *Compare* DX0420 and DX0421; DX0701.

McCarthy § 23:11.50 ("non-trademark use is highly unlikely to cause actionable confusion").

*Third*, the parties' products are "vastly different."[69] They differ in appearance, size, pricing, and delivery method.[70] Such differences, even among products in the same industry, weigh against a finding of likely confusion. *Ross Bicycles*, 765 F.2d at 1507.

*Fourth*, the parties sell their products through different channels of trade to different customers[71] and, *fifth*, they use entirely different advertising media (PEI engages in online, television, and other traditional advertising[72] while U-Haul relies on the ubiquity of its trucks and stores).[73] These differences further establish that confusion is unlikely. *Amstar*, 615 F.2d at 262.

*Sixth*, "the only relevant intent is intent to confuse," McCarthy § 23:113, and PEI failed to adduce any evidence that U-Haul intended to confuse consumers; rather, the testimony was uniformly to the contrary.[74] *See also Boston Duck Tours, LP v. Super Duck Tours, LLC*, 531 F.3d 1, 25-26 (1st Cir. 2008); *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1275 (11th Cir. 2006) (house mark use is "affirmative evidence of good faith").

In short, there was no evidence of likelihood of confusion among an appreciable number of consumers, entitling U-Haul to judgment as a matter of law on Counts I, II, IV, VI, and VIII.

## IV.   U-Haul Is Entitled to a New Trial

On a motion for new trial, the Court is free to weigh whether the evidence supporting the jury's verdict is outweighed by contrary evidence. *King*, 618 F.2d at 1115. The weight of the evidence on the issues of infringement, dilution, genericness *ab initio*, and monetary relief

---

[69] Dkt. 373 at 56:2-15.
[70] Dkt. 373 at 235:5-18; Dkt. 375 at 55:3-12, 63:16-22, 123:4-16, 177:2-17, 204:23-205:4; 206:1-5; DX0415; DXDEM023.
[71] Dkt. 379 at 101:1-7, 101:23-102:2, 102:12-21, 120:5-19, 121:1-7, 121:10-15, 121:17-122:18.
[72] Dkt. 373 at 23:16-24:2; 193:5-23, 194:7-23.
[73] Dkt. 377 at 89:7-25, 231:16-232:14.
[74] Dkt. 377 at 109:21-110:2, 112:1-11, 198:1-199:6.

overwhelmingly favors U-Haul. Accordingly, U-Haul is entitled to a new trial on all of the

foregoing issues. In addition, PEI presented virtually no evidence to rebut U-Haul's genericide

and descriptive fair use defenses, and U-Haul is entitled to a new trial on those as well.

> **A.      The Unrebutted Evidence Overwhelmingly Showed that PEI's Claimed
> Mark Currently Is Generic**

Generic words cannot be protected as trademarks, regardless of whether they are

registered. *See* 15 U.S.C. § 1065(4); 15 U.S.C. § 1064; *Welding Servs.*, 509 F.3d at 1358; 2

McCarthy § 12:1. Because the overwhelming weight of the evidence showed that PEI's claimed

mark is generic today (and was generic when U-Haul began using "pod(s)" on its website), U-

Haul is entitled to a new trial on its affirmative defense to all of PEI's claims that the term

"pod(s)," even if not generic *ab initio*, became generic prior to its use by U-Haul.

"Evidence relevant to the issue of genericness includes . . . competitors' use of the term,

consumer surveys, dictionary listings, and usage in newspapers, trade journals, and other

publications." Dkt. 258 at 3; *see* McCarthy § 12:13. U-Haul presented extensive evidence of

generic use of "pod(s)" for the goods that PEI, U-Haul, and their competitors sell, including

generic use by customers.[75] PEI's documents show hundreds of entities in the industry that used

"pod(s)" generically, and *scores* of competitors *still* using the word "pod(s)" to refer to moving

and storage containers.[76] While PEI's witnesses made broad claims about "thousands" of

branded uses by third parties,[77] PEI offered no evidence to support those broad, conclusory

statements. Indeed, PEI offered *just one* news story making branded use of PODS.[78]

Instead of trademark use, the evidence showed rampant generic use of "pod(s)" by PEI

---

[75] *E.g.*, DX0508; DX0602; DX0605; DX0607; DX0608; DX0609; DX0611; DX0612; DX0613; DX0617; DX0618; DX0619; DX0626; DX0627; DX0628; DX0629; DX0630.
[76] *See, e.g.*, DX0078; DX0079.
[77] Dkt. 373 at 242:1-9.
[78] PX-007.

and its franchisees.[79] Such "repeated use of ordinary words functioning within the heartland of their ordinary meaning, and not distinctively, cannot give [PEI] a proprietary right over those words, even if an association develops between the words and [PEI]." *Boston Duck Tours*, 531 F.3d at 21. PEI created a "culture" in which its own generic use of its alleged mark was widespread and accepted.[80] Such generic use by a plaintiff is "powerful evidence" of genericness. *Welding Servs.*, 509 F.3d at 1359; *see also McCarthy* § 12:13.

The notion that PEI's own generic use is merely "shorthand" for its own products, *see* Dkt. 369 at 15-16, is contrary to the case law and, as a matter of law, cannot support a jury finding of non-genericness. *See Nassau*, 59 F. Supp. 2d at 1238-39 (plaintiff's own generic use in reference to his own events established genericness of "unimotorcycle"); *In re Gould Paper Corp.*, 834 F.2d 1017, 1019 (Fed. Cir. 1987).

Further, as explained in U-Haul's prior motion (Dkt. 348 at 4-5), PEI's registrations are not dispositive. A registration's procedural presumption is "one of production rather than persuasion," and "[i]f sufficient evidence of genericness is produced to rebut the presumption, the presumption is 'neutralize[d]' and essentially drops from the case." *Retail Servs. Inc. v. Freebies Publ'g*, 364 F.3d 535, 542, 543 (4th Cir. 2004); *see also Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936-39 (7th Cir. 1986).

The Court's reliance on *Freebies* for the proposition that the jury could place "significant weight" on the incontestable status of PEI's registrations, Dkt. 369 at 17, is unsupported by the case law. *Freebies* affirmed summary judgment of genericness, holding that "incontestability is never a shield for a mark that is generic," 364 F.3d at 548, and that "one-sided evidence *necessarily* rebuts the presumption of non-genericness," *id*. at 546 (emphasis added). It

---

[79] *E.g.*, DX0005; DX0008; DX0025; DX0026; DX0054; DX0075; DX0076; DX0428; DX0432; DX0707.
[80] Dkt. 378 at 245:8-15.

concluded that a registration was not itself sufficient to create a jury issue on genericness. *Id*. at 543. Similarly, *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, adopted case law holding that "a preliminary determination by a low-level PTO administrator should not be accorded much weight, especially where the PTO officer did not have access to the full panoply of information that might inform" the relevant analysis. 237 F.3d 198, 220 (3d Cir. 2000). And *Dixie Consumer Products, LLC v. Huhtamaki Americas, Inc.* held that, "[w]ithout any substantive reasoning issued by the USPTO . . . the Court affords no weight to the USPTO's registration decision." 691 F. Supp. 2d 1372, 1376 (N.D. Ga. 2010).

Finally, U-Haul presented a survey by Dr. Wendy Wood demonstrating that a majority of the relevant consumers understand "pod(s)" as generic.[81] PEI failed to offer any survey evidence on genericness, even though such surveys are "almost de rigueur in litigation over genericness." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1321-22 (11th Cir. 2012). Again, the evidence of genericness far outweighs any contrary claims by PEI.

U-Haul's evidence of genericness was vastly more extensive than what courts have previously relied upon in finding a mark generic. *See, e.g.*, *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 745 F. Supp. 2d 1359, 1371-73 (S.D. Fla. 2010), *aff'd*, 702 F.3d 1312 (11th Cir. 2012); *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 101 (2d Cir. 1989); *Pilates, Inc. v. Current Concepts, Inc.*, 120 F. Supp. 2d 286, 286 (S.D.N.Y. 2000). PEI offered no evidence in rebuttal. Even when all inferences are drawn in favor of PEI, the verdict was contrary to the great weight of evidence presented, and U-Haul is entitled to a new trial.

### B.   U-Haul is Entitled to a New Trial on its Fair Use Defense Because No Evidence Showed U-Haul Using "pod(s)" as a Trademark or in Bad Faith

It is an absolute defense to PEI's Lanham Act claims that U-Haul used PEI's purported

---

[81] DX0633; Dkt. 380 at 174:4-11.

24

mark not as a mark but "fairly and in good faith only to describe [its] goods or services." 15 U.S.C. § 1115(b)(4); *see also* 15 U.S.C. § 1125(c)(3)(A). PEI presented no evidence to support a reasonable jury finding that U-Haul ever used "pod(s)" as a trademark. *See supra* Section III.B.1.

PEI's contention that U-Haul is using "pod" as a trademark in the phrase "U-HAUL® U-BOX® pod" is legally and factually without merit. *See Car-Freshner Corp. v. S.C. Johnson & Son*, 70 F.3d 267, 270 (2d Cir. 1995). "The lettering, type style, size and visual placement and prominence of the challenged words" readily establish U-Haul's fair use. 2 McCarthy §11:46. Generic or descriptive use of a word in standard type with a defendant's own prominent marks uniformly is deemed fair. *See, e.g.*, *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1189 (5th Cir. 1980); *Corbitt Mfg. Co. v. GSO Am., Inc.*, 197 F. Supp. 2d 1368, 1377 (S.D. Ga. 2002).

## V.  Conclusion

U-Haul respectfully requests that this Court grant its Renewed Motion for Judgment as a Matter of Law on all counts or, in the alternative, that it grant a new trial on all counts, that it grant judgment as a matter of law or a new trial on the issue of damages and profits, or that it reduce the damages award according to principles of equity.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.01(j), U-Haul respectfully requests one hour of oral argument.

Dated: April 8, 2015                     Respectfully submitted,

William P. Cassidy, Jr.                  /s/    R. Charles Henn Jr.
Florida Bar No. 332630                   William H. Brewster
JOHNSON & CASSIDY, P.A.                  R. Charles Henn Jr.
324 S. Hyde Park Avenue, Suite 325       KILPATRICK TOWNSEND & STOCKTON LLP
Tampa, Florida 33606                     1100 Peachtree Street, Suite 2800
(Tel.) 813-699-4857                      Atlanta, Georgia 30309
(Fax) 813-235-0458                       (Tel.) 404-815-6500
wcassidy@jclaw.com                       (Fax) 404-815-6555
                                         bbrewster@kilpatricktownsend.com
                                         chenn@kilpatricktownsend.com
                                         *Attorneys for Defendant/Counterclaim-Plaintiff*

25

## CERTIFICATE OF LOCAL RULE 3.01(g) COMPLIANCE

U-Haul's counsel has consulted with PEI's counsel in an attempt to resolve this matter, but no agreement could be reached.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 8, 2015, a true and correct copy of the foregoing was served on all counsel of record via e-mail and through the Court's CM/ECF system.

*/s/ Jared S. Welsh*