**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| PODS Enterprises, LLC,<br><br>Plaintiff / Counterclaim-Defendant,<br>vs.<br><br>U-Haul International, Inc.,<br><br>Defendant / Counterclaim-Plaintiff. | Case No.  8:12-cv-01479-JDW-MAP |

**PODS' OPPOSITION TO U-HAUL'S RENEWED MOTION FOR JUDGMENT AS A**
**MATTER OF LAW, MOTION FOR NEW TRIAL, OR TO ALTER THE JUDGMENT**

This Court has previously resolved all of the disputed legal issues against U-Haul, and

the jury has resolved all of the disputed factual issues against it.  U-Haul has pointed to no new

facts or new Eleventh Circuit precedent that would require a different outcome.  Indeed, as this

Court recognized, D.I. 369, but U-Haul ignores, the only new development since the trial was the

Supreme Court's opinion in *Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907 (2015), which

confirmed that the jury should determine fact-intensive issues such as the ones at issue here.[1]

## I.  U-HAUL'S MOTION FOR JMOL OR A NEW TRIAL ON LIABILITY AND ITS GENERICNESS AB INITIO DEFENSE SHOULD BE DENIED

Notably absent from U-Haul's brief is any mention of the high burden that it faces in

moving for judgment as a matter of law ("JMOL").  As this Court previously explained, JMOL is

appropriate "only if the evidence is so overwhelmingly in favor of the moving party that a

reasonable jury could not arrive at a contrary verdict." D.I. 369 at 3.  Here, as the evidence was

not overwhelmingly in U-Haul's favor, *infra.*, its motion for JMOL should be denied.

U-Haul's burden in moving for a new trial is no less daunting, as the Court must deny a

motion for a new trial if "the jury verdict was clearly within the ambit of possible awards

---

[1] The complete transcript of the trial proceedings can be found at D.I. 372 to D.I. 385.

supported by the evidence." *Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1061 (11th Cir. 1982).  Because the jury's verdict is supported by considerable evidence, *infra.*, U-Haul's motion for a new trial should likewise be denied.

### A.  U-HAUL IS NOT ENTITLED TO PREVAIL ON ITS GENERICNESS AB INITIO DEFENSE

U-Haul once again asks the Court to set aside the jury's verdict on its genericness *ab initio* defense (D.I. 399 ("Mot.") at 13-14), and grant it "extraordinary relief" on an issue on which it bore the burden at trial. D.I. 369 at 3.  In so doing, U-Haul ignores the considerable evidence (D.I. 369 at 16-17), and authorities supporting the Court's decision to sustain the jury's verdict, *see, e.g., Burger King Corp. v. Pilgrim's Pride Corp.*, 705 F. Supp. 1522 (S.D. Fla. 1988), *aff'd*, 894 F.2d 412 (11th Cir. 1990), while nonetheless arguing that the Court "erred in several respects." Mot. at 13.  It is U-Haul that errs, however, by disregarding PODS' evidence of non-genericness (D.I. 369 at 16-17), and by ignoring the well-established rule that "whether a given term is generic is a question of fact" for the jury. D.I. 369 at 4-5.

U-Haul's contention that this Court erred by focusing exclusively on "the use of 'pod(s) *within the residential portable storage industry*," (Mot. at 13), distorts the Court's reasoning.  In denying U-Haul's previous motion for JMOL on its genericness *ab initio* defense, the Court discussed the parties' evidence at length—including U-Haul's evidence of usage outside the residential portable storage industry.  D.I. 369 at 16-17.  The Court then correctly explained that, even if the "relevant consuming public" were not "limited to consumers of the moving and storage industry," the "key point" would remain that "the uncontested evidence did not require the jury to find 'pod' and 'pods' was generic for the products in question." D.I. 369 at 19.

U-Haul's criticism of this Court for suggesting that the jury could consider whether its evidence reflected a fair "cross-section" of English usage is equally baseless. Mot. at 14.  Indeed, in making that argument, U-Haul yet again seeks to have the Court reweigh the evidence and

grant it JMOL on the basis of a small number of obscure documents mainly collected by its attorneys to justify its litigation-induced defense.  But as the Court recognized, it was *U-Haul's own expert* who, in describing his methodology for the jury, stated that he "'sought to establish patterns in a broad cross-section of documents.'" D.I. 369 at 7.  The jury surely was entitled to apply the standard suggested by U-Haul's own expert and afford limited weight to usages that it found to be isolated, obscure, or otherwise not indicative of ordinary English usage.

### B.  U-Haul is not Entitled to Prevail On PODS' Claims For Trademark Infringement, Unfair Competition and Unjust Enrichment

"Under the Lanham Act, … a defendant is liable for infringement, if, without consent, he uses 'in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' which 'is likely to cause confusion, or to cause mistake, or to deceive.'" *Frehling Enter., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999).  Here, the jury made a specific finding that "U-Haul's use of 'pod' or 'pods' caused a likelihood of confusion with PODS' trademark." D.I. 337, Count I and IV.  Moreover, as "[t]he jury's finding on the likelihood of confusion issue is factual" and there is substantial evidence supporting its determination on the issue, *infra.*, there is no basis to disturb the jury's verdict.  *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 973 (11th Cir. 1983); *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1240 (11th Cir. 2008).

In assessing likelihood of confusion, the jury was instructed to consider the following factors: (1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion. D.I. 341 at 14-17.  And, although "PODS is not required to prove all, or even most of the factors," (*id.* at 14), PODS submitted sufficient evidence from which the jury could find that all seven factors favor PODS.

First, PODS submitted compelling evidence from which the jury could find that its marks are strong. Significantly, PODS proved it owned two incontestable Federal Trademark registrations (Ex. 1, PX 1 and PX 2), which are "presumed to be … relatively strong." *Dieter v. B & H Indus. of Sw. Florida, Inc.*, 880 F.2d 322, 329 (11th Cir. 1989). PODS also proved it owned two Federal Trademark registrations (Ex. 2, PX 9 and PX 10), which contain elements of PODS' incontestable marks, and are therefore "more than merely descriptive." *In re the American Sail Training Assoc.*, 230 U.S.P.Q. 879 (T.T.A.B. 1986). The jury could also find that PODS marks were strengthened by the 14 billion impressions to consumers (9/9/2014 (Spowart) 203:7-12) generated by PODS' expenditures of over $186 million to promote its brand nationally (9/9/2014 (Spowart) Tr. 239:13-22; Ex. 3, PX 16), and the efforts by its franchisees to promote the PODS brand in their individual markets (*e.g.*, 9/9/2014 Tr. (Warhurst) 24:2-5). *Pom Wonderful LLC v. Hubbard*, 775 F.3d 1118, 1126 (9th Cir. 2014). Relatedly, the jury could find that the PODS marks were strong given the evidence of PODS' nationwide network of locations (9/9/2014 (Warhurst) Tr. 20:20-25; Ex. 4, PX 30), and pre-verdict sales totaling $3.2 billion. 9/9/2014 (Spowart) Tr. 212:23-25; Ex. 4, PX 30. *Pom Wonderful*, 775 F.3d at 1126. Lastly, the strength of the PODS marks was also evidenced by U-Haul's own research identifying PODS as the "overwhelmingly dominant brand" in portable moving and storage (Ex. 5, PX 77), which not one of U-Haul's expert witnesses refuted.

Second, PODS presented substantial evidence from which the jury could find that U-Haul used "pod" and "pods" to identify  its competing product and that its use was thus a trademark usage.[2] Moreover, as the question of whether U-Haul's use of "pod" and "pods" was a trademark usage turns on the commercial impression it generates to the ordinary purchaser,

---

[2] U-Haul cites to exhibits not admitted into evidence (DX0412, DX0415) to support its claim that the parties' uses present a different overall impression.

*Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F. 2d 947, 953-54 (7th Cir. 1992) (holding that a word functions as a trademark when it is used by a product's source to "identify itself to the public" and "create in the public consciousness an awareness" of the product's source), the jury's determination on the issue is entitled to special weight. Indeed, the Supreme Court declined to grant JMOL on a "commercial impression" issue in *Hana Bank*, because the "[a]pplication of a test that relies upon an ordinary consumer's understanding of the impression that a mark conveys falls comfortably within the ken of a jury." 135 S. Ct. at 911.

PODS proved that the internet is the primary source where consumers begin shopping for moving and storage services. 9/9/2014 (Spowart) Tr. 221:11-15; 9/12/2014 (Smith) Tr. 61:10-20; Ex. 6, PX 32, PODS-0006439; Ex. 7, PX 33, DRI00001915. U-Haul's website and advertisements used PODS' mark as "an 'attention-getting symbol," which is the very definition of trademark usage, as evidenced by U-Haul's massive use of the PODS mark on its website and in organic Google search results. 9/12/2014 (Smith) Tr. 74:11-75:11; 9/12/2014 (Winer) Tr. 139:11-14; 9/9/2014 (Spowart) Tr. 221:10-222:9. *Quaker Oats*, 978 F.2d at 954; *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013). "U-Box pods" appeared on the masthead over approximately 160,000 webpages on the U-Haul.com website. 9/12/2014 (Smith) Tr. 72:19-22. Such usage is highly beneficial for allowing consumers who are searching for goods on the internet to identify "U-Box pods" as a source for moving and storage services. 9/12/2014 (Smith) Tr. 72:22-74:10. Indeed, the  ubiquitous placement of the PODS mark on U-Haul's website creates the misimpression that the PODS mark has a unique association with U-Haul and constitutes inappropriate trademark use. 9/11/2014 (Hamelynck) Tr. 55:15-56:3 (demonstrating consumer identified U-Box pods as trademark). *Quaker Oats*, 978 F.2d at 954. Significantly, "because a lesser degree of similarity is required when a trademark holder's mark is strong, the

commercial strength of the [PODS] mark amplifies the significance of the marks' many similarities." *Pom Wonderful*, 775 F.3d at 1130. As this Court previously recognized, the jury also had sufficient evidence to conclude that U-Haul intended to use PODS as a brand. *E.g.,* Ex. 8, PX 59 (U-Haul employee comments that U-Haul should "use the PODS brand"); *see* D.I. 258 at 5 (recognizing a jury was entitled to find same). Indeed, the non-descriptive nature of U-Haul's use of PODS' mark is further evidenced by the abundance of alternative words that U-Haul could have used and did use to describe its product. Ex. 9, PX 70. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1042 (9th Cir. 2010). Accordingly, the jury had sufficient evidence to find that U-Haul used "pod(s)" in a trademark sense on its website since October 2010. 9/15/2014 (Shoen) Tr. 199:7-14. *Hana Bank*, 135 S. Ct. at 911.

Contrary to U-Haul's argument (Mot. at 15), usage of "pod" or "pods" as a noun is not dispositive of whether U-Haul engaged in a trademark use. *See Caesars World, Inc. v. Milanian*, 247 F. Supp. 2d 1171, 1194 (D. Nev. 2003) ("use of a trademark as a generic noun illustrates the power of a trademark"). Moreover, the fact that U-Haul misused the PODS mark in lowercase variants—e.g., "pod(s)" (Mot. at 15)—is of no moment in light of PODS' possession of a standard character mark. *See Pom Wonderful*, 775 F.3d at 1125; *see also Indep. Living Aids. v. Maxi-Aids, Inc.*, 303 F. Supp. 2d 327, 330 (E.D. N.Y. 2004); 9/12/2014 (Smith) Tr. 86:5-13. Also, the jury was entitled to find that U-Haul was engaging in trademark usage of the PODS mark regardless of U-Haul's use of other marks (e.g. U-Box) alongside the PODS mark. *Croft v. Lewis*, No. 8:09-CV-1370, 2011 WL 3269589 at *2 (M.D. Fla. July 29, 2011) (Whittemore, J.); *Quaker Oats Co.*, 978 F.2d at 954; *Winfrey*, 717 F.3d at 308. Indeed, as PODS is more famous than U-Box (Ex. 10, PX 202), the jury could have found that PODS is the most prominent source identifier (mark) and that consumers viewed "pod(s)" as U-Haul's identifier for its "portable

moving and storage" products, particularly in light of the evidence of actual confusion. *Infra.* Lastly, while U-Haul argues that the jury was required to interpret PODS' cease and desist letters as an admission that U-Haul's use of the PODS mark was generic (Mot. at 15), the jury was entitled to find otherwise; especially since U-Haul later amended it use to "U-Box pods" for moving and storage in 2012 (Ex. 9, PX 70), a trademark use that permeated U-Haul's website in hundreds of thousands of places, including on the website's masthead.

Third, both PODS and U-Haul offer containers for rental online (9/9/2014 (Spowart) Tr. 253:12-17), and the jury was entitled to determine the similarities between the parties' products on that basis. *A.T. Cross Co. v. Cross Elec., Inc.*, No. 79-5619-CIV, 1981 WL 61264, at *1 (S.D. Fla. Feb. 9, 1981). Fourth, U-Haul admitted that PODS is a direct competitor (9/17/2014 (Shoen) Tr. 80: 15-19; 9/17/2014 (Johnson) Tr. 194:14-18), and PODS submitted evidence from which the jury could conclude that it competes with U-Haul for the same set of customers. 9/9/2014 (Spowart) Tr. 253:25-254:10, 225:15-22; 235:5-10.  Fifth, there was evidence from which the jury could find that U-Haul and PODS use the internet as one of their primary means of obtaining customers. 9/9/2014 (Spowart) Tr. 253:12-17.

Sixth, PODS offered documentary evidence of U-Haul's intent to derive a benefit from PODS' business reputation, which is the intent that the Eleventh Circuit has found relevant. *Frehling Enter.*, 192 F.3d at 1340.  Specifically, without first petitioning to cancel PODS' marks, U-Haul decided to misappropriate the PODS mark so that it could deceive consumers into visiting its website. Ex. 11, PX 63.  Moreover, despite expressing concerns about the legality of using the PODS mark, another U-Haul employee stated that U-Haul should "use the PODS brand" to drive traffic to its website.  Ex. 8, PX 59.  When U-Haul made the decision to infringe, it knew that using "pods" on its website would drive internet users to its website and that the

"dollar impact" would be "significant." 9/11/2014 (Dexter) Tr. 9:2-10:8, 23:11-24:12; Ex. 9, PX 70.  Given this evidence, the Court did not err in twice finding that the jury could infer that U-Haul adopted the PODS mark with the intent of deriving a benefit from PODS' reputation.  D.I. 258 at 5; 9/19/2014 Tr. 171:8-11.  Moreover, the jury could have relied on this factor alone to find confusion. *Frehling Enter.*, 192 F.3d at 1340.

Seventh, as this Court previously recognized (9/19/2014 Tr. 171:4-7), PODS demonstrated numerous instances of actual confusion. 9/10/2014 (Spowart) Tr. 152:19-157:4; 9/11/2014 (Viktorin) Tr. 108:23-111:13; 9/11/2014 (Parker) Tr. 152:7-159:4; 9/11/2014 (Eales) Tr. 175:18-176:17; 9/11/2014 (Mullins) Tr. 187:11-190:2; 9/11/2014 (Wade) Tr. 200:7-203:1. Significantly, PODS offered the uncontroverted testimony of a call center attendant who received *daily* calls from customers who were confused about the relationship between PODS and U-Haul (9/11/2014 (Hamelynck) Tr. 55:13-56:14), and played a recording of one such call, which the jury could have found as corroborative of her account. 9/11/2014 (Sing call PX 80b) Tr. 74:2-83:24.  Compared to the quantum of evidence this Circuit has found to be sufficient to prove actual confusion, *see, e.g., Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 46 (5th Cir. 1975), the jury was entitled to find that PODS' evidence of actual confusion was overwhelming.

Given the evidence introduced by PODS, the Court appropriately denied U-Haul's prior motion for directed verdict. 9/19/2014 Tr. 166:15-171:16.  Likewise, the jury's finding of infringement, D.I. 337, Count I and IV, was well supported. U-Haul's two methodologically flawed surveys do not require a different result.  Not only has the Eleventh Circuit "moved away from relying on survey evidence" as critical in proving confusion, *Frehling Enters.*, 192 F.3d at 1341 n.5, but PODS offered expert testimony, which the jury could credit, that Mr. Johnson's likelihood of confusion survey was unreliable (9/19/2014 (Ericksen) Tr. 54:8-56:8), as was Mr.

Poret's survey. 9/19/2014 (Ericksen) Tr. 56:13-57:20.   Accordingly, U-Haul's motion as to PODS' Lanham Act trademark infringement claim should be denied.   Moreover, the Court should also deny U-Haul's motion with respect to PODS' claims for Florida common law trademark infringement (Count IV) and unfair competition (Counts II and VI) since PODS prevailed on its Lanham Act trademark infringement claim. D.I. 341 at 22, 35, 40.  Lastly, U-Haul's motion as to PODS' unjust enrichment claim (Count VIII) should be denied because PODS prevailed on its trademark infringement claim and offered evidence that U-Haul unjustly enriched itself. *Infra*.

### C.  U-HAUL IS NOT ENTITLED TO PREVAIL ON PODS' DILUTION CLAIMS

"To prevail on a federal dilution claim, the plaintiff must demonstrate that: (1) the plaintiff's mark is famous; (2) the defendant used the plaintiff's mark after the plaintiff's mark became famous; (3) the defendant's use was commercial and in commerce; and (4) the defendant's use of the plaintiff's mark has likely caused dilution." *Rain Bird Corp. v. Taylor*, 665 F. Supp. 2d 1258, 1266-67 (N.D. Fla. 2009).  "A plaintiff does not need to show actual or likely confusion, competition, or actual economic injury for this claim." *Bell v. Foster*, No. 1:13-CV-405, 2013 WL 6229174, at *6 (N.D. Ga. Dec. 2, 2013).   Whether a party has engaged in trademark dilution is a question for the jury. *Coach Servs., Inc. v. 777 Lucky Accessories, Inc.*, No. 09-61590-CIV, 2010 WL 2427432, at *2 (S.D. Fla. June 16, 2010).

Here, ample evidence supports the jury's finding that the PODS mark is nationally famous. D.I. 337, Count III.[3]  To make that determination, the jury considered: (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume,

---

[3] Although U-Haul argues that PODS needed to demonstrate fame from 2008 forward because U-Haul used the word "pod" on one of its rate cards in 2008, that use was strictly internal (9/15/2014 (Donelson-Myers) Tr. 107:19-24), and PODS is not seeking any damages for such use.  The jury could thus have found that PODS  only needed to be famous in 2010 when U-Haul began to use PODS' mark on its website (9/15/2014 (Shoen) Tr. 199:7-14), or in 2012 when U-Haul began its more extensive use on its website. Ex. 12, PX 72.  Regardless, PODS proved that it has been famous since 2008. *Infra.*

and geographic extent of sales of goods or services offered under the mark; (3) the extent of the

mark's actual recognition; and (4) whether the mark was registered. D.I. 341 at 29.  The jury was

presented with sufficient evidence from which it could find that all of the factors favored PODS.

First, PODS proved that it has locations nationwide with national, pre-verdict sales of $3.2

billion and 14 billion nationwide impressions to consumers. *Supra* at 4. Second, PODS showed

that by 2008 it had spent nearly $70 million nationally to promote its brand and over $186

million by 2014. *Supra* at 4.[4]  Third, PODS proffered significant survey evidence of fame. *E.g.,*

9/12/2014 (Ericksen ) Tr. 52:4-23; Ex. 5, PX 77, UHI00018591 (U-Haul's own internal "WOW"

survey, which demonstrates that PODS enjoyed 78% brand awareness among the general public

in 2006);  9/9/2014 (Spowart) Tr. 222:25-223:13; Ex. 6, PX 32, PODS-0006475 (DRI brand

awareness studies demonstrating awareness of PODS as a brand in 2008); Ex. 7, PX 33,

DRI00001951 (DRI brand awareness studies demonstrating awareness of PODS as a brand in

2010 and 2012); 9/12/2014 (Ericksen) Tr. 25:15-19 (Dr. Ericksen's survey, which demonstrates

that PODS is recognized by at least 72% of *all* consumers nationwide.).  Notably, not one of the

nine experts that appeared for U-Haul at trial ever addressed the DRI studies or the 2006 WOW

survey.  Fourth, all of PODS' marks have been registered on the Principal Register of the United

States Patent and Trademark Office (USPTO) since 2008. *Supra* at 4.  Such evidence  is more

than sufficient to support the jury's verdict.  *Apple, Inc. v. Samsung Elec. Co.*, 920 F. Supp. 2d

1079, 1097 (N.D. Cal. 2013).

Further, as set forth *supra* at 4-7, there was ample evidence supporting the jury's finding

that U-Haul used PODS' mark as a trademark. U-Haul's case law on this issue is inapposite.

First, in sharp contrast to U-Haul, the alleged diluter in *Nat'l. Bus. Forms & Printing, Inc. v.*

---

[4] U-Haul overlooks the fact that PODS provided the jury with its sales information and advertising spend from before 2008, both nationally and in Florida. 9/9/2014 (Spowart) Tr. 184:9-188:11, 211:7-214:12; Ex. 3, 4, 13, 14 (PX 16, PX 17, PX 17-A, PX 17-B, PX 30, PX30-A, PX 30-B, PX 364).

*Ford Motor Co.*, 671 F.3d 526 (5th Cir. 2012) was not a competitor using a mark to identify good or services.  Second, in *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 361 (11th Cir. 1997), the alleged misuse was on an interior wall of a restaurant and hence is not comparable to U-Haul's massive use on the masthead of its website and in the organic search engine results. Third, *Avery Dennison Corp. v. Sumption*, 189 F. 3d 868, 880 (9th Cir. 1999) is readily distinguishable because, unlike U-Haul, the alleged infringer in *Avery* was not engaged in commercial use offering competing goods.

Lastly, the jury found that U-Haul was blurring the distinctiveness of the PODS marks. D.I. 337, Count III.  In making that determination, the jury considered: 1) the degree of similarity between U-Haul's use of "pod" or "pods" and the PODS marks; 2) the degree of inherent or acquired distinctiveness of the PODS marks; 3) the extent to which PODS is engaged in substantially exclusive use of its marks; 4) the degree of recognition of the PODS marks; 5) whether U-Haul intended to create an association with PODS' trademark; and 6) any actual association between U-Haul's use of "pods" or "pod" and the PODS marks. D.I. 341 at 30. Here, there was sufficient evidence from which the jury could find that all of these factors favored PODS.

First, as U-Haul used the PODS marks on its website, *supra,* the jury could find that such commercial use of an identical mark by a junior user was circumstantial evidence of dilution. *Delta Air Lines, Inc. v. Network Consulting Assoc., Inc.*, No. 8:14-CV-948, 2014 WL 4347839, at *5 (M.D. Fla. Sept. 2, 2014).  Second, as PODS marks are incontestable, the jury would have been justified in finding them inherently distinctive.  *Sporty's Farm L.L.C. v. Sportsman's Mkt., Inc.*, 202 F.3d 489, 497 (2d Cir. 2000). Third, given the evidence of PODS' considerable efforts to protect its marks (9/9/2014 (Spowart) Tr. 245:23-245:13, Ex. 15 PX 44), the jury could have

found that, with the exception of a small number of alleged infringers, PODS was engaged in exclusive use of its marks. Fourth, PODS provided evidence to support a jury finding that consumers recognized the PODS marks. *Supra* at 9-10.  Fifth, there was also evidence from which the jury could find that U-Haul intended to create an association with the PODS name. *Supra.* at 4-9.  *See Delta Air Lines, Inc.,* 2014 WL 4347839, at *6.  Lastly, PODS proffered evidence of actual confusion, *supra* at 8, which is "highly probative of dilution." *Nabisco, Inc. v. PF Brands, Inc.,* 191 F.3d 208, 221 (2d Cir. 1999) *abrogated on other grounds by Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418 (2003). Accordingly, the Court should deny U-Haul's motion as to PODS' federal trademark dilution claim.  And, as PODS is even more famous in Florida than it is nationwide (9/9/2014 (Spowart) Tr. 223:16-25; Ex. 6, PX 32, PODS0006485) (demonstrating 89% brand awareness in Florida), U-Haul's motion with respect to PODS' Florida trademark dilution claim should also be denied.

## II.  U-HAUL'S RENEWED MOTION FOR JMOL, NEW TRIAL OR TO ALTER JUDGMENT ON ISSUES PERTAINING TO DAMAGES SHOULD BE DENIED

"Under the Lanham Act, damages for trademark infringement may include (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) the cost of the action." *Aronowitz*, 513 F.3d at 1241. Such "damages may be awarded even when they are not susceptible to precise calculations." *Id.*  Moreover, for the reasons set forth below, PODS was entitled to recover both actual damages and U-Haul's disgorged profits. D.I. 239 at 4; *Babbit Electronics, Inc. v. Dynascan Corp*, 38 F.3d 1161, 1182 (11th Cir. 1994).

### A.  PODS is Entitled to Actual Damages for Corrective Advertising

In the Eleventh Circuit, damages recoverable under the Lanham Act include "costs of corrective advertising or injury to business reputation or goodwill." *Aronowitz*, 513 F. 3d at 1241;  *Punch Clock, Inc. v. Smart Software Dev.*, 553 F. Supp. 2d 1353, 1358 (2008). Moreover,

"a party is entitled to monetary damages for prospective corrective advertising." Ex. 16, *Aronowitz v. Health Chem*, No. 04-CV-60750, Omnibus Order on Post-Trial Motions (D.I. 154 at \*10) (S.D. Fla. Feb. 15, 2006) *aff'd* 513 F. 3d at 1241 (explicitly rejecting argument that corrective advertising requires past expenditures on advertising); *Punch Clock, Inc.*, 553 F. Supp. 2d at 1358 (awarding costs of 7 years of corrective advertising through Google AdWords–*i.e.*, Google's keyword advertising).

Here, the jury awarded PODS $45 million in actual damages, D.I. 337, and PODS provided the jury with sufficient evidence to find that U-Haul's misuse of the PODS mark caused such harm. Specifically, PODS offered evidence that U-Haul's misuse of the PODS mark was 1) negatively impacting the mark's distinctiveness (9/12/2014 (Winer) Tr. 140:20-142:24); 2) impeding PODS' growth, (*id.*); 3) causing lost sales (*id.*; 9/11/2014 (Lehman) Tr. 217:5-12); 4) creating a false association between PODS' containers and U-Haul's inferior product (9/11/2014 (Lehman) Tr. 217:5-12); and 5) causing considerable consumer confusion. *Id.*; *supra* at 8. Such harm justifies the jury's award of corrective advertising.

Likewise the amount of the jury's award for corrective advertising was justifiably based on Dr. Winer's testimony. "To establish reasonable damages for corrective [advertising], the Eleventh Circuit has accepted testimony from a [witness] regarding estimated costs for *concrete and specified forms of corrective advertising,* such as website ads, ads in trade publications, and attending industry trade shows." *Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC*, 2011 WL 2295269, at \*4 (S.D. Fla. June 8, 2011) (citing *Aronowitz*, 513 F. 3d at 1141); *Punch Clock, Inc.*, 553 F. Supp. 2d at 1358. At trial, Dr. Winer testified about the specific corrective action of using Google keyword advertising and what that would achieve. 9/12/2014 (Winer) Tr. 145:8-14, 148:22-23. Using the same formula that the Court had previously found reliable (D.I. 245),

and that U-Haul's own expert admitted was proper (9/18/2014 (Hochman) Tr. 275:21-276:4), Dr. Winer determined that the reasonable cost of corrective advertising would be $95.4 million based on: 1) an undisputed 113.6 million people having received misimpressions (9/12/2014 (Winer) Tr. 146:2-147:24; 9/18/2014 (Hochman) Tr. 276:5-12); 2) three corrective impressions being needed to correct one misimpression (9/12/2014 (Winer) Tr. 148:2-17), which was less than the 4.5 corrective impressions U-Haul's expert said was needed (9/18/2014 (Hochman) Tr. 275:9-17); and 3) the undisputed cost of $.28 per corrective impression. 9/9/2014 (Spowart) Tr. 207:7-14, 9/12/2014 (Winer) Tr. 149:3-16; 9/18/2014 (Hochman) Tr. 278:10-14. In light of Dr. Winer's conservative calculation, the jury's verdict was far from excessive, especially since PODS expended $70 million in advertising during the period that U-Haul was infringing. 9/15/2014 (Bratic) Tr. 67:22-25.  Indeed, a larger award would be justified.

Without citing to any new authority, U-Haul yet again argues that an award of corrective advertising requires 1) evidence of actual confusion and 2) a showing of past corrective advertising or financial inability to pay for such advertising in the future. Mot. at 5.  U-Haul made the same argument in seeking summary judgment, D.I. 151 at 24, and at trial, 9/19/2014 Tr. 204:16-205:2.  The Court rejected U-Haul's argument on both occasions, D.I. 258 at 7; 9/19/2014 Tr. 204:16-205:20, and it should do so again.  Likewise, this Court should reject U-Haul's reliance on *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1374 (10th Cir. 1977), as it is not followed by the Eleventh Circuit. *Pandora Jewelers 1995, Inc.*, 2011 WL 2295269, at *4 n. 4.  In any event,  the *Big O* methodology was suggested by the Plaintiff who grounded the award exclusively in terms of defendant's advertising campaign, not the cost of Plaintiff's actual advertising campaign.  *See* 561 F.2d at 1374.  U-Haul provides no reason why the approach in that case should control here since PODS presented expert evidence

regarding the reasonable cost of a corrective advertising campaign.  Finally, PODS' actual damages award should not be reduced since "§ 1117 does not allow for a downward adjustment of actual damages." *Go Medical Indus. Pty., Ltd. v. Inmed Corp.*, 471 F.3d 1264, 1274 (Fed. Cir. 2006) (applying Eleventh Circuit law); *D.S.P.T. Int'l, Inc. v. Nahum*, No. CV 06-0308, 2007 WL 5298428, at *9 (C.D. Cal. Dec. 13, 2007) *aff'd* 624 F.3d 1213 (9th Cir. 2010).

### B.  PODS is Entitled to U-Haul's Profits

"The damage provision of the Lanham Act entitles a trademark holder to recover, among other things, the profits earned by a defendant from infringement of the mark." *Burger King Corp. v. Mason*, 855 F.2d 779, 780 (11th Cir. 1988).  To obtain an accounting of profits, PODS was first required to show that "(1) the defendant's conduct is a deliberate and willful violation; (2) the infringer is unjustly enriched; **or** (3) the sanction is necessary for future deterrence." D.I. 239 at 2 (emphasis added).  Here, the jury specifically found that U-Haul was unjustly enriched through its misuse of "pod" or "pods," D.I. 337.  Contrary to U-Haul's argument, that determination was supported by substantial evidence showing that U-Haul knowingly used the PODS marks without authorization to tap into PODS' good will. *Supra* at 7-8; *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 585 (5th Cir. 1980); *Nutrivida, Inc. v. Inmuno Vital, Inc.*, 46 F. Supp. 2d 1310, 1316 (S.D. Fla. 1998).  As the jury's finding of unjust enrichment was sufficient by itself to justify an award of profits, the Court need go no further.  Nonetheless, there was evidence from which the jury could find that U-Haul's conduct was willful.  Significantly, U-Haul's decision to violate PODS' trademark rights after seeking a license (Ex. 17, DX 28; 9/9/2014 (Warhurst) Tr. 33:13-21), *see Ford Motor Co. v. Lloyd Design Corp.*, 184 F. Supp. 2d 665, 685 (E.D. Mich. 2002), and its continued use of the PODS marks throughout the duration of this case are both willful acts of infringement, *see Burger King Corp. v. Weaver*, 169 F.3d 1310,

1322 (11th Cir. 1999).  Likewise, U-Haul's escalating misuse through trial supports a finding by the jury that an award of profits is necessary to deter future infringement by U-Haul and others who might seek to free-ride on PODS' investment in its brand.  *See, e.g., Unique Sports Prod., Inc. v. Wilson Sporting Goods Co.*, 512 F. Supp. 2d 1318, 1327 (N.D. Ga. 2007) (Carnes, J.).

Contrary to U-Haul's contention, "an award of profits based on either unjust enrichment or deterrence [is not] dependent upon a higher showing of culpability on the part of defendant" *Mason*, 855 F.2d at 781, and this Court's grant of U-Haul's motion for JMOL on PODS' punitive damages claims does not foreclose an award of profits, especially since punitive damages requires a plaintiff to prevail under the higher—clear and convincing evidence—standard while the jury was entitled to evaluate the evidence under the lower preponderance of the evidence standard. *Compare* Florida Supreme Court Standard Jury Instructions – Civil Cases, §503.2 *with* D.I. 341 at 7.

Having established its entitlement to U-Haul's disgorged profits, PODS only needed to prove U-Haul's sales.  D.I. 239 at 2.  The burden then shifted to U-Haul to prove its expenses and other deductions from gross sales. *Id.*  In satisfying PODS' burden, Mr. Bratic first determined that the U-Box product had generated $234 million in revenues. 9/12/2014 (Bratic) Tr. 211:17-214:17.  Mr. Bratic then evaluated the costs claimed in U-Haul's litigation-created profit and loss statement and determined that there were a number categories of costs that were inappropriately deducted. 9/12/2014 (Bratic) Tr. 221:14-224:3; 235:12-236:3. After excluding those deductions, Mr. Bratic determined that U-Haul had incurred expenses of $161 million in connection with sales of the U-Box, (9/12/2014 (Bratic) Tr. 236:18-237:4), resulting in incremental profits of about $73 million. 9/12/2014 (Bratic) Tr. 238:21-239:3.  As such, although Mr. Bratic was not required to show the portion of U-Haul's profits attributable to its

infringement, D.I. 239 at 2, he nonetheless did so using the method this Court previously found sufficient. *Id.*; 9/12/2014 (Bratic) Tr. 242:3-243:12; 9/15/2014 (Bratic) Tr. 17:22-20:8.   Mr. Bratic calculated that the incremental profits *associated* with the alleged infringing activities were between $34 and $48 million. 9/15/2014 (Bratic) Tr. 17:22-20:8.   As this Court has explained on three different occasions, Mr. Bratic's testimony was sufficient to meet PODS' burden to recover profits. D.I. 239 at 2-3; D.I. 258 at 7; 9/19/2014 Tr. 204:16-205:20.   Moreover, as the jury's decision to award $15.7 million was reasonable, it should not be set aside or reduced.

### C. PODS is Entitled to Recover on its Florida Law Claims

#### 1. PODS is Entitled to Recover Actual Damages under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

U-Haul has not cited a single case that would foreclose PODS' recovery of its actual damages for corrective advertising under FDUTPA.  This is unsurprising, as FDUTPA permits a prevailing party to recover damages for "lost business goodwill and reputation, and lost business opportunities" *E-Z Pack Mfg., LLC* v. *RDK Truck Sales & Serv., Inc.*, No. 8:10-cv-1870, 2011 WL 4343790, at *8 (M.D. Fla. Aug. 10, 2011) *report and recommendation adopted*, 2011 WL 3841631 (M.D. Fla. Aug. 30, 2011) (Whittemore, J.); *Delta Air Lines, Inc.*, 2014 WL 4347839, at *9. Here, PODS submitted evidence that would support a finding by the jury that U-Haul's misuse of the PODS marks damaged PODS' goodwill and kept it from growing, *supra* at 13*, and that corrective advertising is needed to correct this harm.  Indeed, the jury expressly found that U-Haul's misuse "decreases the value of PODS' trademarks in Florida." D.I. 337, Count V (9). This was sufficient to justify an award of actual damages under FDUTPA.  *See Marco Island Cable v. Comcast Cablevision of South., Inc.*, 312 F. App'x 211, 214 (11th Cir. 2009).

2.     **PODS is Entitled to Recover Actual Damages and Disgorged Profits for Florida Trademark Dilution.**

U-Haul has not cited a single Florida case to support its claim that PODS' Florida marks needed to be registered in Florida at the time that suit was filed to be entitled to recover under Fla. Stat. § 495.141.  U-Haul's reliance on *Gaia Tech. Inc. v. Recycled Prod. Corp.*, 175 F.3d 365 (5th Cir. 1999) is misplaced.  In that case, the Fifth Circuit held that a plaintiff could not recover for unfair competition under Texas law where the plaintiff had *no interest at all* in the allegedly infringed trade name at the time of suit; it did not require that the trade name be registered.  *See id.* at 375-76 & n.12.  Here, by contrast, U-Haul does not dispute that PODS was entitled to bring the action in the first instance or that it was on notice from the time the action was commenced that PODS would be seeking damages under Fla. Stat. §495.141. D.I. 1 at 25.

## III.  U-HAUL'S MOTION FOR A NEW TRIAL ON ITS GENERICIDE AND FAIR USE DEFENSES SHOULD BE DENIED

### A.  U-Haul is not Entitled to a New Trial on its Genericide Defense

Under the Lanham Act, U-Haul bears the heavy burden of establishing that PODS incontestable marks are generic, *Scientific Applications, Inc. v. Energy Conservation Corp.*, 436 F. Supp. 354, 360 (N.D. Ga. 1977), and overcoming the presumption of non-genericness, *KP Perm. Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 604 (9th Cir. 2005).  To meet that burden, U-Haul needed to prove that "the group of  public consumers who purchase or may purchase the goods or services at issue," D.I. 258 at 3, "cease[d] to identify [the PODS marks] with the *source* of a product [and] instead identifie[d] it as a *class* of products."  D.I. 258 at 2.  Moreover, as this Court stated in rejecting U-Haul's motion for summary judgment on its genericness defense, "[w]hether a term is generic is a question of fact." D.I. 258 at 3.

Here, PODS offered evidence from which the jury could conclude that its marks have not become generic.  As this Court previously explained, "[t]he jury could have reasonably placed

significant weight on the fact that PODS' mark had reached incontestable status." D.I. 369 at 17. Moreover, PODS offered survey evidence that it is a famous *brand*, *supra* at 10, which weighs heavily against a finding that the PODS marks are generic.  In turn, the jury could have discounted U-Haul's purported evidence of genericness since U- Haul failed to demonstrate how isolated instances of alleged *internal* misuse influenced, much less reflected, how the relevant consumers perceive the PODS brand. 9/10/2014 (Spowart) Tr. 229:17-230:4; 9/11/2014 (Eales) Tr. 182:1-10.  *Frito-Lay, Inc. v. Bachman Co.*, 704 F. Supp. 432, 440 (S.D.N.Y. 1989). In addition, the jury could have accorded little weight to Dr. Wood's survey because it was flawed in a number of respects. 9/19/2014 (Eriksen) Tr. 31:16-32:3 (under-inclusive); 9/19/2014 (Ericksen) Tr. 33:8-34:1 (over-inclusive); 9/18/2014 (Wood) Tr. 190:6-8 (incorrect universe); 9/19/2014 (Ericksen) Tr. 38:20-40:1 (improperly weighed data). *Accord Innovation Ventures, LLC v. N2G Distrib.*, No. 08-CV-10983, 2011 U.S. Dist. LEXIS 137115, at *8 (E.D. Mich. Nov. 30, 2011).  Lastly, the jury could have found that Dr. Wood's survey supports PODS' position, as it reflects that 52.1% of the public consider PODS a brand name when properly weighed. 9/19/2014 (Ericksen) Tr. 35:9-24.  As U-Haul did not carry its heavy burden on its affirmative defense of genericness, it is not entitled to a new trial.

### B.  U-Haul is not Entitled to a New Trial on its Fair Use Defense

U-Haul bore the burden at trial of establishing its good faith fair use defense, *Winfrey*, 717 F.3d at 312, by proving "that its use is (l) other than as a mark, (2) in a descriptive sense, and (3) in good faith." D.I. 258 at 5.  U-Haul fails on each of those prongs.  PODS offered evidence from which the jury could conclude that U-Haul was using the PODS mark in a trademark sense. *Supra* at 4-7, 10-11.  Moreover, while U-Haul relies on *Soweco, Inc. v. Shell Oil Co.,* 617 F.2d 1178 (5th Cir. 1980) and *Corbitt Mfg. Co. v. GSO Am., Inc.*, 197 F. Supp. 2d 1368 (S.D. Ga.

2002) to argue that its conduct was *per se* fair, (Mot.at 25), both of those courts declined to treat the issue as one of law. *Soweco*, 617 F. 2d at 1189 (deferring to the jury finding on fair use); *Corbitt*, 197 F. Supp. 2d at 1378 (denying preliminary injunction). Indeed, as this Court previously explained, Chairman Shoen's e-mail equating U-Haul to the "steel-eyed gunfighter" and the admission that U-Haul was going to "use the PODS brand" to drive traffic to its website, both presented to the jury, *supra* at 7-8, raised an issue of fact as to U-Haul's "good faith." D.I. 258 at 5.  As the jury's verdict was supported by sufficient evidence, U-Haul is not entitled to a new trial on what is a clear issue of fact. *Croft*, 2011 WL 3269589, at *2,

## IV.  CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion for Judgment as a Matter of Law, Motion for New Trial, or to Alter the Judgment.

Date:  May 12, 2015

Jonathan B. Sbar, FBN 131016
ROCKE MCLEAN & SBAR, P.A.
2309 S. MacDill Avenue
Tampa, FL 33629
Phone: 813-769-5600
Fax: 813-769-5601
Email: jsbar@rmslegal.com

Jeffrey S. Bucholtz (*Pro Hac Vice*)
KING & SPALDING
1700 Pennsylvania Avenue, NW, Suite 200
Washington, DC 20006
Phone: 202-626-2907
Email: jbucholtz@kslaw.com

Respectfully submitted,
*/s/ Charles E. Cantine*
Joseph Diamante (*Pro Hac Vice*)
Charles E. Cantine (*Pro Hac Vice*)
Jason M. Sobel (*Pro Hac Vice*)
Michael A. Fernández (*Pro Hac Vice*)

STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York
Phone: 212-806-5400
Fax: 212-806-6006
jdiamante@stroock.com
ccantine@stroock.com
jsobel@stroock.com
mafernandez@stroock.com