UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PODS ENTERPRISES, LLC,

      Plaintiff,

vs.                             Case No. 8:12-cv-01479-T-27MAP

U-HAUL INTERNATIONAL, INC.,

      Defendant.

_____/

## ORDER

**BEFORE THE COURT** is U-Haul's Renewed Motion for Judgment as a Matter of Law, Or in the Alternative, Motion for New Trial, Or to Alter the Judgment (Dkt. 399), PODS' Motion to Amend the Judgment (Dkt. 400), and PODS' Motion for Attorneys' Fees and Expenses (Dkt. 389). Each motion is opposed (Dkts. 418, 409, 408).

Upon consideration, U-Haul's Motion for Judgment as a Matter of Law, Or in the Alternative, Motion for New Trial, Or to Alter the Judgment (Dkt. 399) is **DENIED**. PODS' Motion to Amend the Judgment (Dkt. 400) is **GRANTED** *in part* and **DENIED** *in part*. PODS' Motion for Attorneys' Fees and Expenses (Dkt. 389) is **DENIED**. U-Haul's request for oral argument (Dkt. 399 p. 25) is **DENIED**.

## I.   BACKGROUND

After a two-week trial and three days of deliberations in this trademark infringement case, the jury found in favor of PODS Enterprises, LLC and against U-Haul International, Inc. on all eight counts, counterclaims, and affirmative defenses, and returned a verdict of $60.7 million (Dkt 337:

1

Verdict).[1] PODS contended, and the jury agreed, that U-Haul's use of the words "pod" and "pods" to market U-Haul's products infringed on and diluted PODS' federally-registered trademarks. The jury expressly found against U-Haul on its affirmative defenses of genericness and descriptive fair use (Dkt. 337: Verdict ¶¶ 13, 14).

U-Haul's Rule 50 motions made during trial were largely denied (Dkts. 321, 323, 329). Ruling was deferred on U-Haul's motion for directed verdict on genericness *ab initio* (Sept. 19 Trial Tr. at 217). After briefing, that motion was denied and final judgment was entered in accordance with the verdict. (Dkts. 369, 370). U-Haul renews its Rule 50 motions and moves for a new trial on similar grounds. PODS moves to amend the judgment to include a permanent injunction against U-Haul, to dismiss U-Haul's attempt to cancel PODS' trademarks, and for an award of prejudgment and postjudgment interest, enhanced damages, and attorneys' fees.

## II.   U-HAUL'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR NEW TRIAL

### A.   Standard

Under Rule 50, the "proper analysis is squarely and narrowly focused on the sufficiency of evidence," that is, whether the evidence is "legally sufficient to find for the party on that issue." *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007). All reasonable inferences are drawn in favor of the nonmoving party, no credibility determinations may be made, the evidence may not be weighed, and evidence that the jury need not have believed is to be disregarded. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-151 (2000). Such a motion is to be granted "only

---

[1] Count I was for federal trademark infringement. Count II was for federal unfair competition. Count III was for federal trademark dilution. Count IV was for common law trademark infringement. Count V was for state trademark dilution. Count VI was for common law unfair competition. Count VII was for violations of the Florida Deceptive and Unfair Trade Practices Act. Count VIII was for unjust enrichment.

if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1246 (11th Cir. 2001). In sum, review is limited to whether there is sufficient evidence to support the verdict. *Chaney*, 483 F.3d at 1227. The standard is "heavily weighted in favor of preserving the jury's verdict." *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1226 (11th Cir. 2012).

A Rule 59 motion for new trial based on evidentiary grounds is to be granted only if the verdict "is against the clear weight of the evidence or will result in a miscarriage of justice." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984) (quotation omitted). "Because it is critical that a judge does not merely substitute his judgment for that of the jury, new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Lipphardt v. Durango Steakhouse of Brandon, Inc.*, 267 F.3d 1183, 1186 (11th Cir. 2001) (quotation omitted); *Redd v. City of Phenix City, Ala.*, 934 F.2d 1211, 1215 (11th Cir. 1991) ("When there is some support for a jury's verdict, it is irrelevant what we or the district judge would have concluded.").

Applying these standards, I find that the evidence introduced at trial was sufficient to support the jury's verdict, the verdict is not against the great weight of the evidence, and the verdict did not result in a miscarriage of justice. And to the extent U-Haul takes issue with the jury's factual findings, the Supreme Court has recently reaffirmed the significance of a jury's determinations. *Hana Financial, Inc. v. Hana Bank* , 135 S.Ct. 907, 911 (2015) ("[W]hen the relevant question is how an ordinary person or community would make an assessment, the jury is generally the decisionmaker that ought to provide the fact-intensive answer.").

3

### B.   Liability

#### 1.   Trademark Infringement

U-Haul challenges the sufficiency of the evidence supporting the jury's finding that U-Haul's use of PODS' trademarks was likely to cause confusion. Likelihood of confusion is evaluated using a seven-factor test: (1) the type and strength of the trademark allegedly infringed, (2) similarity of the parties' marks, (3) similarity of the parties' goods, (4) similarity of the parties' sales channels, distribution, and customers, (5) similarity of advertising media, (6) defendant's intent, and (7) actual confusion. *Frehling Enterprises, Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999). The most important of these factors are the type and strength of the trademark and actual confusion. *Lone Star Steakhouse v. Longhorn Steaks*, 122 F. 3d 1379, 1382 (11th Cir. 1997).

Applying this test "entails more than the mechanistic summation of the number of factors on each side; it involves an evaluation of the overall balance" and a consideration of "the unique facts of each case." *Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 649 (11th Cir. 2007) (quotation and citation omitted). And additional factors may be considered. *Tana v. Dantanna's*, 611 F.3d 767, 780 (11th Cir. 2010). Because the test for likelihood of confusion is fact intensive, the question is usually reserved for the jury. *See John H. Harland Co. v. Clarke Checks, Inc.*, 711 F. 2d 966, 980 (11th Cir. 1983).

Here, the jury necessarily found a likelihood of confusion because it returned a verdict against U-Haul for trademark infringement. *Id.* at 973 ("The jury necessarily found that there was a likelihood of confusion between the two marks because it returned a verdict against Clarke for trademark infringement."). That factual finding must be upheld if based on substantial evidence, that is, "evidence of such quality and weight that reasonable and fair-minded men in the exercise of

4

impartial judgment might reach different conclusions." *Id., quoting Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969).

Moreover, if a plaintiff shows, as PODS did, that the defendant adopted its mark to benefit from plaintiff's reputation, "this fact alone" may be sufficient to justify the inference that there is confusing similarity. *Frehling*, 192 F.3d at 1340. As will be discussed, a reasonable jury could certainly have found this to have been the case, based on the evidence describing U-Haul's calculated decision to use "pod" and "pods" on its website.

In sum, PODS introduced sufficient evidence supporting the jury's finding that U-Haul's use of "pod" and "pods" was likely to cause confusion. The jury's verdict in this regard was not against the great weight of the evidence. As to the type and strength of mark, PODS introduced evidence that it possessed two incontestable federal trademark registrations, favoring a finding of a strong mark. (PX 1, PX 2). *See Dieter v. B & H Indus. of Sw. Florida, Inc.*, 880 F.2d 322, 329 (11th Cir. 1989) ("[I]ncontestable status is a factor to be taken into consideration in likelihood of confusion analysis. Because [plaintiff's] mark is incontestable, then it is presumed to be at least descriptive with secondary meaning, and therefore a relatively strong mark."); *Accord Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 938 (11th Cir. 2010). Although U-Haul introduced evidence that third parties generically used "pod" and "pods" in support of its argument of a weak mark, the jury was entitled to reject or give little weight to this evidence and give more weight to the incontestable status of PODS' marks.

With respect to the similarity of the parties' marks, sufficient evidence was introduced to support the jury's finding that this factor weighed in favor of a likelihood of confusion. U-Haul raises a series of arguments that the parties' marks were different, including that U-Haul did not use

5

"pod" and "pods" as a trademark, that PODS used the marks in capital letters whereas U-Haul used the lowercase, and that the parties' websites and mobile apps presented different commercial impressions. The overall impression of the marks, however, was a question of fact for the jury, and all of these arguments were made to the jury and implicitly rejected by virtue of the verdict.

The jury could reasonably have found that the linguistic similarities between "U-Box pod" and "PODS containers" and U-Haul's widespread use of the words "pod" and "pods" on its website outweighed the dissimilarities between the parties' marks, including color and font. (*Compare* DX 420 *with* DX 421; Sept. 12 Tr. at 66:21-24 (testimony of Chris Silver Smith that U-Haul used the words "pod" and "pods" nearly 600,000 times on its website)). Despite U-Haul's arguments to the contrary, evidence was introduced suggesting that U-Haul intended to use "pods" as a brand. (*See* PX 59 (internal U-Haul email in which U-Haul employee writes, "we should . . . use the PODS brand [for internet searches]").

Likewise, evidence was introduced that the parties' products, particularly U-Haul's U-Box and the smaller PODS-branded containers, had significant similarities. The jury heard testimony about the similarity of various models of the containers (Sept. 9 Tr. at 121:2-15 (Pete Warhurst testimony); Sept. 9 Tr. at 235:5-236:16 (George Spowart testimony)), watched videos of the containers (DXDEM 42), and observed demonstrative, miniature models of the U-Box and PODS-branded containers (*see* Sept. 8 Tr. at 187-88). Based on this evidence, the jury could reasonably have found that the similarity of the parties' goods, at the very least, supported a finding of likelihood of confusion. The evidence of actual confusion, discussed below, also supports a finding that the second and third factor favored a likelihood of confusion.

PODS also introduced evidence supporting a finding that the fourth and fifth factors favored

6

a likelihood of confusion. For example, the parties, through their respective PODS-branded containers and the U-Box, directly competed with each other. (Sept. 9 Tr. at 225, 235, 253 (testimony of George Spowart); Sept. 17 Tr. at 80:15-19 (testimony of Joe Shoen); Sept. 17 Tr. at 194 (testimony of Phil Johnson)). And both parties offered products for sale online, where U-Haul's use of "pod" and "pods" was so prevalent. (Sept. 9 Tr. at 253, Spowart)). Indeed, the importance of search engine optimization and internet advertising to sales of the competing products was a significant feature of the trial.

The sixth factor, a defendant's subjective intent, likewise favors the jury's finding of likelihood of confusion. If a defendant is shown to have adopted a mark to derive a benefit from the plaintiff's reputation, that may alone "justify the inference that there is confusing similarity." *John H. Harland Co.*, 711 F.2d at 977 (citing *Exxon Corp. v. Texas Motor Exchange, Inc.*, 628 F.2d 500, 506 (5th Cir. 1980)[2] and *Sun Banks of Florida, Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 318 (5th Cir. 1981)); *Frehling*, 192 F.3d at 1340.

PODS introduced evidence from which the jury could reasonably have inferred that U-Haul used "pod" and "pods" to benefit from the PODS brand. For example, PODS introduced evidence that a U-Haul employee suggested using the PODS brand for internet searches (PX 59), that Stuart Shoen, a top U-Haul executive and son of U-Haul Chairman Joe Shoen, wrote to his father, "I strongly agree with your message that this is very much the world of the Old West and there is a big difference between the scared shopkeep and the steel-eyed gunfighter. One of them is afraid to say "pods" and the other isn't" (PX 63), and that U-Haul staff who worked on internet searches believed

---

[2] Opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

that using "pods" rather than other descriptors for the U-Box would increase customer interest (PX 70). Under Circuit precedent, this evidence alone supports the jury's finding of likelihood of confusion. *Frehling*, 192 F.3d at 1340.

Finally, while U-Haul characterizes the evidence of actual confusion as *de minimis*, "the quantum of evidence needed to show actual confusion is relatively small." *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 937 (11th Cir. 2010) (quoting *Jellibeans, Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 845 (11th Cir. 1983) (citation omitted)); *see World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971) ("very little proof of actual confusion [is] necessary to prove the likelihood of confusion").

With respect to consumer confusion, the jury heard a recording of a telephone call made by Stuart Sing to a PODS call center that the jury could reasonably have found demonstrated actual consumer confusion. (PX 80; Sept. 11 Tr. 74-83 (Stuart Sing call) ("You're [PODS and U-Haul] not the same company? It's deceiving. . . . I thought I'm going with PODS"). The jury also heard testimony by PODS employees who related that they frequently dealt with customers who were confused by the difference between PODS products and the U-Box. (*See* Sept. 11 Tr. 55-56, 84 (Hamelynck); 108:23-111:13 (Viktorin); 152:7-159:4 (Parker); 175:18-176:17 (Eales); 187:11-190:2 (Mullins); 200:7-203:1 (Wade)). The jury reasonably could have found this evidence supported a finding of actual confusion.

Pointing to what it considers "the dearth of evidence suggesting actual confusion," U-Haul contends that PODS was required to prove that an "appreciable number" of consumers were likely to be confused, citing *Custom Mfg.*, 508 F.3d at 651. This argument is unconvincing and inconsistent with Circuit precedent. The relevant holding in *Custom Mfg.* focuses on the distinction between

8

"likely," rather than "merely possible" in describing a plaintiff's burden. *Id.* ("While there is no bright line test to determine the existence of a likelihood of consumer confusion, recovery under the Lanham Act requires, at a minimum, 'that confusion, mistake, or deception be 'likely,' not merely 'possible.'"). The language on which U-Haul relies, "appreciable number of ordinarily prudent purchasers," is found in a parenthetical description of a New York district court decision, essentially *dicta. See id.*

Binding precedent in this Circuit recognizes that a single, isolated instance of actual confusion, *see Frehling*, 192 F.3d at 1341, or two instances of actual confusion, can be sufficient evidence to support a finding of likelihood of confusion. *See John H. Harland*, 711 F.2d at 978; *Safeway Stores, Inc. v. Safeway Disc. Drugs, Inc.*, 675 F.2d 1160, 1167 (11th Cir. 1982). As discussed, PODS introduced evidence meeting this standard which the jury was entitled to accept as credible.

Finally, U-Haul argues that PODS' failure to introduce survey evidence weighs against a finding of likelihood of confusion. But the Eleventh Circuit has stated just the opposite. *See Frehling*, 192 F.3d at 1341 n. 5 ("This Circuit . . . has moved away from relying on survey evidence [in determining the likelihood of confusion]. . . . [T]he failure to adduce such evidence is not damaging to the Plaintiff's case.").

Most of U-Haul's arguments challenging the jury's finding of likelihood of confusion go to the weight of the evidence and the credibility of witnesses, determinations within the jury's exclusive province. Accordingly, U-Haul's challenge to the sufficiency of the evidence supporting the jury's verdict on likelihood of confusion is rejected.

## 2. Trademark Dilution

U-Haul challenges the jury's verdict in favor of PODS on trademark dilution (Counts III and V) on three separate grounds: U-Haul did not use "pod" or "pods" as a trademark, PODS did not prove its mark was famous, and PODS did not produce sufficient evidence for the jury to find likelihood of dilution by blurring.[3]

### a. Use of a Trademark

U-Haul relies on *National Business Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526 (5th Cir. 2012) for the proposition that non-trademark use "cannot dilute by blurring." Although the Eleventh Circuit has not addressed the scope of trademark dilution after passage of the Trademark Dilution Revision Act, 15 U.S.C. § 1125(c), U-Haul is correct that a trademark dilution claim requires use of a trademark by the alleged diluter. *See* 15 U.S.C. § 1125(c)(2)(B); *National Business Forms*, 671 F.3d at 536 (citing Stacey L. Dogan & Mark A. Lemley, *The Trademark Use Requirement in Dilution Cases*, 24 Santa Carla Computer & High Tech L.J., 541, 551–52 (2008)); ("The TDRA bars another person's commercial 'use of a mark or trade name in commerce [in a manner] that is likely to cause dilution by blurring . . . regardless of the presence or absence of the actual or likely confusion.....'"), *quoting* 15 U.S.C. § 1125(c)(1)); 15 U.S.C. § 1125(c)(1) (". . . the owner of a famous mark . . . shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring . . ."). Appying these standards, there was sufficient

---

[3] The jury instructions comprehensively instructed the jury on the elements of PODS' claim of trademark dilution, including guidance for determining whether U-Haul's use of "pods" or "pod" was "likely to blur the distinctiveness of PODS' trademark, and on U-Haul's defenses of descriptive fair use and genericness (Dkt. 342, p. 29-32).

evidence demonstrating that U-Haul use of "pod" and "pods" constituted trademark usage.

PODS introduced considerable evidence that U-Haul used "pods" and "pod" on its website for the purpose of drawing attention to and identifying its competing product, the U-Box. That evidence demonstrated that "U-Haul pods" appeared on the masthead over approximately 160,000 webpages on the U-Haul.com website. (Dkt. 376: Sept. 12 Tr. at 71:18-23; 72: 119-22) (Chris Silver Smith testimony)). Further, evidence was introduced that U-Haul used "pod" and "pods" thousands of times to optimize its website, and that U-Haul "undoubtedly" benefitted from that use in promoting its products and services. (*Id.* at 66:21-24; 67-68; PX 59) ("By the end of August, I found somewhere over 119 million mentions of the word "pods" produced by U-Haul, and I also found that they had mentioned the word "pods" on their website 596,000 times . . . In November 2013, I found that U-Haul had mentioned the word "pods" on their website right around - - a little over 400,000 times. So there has been a significant increase in the months since November. . . . It's undoubtedly a benefit since they're trying to promote that term and trying to sell products and services related to it.").

The jury could therefore reasonably have found from this testimony that U-Haul's use of "pods" constituted trademark usage to identify and promote its products and services, and that U-Haul intentionally used "pod" and "pods" to direct attention of consumers to its U-Box. By contrast, in *National Business Forms*, the alleged diluter was a commercial printer which simply reproduced Ford's marks for its customers. 671 F.3d at 530, 536.[4] That use is distinguishable from U-Haul's use

---

[4] U-Haul cites *Avery Dennison Corp. v. Sumption*, 189 F.3d 868 (9th Cir. 1999), but as PODS counters, this case is distinguishable because the alleged diluter in that case was not offering competing goods. U-Haul also cites *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 361 (11th Cir. 1997) for the proposition that generic or descriptive use of a mark "by definition, is not trademark use." *Lone Star* does recognize that use of the words "LONE STAR CAFE" on an interior wall of a restaurant did not constitute a service mark use. Notwithstanding, as discussed above, the jury could reasonably have found that U-Haul's use of the words "pod" and "pods' hundreds, if not

of "pod" and "pods" in reference to its U-Box, which competed with PODS-branded containers.

Moreover, whether U-Haul's use of "pods" and "pod" constituted a trademark usage turns on the commercial impression that usage generated to the ordinary purchaser. 3 J. McCarthy, Trademarks and Unfair Competition § 17:26, p. 17–71 (4th ed. 2014) ("'Commercial impression,' like most issues in trademark law, should be determined from the perspective of the ordinary purchaser of these kinds of goods or services"); *Sands, Taylor & Wood Co. v. Quaker Oats Co.,* 978 F.2d 947, 953 (7th Cir. 1992) ("A word or phrase functions as a trademark when it is "used by a source of [a product] to identify itself to the public as the source of its [product] and to create in the public consciousness an awareness of the uniqueness of the source and of its [products]").

The commercial impression generated to the ordinary purchaser by U-Haul's use of "pods" and "pod" was a factual determination for the jury. *See Hana Financial, Inc.*, 135 S.Ct. at 911 ("Application of a test that relies upon an ordinary consumer's understanding of the impression that a mark conveys falls comfortably within the ken of a jury."). The jury's determination is therefore determinative, since there was sufficient evidence from which the jury could find that U-Haul used "pods" in a trademark sense on its website since October 2010. (Dkt. 359: Sept. 12 Tr. at 199: 7-14).

### b. Fame

To prove its dilution claim, PODS was required to prove that its mark was "famous," meaning that "it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). The Lanham Act provides that "all relevant factors," including the (1) duration and reach of advertising

---

thousands of times in attempting to optimize its website "to rank effectively for the word 'pods,'" and to identify its competing U-Box, constituted a trademark use.

and publicity of the trademark, (2) the amount of sales of goods offered by the trademark, (3) actual recognition of the mark, and (4) whether the mark was registered, may be considered in determining whether a mark is famous. *Id.*

Substantial evidence was presented to the jury from which it could reasonably have found that PODS' trademark was famous, at least since 2008. PODS introduced evidence that it spent $70 million in advertising by 2008, and in excess of $186 million in 2014, which the jury could reasonably have found favored the mark's fame. (PX 16; *see* Sept. 9 Tr. at 24 (Pete Warhurst testimony on franchisee advertising)). PODS also proved it had a nationwide network of locations and franchises and cumulative sales of more than $3 billion before trial. (PX 30). As to actual recognition of the PODS mark, a 2006 study commissioned by U-Haul showed PODS with a "total awareness" of 78% nationally, which the jury could have found demonstrated widespread actual recognition of the mark. (PX 77 at UHI00018575, -591). While U-Haul disputes this interpretation and the study's methodology, those arguments go to the weight of the evidence, a matter reserved for the jury. U-Haul also argues that PODS only had "niche" fame at best, but there was sufficient evidence for the jury to conclude otherwise. Finally, the marks were registered with the Patent and Trademark Office at all relevant times. (PX 1, PX 2, PX 9, PX 10).

### c. *Likelihood of Dilution by Blurring*

U-Haul argues that PODS did not prove that its brand came to mind when consumers viewed U-Haul's use of "pod" and "pods," contending that "dilution by blurring requires that the plaintiff 'comes to [] mind' for some appreciable number of consumers when they view the defendant's use," citing *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 212 (2d Cir. 2013). This argument misapprehends the standard for likelihood of dilution by blurring, and the holding in

13

*Starbucks.*[5]

There is no reference in *Starbucks* that a plaintiff "comes to mind for some appreciable number of consumers" when viewing the defendant's use. Rather, that court balanced the factors in § 1125(c)(2)(B), stating that "the ultimate question is whether the Charbucks Marks are likely to cause an association arising from their similarity to the Starbucks Marks, which impairs the Starbucks Marks' tendency to identify the source of Starbucks products in a unique way." *Id.* at 211. In discussing the "degrees of distinctiveness, exclusive use, and recognition, that court focused on "the more important factors in the context of this case," the similarity of the marks and actual association. *Id.* at 212. Although it mentioned the "weak evidence of actual association" in that case and observed that "more survey participants did not think of "Starbucks" upon hearing "Charbucks"" than did, the court did not, contrary to U-Haul's suggestion, quantify some minimal level of association. *Id.* And while *Starbucks* does analyze survey results on the level of association, that was but one of several considerations in its analysis of whether there was a likelihood of dilution. It certainly was not, as U-Haul suggests, the *sine qua non* of dilution by blurring.

In conclusory fashion, U-Haul simply argues that "no evidence showed that U-Haul used 'pod(s)' as a trademark, that PODS was a famous mark among the general consuming public of the

---

[5] The jury instructions, virtually quoting § 1125(c)(2)(B), instructed that a likelihood of blurring occurs "when the similarity between U-Haul's use of "pods" or "pod" and PODS' famous trademark impairs the distinctiveness of the famous trademark," and instructed to consider all relevant factors, including:

The degree of similarity between U-Haul's use of "pods" or "pod" and PODS' trademarks;

The degree of inherent or acquired distinctiveness of PODS' trademark;

The extent to which PODS is engaged in substantially exclusive use of its trademark;

The degree of recognition of PODS' trademark;

Whether U-Haul intended to create an association with PODS' trademark; and

Any actual association between U-Haul's use of "pods" or "pod" and PODS' trademarks.

(Dkt. 341. P. 29-30). U-Hauls asserts no error in this instruction.

14

United States before 2008, or that consumers think of PEI when viewing 'pod(s)' on U Haul's website." Yet, U-Haul fails to discuss or even acknowledge the evidence PODS introduced bearing on these factors. That includes the evidence of U-Haul's intent to use "pod" and "pods" to create an association with the PODS mark, at least some actual confusion as discussed with respect to likelihood of confusion, the incontestable status of the PODS mark, and PODS' efforts to preserve the exclusivity of its marks. (*See* PX 44).[6] In sum, the evidence was sufficient for the jury to find that U-Haul's use of "pod" and "pods" created a likelihood of dilution which impaired the distinctiveness of the PODS mark.

### C.    U-Haul's Affirmative Defenses

U-Haul contends it is entitled to judgment as a matter of law or a new trial with respect to its claim that "pod" and "pods" was generic *ab initio*, and to a new trial with respect to its claims of genericide and fair use. These arguments are rejected.

### *1.    Genericness* **ab initio**

U-Haul's motion with respect to genericness *ab initio* is denied for the reasons discussed in the Order denying U-Haul's Renewed Motion for Directed Verdict, for Judgment as a Matter of Law, or in the Alternative, Motion for a New trial (Dkt. 369).

### *2.    Genericide*

With respect to genericide, U-Haul renews its arguments that "pods" was generic *ab initio*, in addition to referencing the evidence it introduced supporting its contention that the mark has become generic. The test for genericness is the "primary significance of the mark to the relevant

---

[6] U-Haul's reliance on *Merriam-Webster, Inc. v. Random House, Inc.*, 35 F.3d 65 (2d Cir. 1994) in support of its argument that it did not use "pods" as a trademark is misplaced. That case interpreted new York's antidilution statute.

public," 15 U.S.C. § 1064(3); *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1320 (11th Cir. 2012), with the relevant public being actual or potential purchasers of the goods in question. *See Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007); *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 544 (10th Cir. 2000).

U-Haul introduced considerable evidence of generic use of "pod" and "pods" after the registration of the marks, including use on internet social media (DX 602, 608, 609, 611, 612), classified advertising (DX 613), traditional media (DX 606, 617), in local government ordinances (DX 617, 627, 629), and use by competitors (DX 626, 627, 629, 630). U-Haul also introduced evidence that employees of PODS used the marks generically at times. (DX5, 8, 25-26, 54, 75-76, 428, 432, 707). In contrast to U-Haul's evidence, however, PODS presented testimony, which the jury apparently found to be more credible, that occasional internal generic use did not alter the primary significance of the mark to the consuming public. (*See* Sept. 10 Tr. at 229-230 (Spowart); Sept. 11 Tr. at 182 (Eales)).

PODS' evidence of non-genericness included the incontestability of the marks (PX 1, PX 2, PX 9, PX 10), fame, *supra* Part II.B.2.b., and survey evidence, *infra*. Since that evidence lends "some support" for the jury's verdict that the mark had not become generic, a new trial will not be ordered. *Redd v. City of Phenix City, Ala.*, 934 F.2d 1211, 1215 (11th Cir. 1991) ("When there is some support for a jury's verdict, it is irrelevant what we or the district judge would have concluded."); *Auto-Owners*, 571 F.3d at 1145 (in considering motion for new trial based on sufficiency of the evidence, district court must ensure it "does not simply substitute its own credibility choices and inferences for the reasonable choices and inferences made by the jury").

And while U-Haul introduced expert testimony from Dr. Wendy Wood and her survey,

which U-Haul contends demonstrated that relevant consumers viewed the marks in question to be generic,[7] (*See* DX 633), PODS introduced expert testimony that the jury could have found undermined the credibility of Dr. Woods and her survey. (*See* Sept. 19 Tr. at 30-40 (testimony of Dr. Eugene Ericksen)). Indeed, while Dr. Wood interpreted her survey to show approximately 52-53% of consumers believed the marks to be generic and 44% believed them to be non-generic (DX 633 ¶¶ 5-6), the jury could have credited Dr. Ericksen's testimony that the correct weighting of the survey would have resulted in a majority of consumers believing the term was non-generic. (Sept. 19 Tr. at 35). The jury was under no obligation to accept Dr. Wood's opinions and reject Dr. Ericksen's. "Even uncontradicted expert opinion testimony is not conclusive, and the jury has every right not to accept it." *Gregg v. U.S. Indus., Inc.*, 887 F.2d 1462, 1470 (11th Cir. 1989) (citing *Remington Arms Co., Inc. v. Wilkins*, 387 F.2d 48, 54 (5th Cir. 1967)).

Considering the relevant standard, U-Haul's evidence is not enough to compel a conclusion that the primary significance of the mark to the public is to identify the class of products, rather than the source of the products. *See* 15 U.S.C. § 1064(3); *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985). Nor is it enough to support a conclusion that the jury's verdict was against the great weight of the evidence. Plainly, this was a jury question. The jury could reasonably have found that U-Haul's evidence, viewed alone or in conjunction with PODS' evidence, was insufficient to meet U-Haul's burden.

---

[7] U-Haul cites *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1321-22 (11th Cir. 2012), which states that consumer surveys are "almost de rigueur in litigation over genericness," and contends PODS' failure to present its own consumer survey is fatal to its position. However, U-Haul had the burden to establish its affirmative defense of genericness, and even without a survey from PODS, there was sufficient evidence supporting the jury's finding that U-Haul did not prove the marks were generic.

### 3.    *Fair Use*

U-Haul moves for a new trial on its fair use defense, which required it to prove its use of the terms "pod" and "pods" was ""(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith.""" *Int'l Stamp Art, Inc. v. U.S. Postal Serv.*, 456 F.3d 1270, 1274 (11th Cir. 2006) (quoting *EMI Catalogue P'ship v. Hill, Holliday, Connors, & Cosmopulos, Inc.*, 228 F.3d 56, 64 (2d Cir. 2000)). For the reasons discussed, U-Haul's arguments are unpersuasive on the first two points. And whether U-Haul acted in good faith, or whether it intended to trade on PODS' goodwill by "creating confusion as to the source of the goods," was a question of fact for the jury. *Id.*; *see EMI Catalogue*, 228 F.3d at 67-68.

As discussed, evidence was introduced that U-Haul used "pod" and "pods" on its website thousands of times. (*See, e.g.*, PX 59). And evidence was introduced from which the jury could reasonably have questioned U-Haul's good faith in its use of "pod" and "pods." (PX 59 (internal U-Haul suggestion to use "PODS brand"); PX 63 (email from U-Haul executive that use of "pods" is reminiscent of "Old West . . . steel-eyed gunfighter")). U-Haul's decision to use "pod" and "pods" when it had previously used alternative terms, such as "containers" and "portable storage," is also relevant to the fair use inquiry. (Dkt. 202-25). *See Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1042 (9th Cir. 2010) (alleged infringer's use of trademarked phrase in light of "abundance of alternative words" relevant when considering whether it qualified for fair use defense). In sum, there was sufficient evidence supporting the jury's finding that U-Haul's use of "pods" was not in good faith, defeating U-Haul's fair use defense.[8]

---

[8] U-Haul relies on *Soweco, Inc., v. Shell Oil Co.*, 617 F.2d 1178, 1186-87 (5th Cir. 1980), which held defendant's use of "larvicide" was fair use. However, unlike the jury's finding against U-Haul, in *Soweco*, the jury found defendant's use of the term was in good faith. *Id.* at 1187.

### D.   Damages

PODS was awarded $45 million in actual damages, based on a corrective advertising theory, and $15.7 million in U-Haul's profits, for a total of $60.7 million. U-Haul challenges the award of profits based on PODS' alleged failure to (1) prove causation and (2) satisfy the requirements for disgorging profits. U-Haul challenges the award of actual damages on the grounds that (1) PODS did not proved it was harmed, (2) PODS failed to prove causation, and (3) the amount awarded is not supported by the evidence. Finally, U-Haul argues PODS failed to prove that actual damages are available under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

### 1.   *Profits - Causation*

U-Haul contends that PODS failed to prove that U-Haul's use of "pod" and "pods" contributed to U-Haul's profits. This argument has been raised by U-Haul on at least three occasions. It fails again. *See* Dkt. 239 (denying *Daubert* motion); Dkt. 258 (denying summary judgment); Sept. 19 Tr. at 204-205 (denying Rule 50 motion). A plaintiff need not demonstrate actual damage to obtain an accounting of an infringer's profits under section 35 of the Lanham Act. *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.,* 833 F.2d 1484, 1487 -1488 (11th Cir. 1987).

Once PODS established infringement, it was only required to prove U-Haul's sales of its U-Box. *Id.*, at 1488. The burden then shifted to U-Haul to prove its expenses and other deductions from gross sales. *Id.* PODS was not, contrary to U-Haul's contention, required to prove that U-Haul's use of "pod" or "pods" contributed to U-Haul's profits. *See Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206 (1942) ("Congress did not put upon the despoiled the burden – as often as not impossible to sustain – of showing that but for the defendant's unlawful use of the mark, particular customers would have purchased the plaintiff's goods.").

Even if PODS was required to prove causation, Walter Bratic's testimony provided sufficient evidence from which the jury could reasonably find that U-Haul reaped significant sales from using "pod" and "pods" on its website. *See* Sept. 15 Tr. at 17-20 (Bratic testimony that U-Haul made $34-48 million in incremental profits attributable to increased search engine traffic directed to its website, after making deductions from gross sales). The jury's award of $15.7 million in profits based on his testimony is therefore supported by the evidence. *See Burger King Corp. v. Mason ("Mason I")*, 710 F.2d 1480, 1495 n. 11 (11th Cir. 1983) ("[N]o hard and fast rules dictate the form or quantum of relief" for a Lanham Act violation.) The amount of profits was neither inadequate nor excessive. The motion will therefore be denied with respect to profits and causation. *See id.* at 1495.

### 2.   *Entitlement to Profits*

U-Haul argues that PODS has not demonstrated an entitlement to profits. An accounting for profits is appropriate where (1) defendant has deliberately and willfully infringed a mark, (2) the defendant was unjustly enriched, or (3) the sanction is necessary for future deterrence. *Howard Johnson Co., Inc. v. Khimani,* 892 F.2d 1512, 1521 (11th Cir. 1990). District courts have "considerable discretion" in awarding profits, and are to consider equitable principles. *Mason I*, 710 F.2d at 1495.

Here, the jury expressly found that U-Haul was unjustly enriched through its use of "pods" and "pod" (Dkt. 337 at 3). And there was sufficient evidence to support that finding. The jury heard testimony that U-Haul knowingly used the marks without authorization to drive internet users to its website and that the "dollar impact" would be "significant." *See* Sept. 11 Tr. at 9:2-10:8, 23:11-24:12; PX 59, 63, 70 (evidence jury could have believed showing that U-Haul attempted to benefit from PODS brand). As previously noted, the evidence also established that U-Haul used "pod" and

"pods" thousands of times to optimize its website, and that U-Haul "undoubtedly" benefitted from that use in promoting its products and services. (*Id.* at 66:21-24; 67-68; PX 59)("It's undoubtedly a benefit since they're trying to promote that term and trying to sell products and services related to it."). The jury could therefore have reasonably inferred that U-Haul adopted the PODS mark with the intent of deriving a benefit from the reputation of the PODS mark, and was unjustly enriched by its conduct.[9] And Bratic's testimony was sufficient to support the profits award, since he estimated that the incremental profits associated with U-Haul's infringing activities were between $34 and $48 million. *See* Sept. 15 Tr. at 17:22-20:8.

Further, to award profits based on unjust enrichment, the jury did not have to find a "higher showing of culpability on the part of defendant, who is purposely using the trademark." *See Burger King Corp. v. Mason ("Mason II")*, 855 F.2d 779, 781 (11th Cir. 1988) (citing with approval *Wolfe v. National Lead Co.*, 272 F.2d 867, 871 (9th Cir. 1959), which rejected good faith reliance on attorney opinion as a defense to an accounting for profits). U-Haul's attempt to import an additional but-for causation requirement into the unjust enrichment analysis supporting disgorgement of profits is unavailing. *See Maltina Corp. v. Cawy Bottling Co., Inc.*, 613 F.2d 582, 585 (5th Cir. 1980) ("diversion of sales is [not] a prerequisite to an award of an accounting" in case remedying unjust enrichment).

---

[9] There was likewise evidence from which the jury could reasonably find that U-Haul's use of "pods' and "pod" was deliberate and willful, since its decision to use the marks came after it sought a license (PX 17; see Sept. 9 Tr. at 33:13-21), U-Haul continued to use the marks during the pendency of this case, and its use escalated through trial. And an award of profits could reasonably have been found necessary to deter U-Haul from future infringement.

### 3.   *Actual Damages*

To recover actual damages, PODS "was required to establish that [U-Haul's] Lanham Act violations proximately caused it to suffer monetary damages." *Optimum Technologies, Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1252 (11th Cir. 2007); *See Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1182 (11th Cir. 1994) (to recover actual damages, plaintiff must prove "the loss was caused by defendants' actions.") (citation omitted). Damages for trademark infringement may include a defendant's profits, any damages sustained by the plaintiff, and the cost of the action. 15 U.S.C. § 1117. Actual damages include "all elements of injury to the business of the trademark owner proximately resulting from the infringer's wrongful acts." *Ramada Inns, Inc. v. Gadsden Motel Co.*, 804 F.2d 1562, 1565 (11th Cir. 1986) (quoting *Boston Professional Hockey v. Dallas Cap*, 597 F.2d 71 (5th Cir. 1979) (further citation omitted)).

Damages may include "the costs of corrective advertising or injury to business reputation or goodwill." *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1241 (11th Cir. 2008) (emphasis added). And contrary to U-Haul's argument at p. 4 of its motion that PODS was required to prove damages "with specificity," a Lanham Act plaintiff may recover damages "even when they are not susceptible to precise calculations." *Ramada Inns*, 804 F.2d at 1565; *Bangor Punta Operations, Inc. v. Universal Marine Co.*, 543 F.2d 1107, 1111 (5th Cir. 1976) ("The wrongdoer may not complain of inexactness where his actions preclude precise computation of the extent of the injury."), *quoting Kestenbaum v. Falstaff Brewing Corporation*, 514 F.2d 690, 698 (5th Cir. 1975) (citation omitted).

### a. Harm

U-Haul's first argument is that PODS did not prove it was harmed by U-Haul's actions. U-Haul acknowledges, at page 4 of its motion, that PODS was required to "present evidence that the

PODS mark lost value" to recover damages for corrective advertising. That is exactly what PODS presented to the jury, evidence that U-Haul's use of the marks damaged the PODS brand. (*See* Sept. 12 Tr. at 140-43 (Dr. Russell Winer testimony on short-term and long-term impact on PODS resulting from U-Haul's use of marks, including "negative impact on the distinctiveness of the PODS brand," adverse impact on PODS' growth, and lost sales) (Sept. 11 Tr at 217:5-19 (Ann Lehman testimony)); creation of false association between PODS' containers and U-Haul's inferior product, and customer confusion) (*Id.*)

### b. Requirements for Corrective Advertising

Next, U-Haul argues that PODS failed to prove what it contends are prerequisites for the recovery of damages for corrective advertising, (1) evidence of actual confusion and (2) a showing of past corrective advertising by PODS or PODS' financial inability to pay for corrective advertising in the future. U-Haul cites no controlling authority supporting this contention, however. Even if actual confusion is required, as noted, PODS introduced evidence from which the jury could reasonably have found that actual confusion resulted from U-Haul's use of "pod" or "pods." And significantly, this Circuit has accepted an estimate of future expenditures to support a jury's verdict of damages for corrective advertising. *See Aronovitz*, 513 F.3d at 1241 (affirming jury verdict awarding damages for corrective advertising despite objection that prevailing party had not "spent any money on corrective advertising.").

### c. Calculation of Actual Damages

U-Haul's final objection is that the $45 million actual damages award for corrective advertising is not supported by the evidence. At trial, PODS relied primarily on the testimony of Dr. Russel Winer, a marketing and branding expert, to support its theory of corrective advertising and

to prove the amount of corrective advertising needed. U-Haul challenges Winer's methodology on several grounds. Most are directed to credibility and inferences the jury could have drawn from the evidence. Those are matters within the province of the jury. *Reeves,* 530 U.S. at 150-151 (All reasonable inferences are to be drawn in favor of the nonmoving party, no credibility determinations may be made, the evidence may not be weighed, and evidence that the jury need not have believed is to be disregarded).

Dr. Winer testified that corrective advertising would remedy the harm to the PODS brand caused by U-Haul's infringement and dilution. (Sept. 12 Tr. at 143:2-144:22). He testified that a corrective advertising campaign should target the same audience that received the "misimpressions," using the same media that delivered the misimpressions, search engine users who searched for "pods." (*Id.* at 145:8-14, 183:10-25). He relied on testimony from another PODS' witness, Chris Silver Smith, that there were approximately 113.6 million misimpressions based on web searches for "pods" that returned results related to U-Haul, use of "pods"on U-Haul's website, and other sources. (*Id.* at 85:9-87:1, 88:8-89-4, 89:18-94:15, 95:2-10 (Smith testimony), 145:15-147:24 (Winer testimony); Sept. 18 Tr. at 276:9-19 (Jonathan Hochman testimony accepting universe of customers)).

Dr. Winer testified that his review of the literature suggested that it took three correct impressions to remedy a single misimpression. (Sept. 12 Tr. at 148:7-17 (Winer testimony)). He testified that it took about 28 cents to create an impression, based on an average of the cost for search engine marketing that used branded search terms like U-Haul or PODS and unbranded terms like "moving" or "storage." (*Id.* at 149:3-16; Sept. 9 Tr. at 209:18-210:5 (George Spowart testimony on cost of impressions)). Finally, Dr. Winer multiplied the $0.28 per impression by three, the number

24

of impressions necessary to correct a misimpression, and multiplied that by 113.6 million misimpressions, producing a reasonable corrective advertising program that he estimated would cost approximately $95.4 million. (*See id.* at 145-149).

U-Haul argues that the 113.6 million misimpressions were overstated, as they included all searches for "pods" on search engines, even those that did not result in clicks on U-Haul websites. That argument goes to the weight of the evidence, a matter within the province of the jury. Chris Silver Smith's testimony provided an adequate evidentiary foundation for the misimpression calculation, and the jury could reasonably have found that the calculation was credible. (*See* Sept. 12 Tr. at 84-92).

Next, U-Haul takes issue with Dr. Winer's decision to multiply the misimpressions by three to arrive at the number of impressions needed to correct the misimpressions. This argument likewise fails, as the testimony of Dr. Winer as well as that of Jonathan Hochman, U-Haul's expert, provided evidentiary support for the theory of multiple impressions being necessary to correct a misimpression. (*See* Sept. 12 Tr. at 148:7-17 (Winer testimony); Sept. 18 Tr. at 275:6-18 (Hochman testimony that four to five impressions needed to correct misimpression)).

U-Haul's next objection is directed to Dr. Winer's use of $0.28 as the cost of an impression. This figure was based on a simple average of the PODS' search engine advertising for branded and unbranded terms. U-Haul argues that Dr. Winer should have used a weighted average, which would have provided a lower figure, as the less expensive, unbranded advertising led to more impressions. However, Dr. Winer substantiated the use of the $0.28 figure, by pointing out that the use of branded searches alone (at $0.46, a higher amount that would result in greater damages), would be reasonable because the misimpressions he identified functionally operated as branded searches. (*See* Sept. 12

Tr. at 179:24-180:8, 181:4-10).

U-Haul's remaining arguments go the overall award of damages. First, U-Haul contends that the $45 million in corrective advertising damages awarded by the jury is excessive, because it is far in excess of PODS' (and U-Haul's) internet advertising spending. Since PODS spent approximately $2 million per year on pay-per-click advertising and under $1 million on internet display advertising (Sept. 18 Tr. at 271:24-272:4), U-Haul contends that corrective advertising damages should be limited to a fraction of those expenditures More specifically, U-Haul argues that corrective advertising should be limited to 25% of relevant advertising spending, relying on *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1375 (10th Cir. 1977).[10] *Big O* has not been adopted by the Eleventh Circuit, however.

In *Aronovitz*, the Eleventh Circuit affirmed an award of corrective advertising damages without regard to the relevant advertising spent by either party. 513 F.3d at 1241. Moreover, considering the discretion afforded the trier of fact (here, the jury) in computing damages under the Lanham Act, the verdict will be upheld where, as here, the verdict is supported by the evidence. *See Ramada Inns*, 804 F.2d at 1565 (in trademark infringement cases, district court possesses "considerable discretion" in setting damages, "even when they are not susceptible to precise calculations."); *Howard Johnson*, 892 F.2d at 1520 ("where plaintiff's injury "is of such a nature as to preclude the ascertainment of the amount of damages with certainty . . . it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate."" (quoting *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282

---

[10] *Big O* actually bases corrective advertising damages on defendant's spending, which would result in damages of $0 here, since U-Haul did not engage in paid internet advertising. 561 F.2d at 1375.

U.S. 555, 563 (1931))).

Second, U-Haul suggests that the "corrective advertising award is arbitrary" and that "the jury appears simply to have split the difference" between Dr. Winer's calculation of $95.4 million in corrective advertising and Mr. Hochman's calculation of $1.6 million. U-Haul's unsupported supposition is not persuasive. The parties presented differing views of the damages to which PODS was entitled, if it prevailed, and supported their views with competing evidence. (*See, e.g.*, Sept. 18 Tr. at 269, 270:5-12, 275:9:18 (Hochman testimony supporting ratio of four-to-five corrective impressions for each misimpression); 280:3-13 (Hochman testimony suggesting there were 28 million misimpressions rather 113 million); Sept. 12 Tr. at 116 (Smith testimony admitting the number of people who saw U-Haul's use of "pods" is unclear)). *Cf. Aronovitz*, 513 F.3d at 1241 (affirming corrective advertising award of one-third to one-fifth of amount requested by plaintiff). As discussed, the determination of actual damages is inherently a question of fact for the jury in an infringement case, and its discretionary determination of damages will not be disturbed or second guessed.

To the extent U-Haul seeks a reduction in damages, the jury's award cannot be said to be unreasonable on the facts. *See Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999) (A remittitur is appropriate when the court believes the jury's award is "unreasonable on the facts."). And the jury's award of $45 million is certainly supported by the evidence, as Dr. Winer's estimate of corrective advertising damages was $95.4 million.[11]

---

[11] By way of analogy, when a defendant challenges an award of damages as excessive, review is "limited to an examination of the plaintiff's injuries to determine whether the damage award is beyond the maximum possible award supported by the evidence in the record." *Clark v. Beville*, 730 F.2d 739, 741 (11th Cir. 1984). Here, an examination of the corrective advertising necessary to correct the misimpressions resulting from U-Haul's use of "pods" and "pod" supports the amount awarded by the jury, which is well below the damages suggested by Dr. Winer.

Accordingly, there is ample evidence from which the jury calculated its damages award. U-Haul's request for a reduction in the amount awarded is denied.

### 4. *FDUPTA Damages*

U-Haul challenges the award of actual damages under Florida law, contending that corrective advertising is not available for violations of FDUPTA (Count VII).[12] To establish a violation of FDUPTA, a plaintiff must prove (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages.[13] *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 n. 25 (11th Cir. 2012). And the legal analysis for federal trademark infringement applies to FDUPTA. *See Suntree Technologies, Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1345 (11th Cir. 2012) ("[T]he legal standards we apply to [the FDUPTA] claim are the same as those we have applied under section 43(a) of the Lanham Act.") (quoting *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1323 (11th Cir. 2011)).

U-Haul contends that corrective advertising cannot be awarded as actual damages under FDUPTA, but cites no binding authority for that proposition. And the court finds no such limitation with respect to the recovery of actual damages under FDUPTA in the cases cited by the parties. Indeed, the cases affirm that one who suffers a loss due to a violation of FDUPTA may recover actual damages. Fla. Stat. § 501.211(2); *Rollins, Inc. v. Butland,* 951 So.2d at 873. Actual damages in this case are the corrective advertising expenses PODS will have to incur to recover the

---

[12] U-Haul also challenges the damages awarded based on the Florida dilution statute (Count V), as PODS did not register its trademarks in Florida until August 4, 2014. *See* Fla. Stat. § 495.151(2) ("[T]he owner of a famous mark . . . [if] the mark is registered in this state, . . . shall . . . be entitled to [damages]." However, judgment as a matter of law on Count V was already granted to U-Haul on any damages prior to the registration of the marks in Florida. *See* Sept. 19 Tr. at 184:24-186:14. To the extent U-Haul challenges damages based on state law dilution after August 4, 2014, its motion is denied. *See id.*

[13] "FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *Rollins, Inc. v. Butland,* 951 So.2d 860, 873 (Fla. 2d DCA 2006)

diminished value of its brand.

FDUPTA prohibits "[u]nfair methods of competition ... and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). As a general rule in FDUPTA cases, "[t]he measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered according to the contract of the parties," except that where a product is "rendered valueless" as a result of a defect, "purchase price is the appropriate measure of damages." *Rollins, Inc. v. Heller,* 454 So.2d 580, 585 (Fla. 4th DCA 1984). Where, as here, the unfair method of competition is the unauthorized use of a mark which diminishes the value or distinctiveness of the brand, actual damages would be the corrective advertising expense it will take to recover the lost value, as Dr. Winer opined. *See, e.g., Marco Island Cable v. Comcast Cablevision of the South, Inc.,* 312 Fed. Appx. 211, 214 (11th Cir.2009) (awarding damages based, in part, on expert's opinion of the diminished value of plaintiff's business that resulted from the defendant's conduct).

PODS introduced evidence that it suffered an "actual loss" which, as discussed, supports the jury's award of damages. The jury's award of damages will therefore be upheld.

**III.    PODS' MOTION TO AMEND THE JUDGMENT**

PODS moves to amend the judgment to include a permanent injunction against U-Haul's use of "pod" and "pods," a dismissal of U-Haul's cancellation proceedings at the Patent and Trademark Office, prejudgment and postjudgment interest, and enhanced damages.

### A.    Permanent Injunction

PODS seeks a permanent injunction prohibiting U-Haul from using the words "pod" and "pods." In support, PODS points out that it prevailed on its federal and Florida dilution claims. *See*

15 U.S.C. § 1125(c)(1) ("Subject to the principles of equity, the owner of a famous mark ... shall be entitled to an injunction..."); Fla. Stat. § 495.151 ("The owner of a mark that is famous in this state shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction..."). U-Haul counters that entry of an injunction is not mandated, relying on the phrase "[s]ubject to the principles of equity" appearing in both statutes. U-Haul's argument is not persuasive. Equitable principles, as well as the traditional four part test applicable to permanent injunctions, support entry of a permanent injunction prohibiting U-Haul's use of "pod" and "pods."

A plaintiff seeking a permanent injunction must satisfy four requirements: (1) irreparable injury, (2) which cannot be adequately compensated for at law, (3) the balance of hardships between the parties warrants an equitable remedy, and (4) the public interest would not disserved by the issuance of a permanent injunction. *Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

### 1.    *Irreparable Injury*

This Circuit has expressly declined to decide whether the Supreme Court's decision in *eBay* displaces the presumption of irreparable harm once infringement has been established. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228 (11th Cir. 2008). Even in the absence of a presumption of irreparable harm based on infringement, however, the facts of this case compel a finding of irreparable harm. As noted, the jury found that U-Haul's use of "pod" and "pods" caused a likelihood of confusion with PODS' trademark, based on evidence demonstrating actual confusion. The jury likewise found that PODS should be compensated for the loss to its business resulting from U-Haul's use of PODS' trademarks. *See supra* Part II.D.1. PODS has therefore demonstrated that

continued infringement would result in irreparable harm.

### 2.     *Inadequate Remedy at Law*

Next, PODS must establish that a remedy at law – that is, money damages – is not adequate

to redress its injuries. "It is generally recognized in trademark infringement cases that . . . there is

not adequate remedy at law to redress infringement . . . ." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*,

889 F.2d 1018, 1029 (11th Cir. 1989) (quoting *Processed Plastic Co. v. Warner Communications*,

675 F.2d 852, 858 (7th Cir. 1982)). And that is the case here, where PODS introduced significant

evidence that it lost goodwill in the marketplace as a result of U-Haul's actions that could not be

remedied by an award of damages. *See supra* Part II.D.

### 3.     *Balance of Hardships*

The balance of hardships likewise favors an injunction. PODS introduced evidence that it

spent millions of dollars developing the reputation of its trademarks and that it was damaged by U-

Haul's use of those marks. *Id.* By contrast, U-Haul would not be harmed by an injunction preventing

its use of PODS' marks. Indeed, U-Haul has voluntarily ceased using the marks. (Dkt. 409-1). *See*

*It's A 10, Inc. v. Beauty Elite Grp., Inc.*, 932 F. Supp. 2d 1325, 1333 (S.D. Fla. 2013) (balance of

hardships favors injunction because defendant without right to use the marks in question would not

suffer hardship).

U-Haul claims its voluntary cessation means the balance of hardships does not favor an

injunction, citing *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211 (11th Cir.

2012). However, that case confirms a district court's "equitable discretion about whether to issue an

injunction after the conduct has ceased." *Id.* at 1220. In *Pensacola Motor Sales*, the defendant ceased

its infringement immediately after receiving a cease-and-desist letter. *Id.* By contrast, U-Haul

continued to use "pod" and "pods" on its website after receiving PODS' cease-and-desist letter, after the lawsuit was filed, and even during, finally stopping two days after the jury rendered its verdict. (Dkt. 409-1 ¶ 2). "[E]quitable discretion" in this case therefore favors the issuance of an injunction.

### 4.   *Public Interest*

The final requirement is that the public interest not be harmed by the issuance of an injunction. In trademark infringement cases, the public interest ordinarily favors the issuance of injunctions to avoid consumer confusion. *Angel Flight*, 522 F.3d at 1209; *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) ("the public interest is served by preventing consumer confusion in the marketplace."). The jury found U-Haul's use of "pod" and "pods" was likely to confuse. It follows that to prevent consumer confusion, the public interest favors a permanent injunction.

### 5.   *Scope of Injunction*

While U-Haul's arguments are largely unconvincing as to PODS' entitlement to an injunction, they are more persuasive as to the scope of the injunction. An injunction should not "impermissibly prohibit conduct that [defendant] . . . has the right to do." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1203 (11th Cir. 2001). At the same time, when issuing an injunction against a party "who has transgressed the governing legal standards, a court of equity is free to proscribe activities that, standing alone, would have been unassailable." *Id.* (quoting *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1547-48 (11th Cir. 1986)).

PODS introduced evidence from which the jury reasonably concluded that U-Haul's use of "pod" and "pods" on its website was likely to confuse consumers, both on U-Haul's website and by manipulating U-Haul's ranking in internet searches. As a result, the broad language PODS seeks for

the injunction is appropriate, since it is targeted at the use of "pod" and "pods" when used as "trade names, business names, descriptors, product names, domain names, keywords, metatags, or on websites (whether as part of hidden or visible text), Internet sites (including without limitation social media sites), products, or on any other electronic or printed material for the purpose of advertising, promoting, marketing, or describing any products or services." (Dkt. 400-1 ¶ 2).

Notwithstanding, this language would prohibit the use of comparative advertising, which one of PODS' experts admitted at trial was acceptable and non-confusing. (Sept. 12 Tr. at 176 (Russell Winer testimony)). *See Aug. Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 618 (7th Cir. 1995) (reversing preliminary injunction that prohibited comparative advertising). Accordingly, the proposed injunction will be revised to allow for comparative advertising that clearly designates PODS as the source of moving and storage containers that compete with U-Haul's products.

PODS also seeks to enjoin U-Haul and its associated entities and individuals from attempting to apply for trademarks which may be confusingly similar or dilutive of the PODS marks. (Dkt. 400-1 ¶ 3). At trial, PODS did not prove, or even introduce significant evidence demonstrating that U-Haul had applied for trademarks which threatened PODS' marks. Indeed, any attempt by U-Haul to register "pod" or any variation thereof as a trademark will likely be undercut by these proceedings and the jury's verdict. Paragraph 3 of the proposed injunction will not be utilized.

## B.   PTO Proceeding

PODS seeks an order dismissing with prejudice U-Haul's cancellation proceedings against the PODS marks at the Patent and Trademark Office. *See* 15 U.S.C. § 1119. U-Haul does not question PODS' entitlement to this, but requests that it be deferred until the exhaustion of appeals. While PODS is entitled to such an order, it will be deferred pending appeal.

## C.   Prejudgment Interest

PODS seeks prejudgment interest on the actual damages and disgorged profits awarded by the jury.[14] Florida law on prejudgment interest applies to state law claims brought under supplemental jurisdiction. *Flava Works, Inc. v. City of Miami*, 609 F.3d 1233, 1237 (11th Cir. 2010). Counts IV, V, VI, VII, and VIII are state law claims.

Florida courts follow the "loss theory" of prejudgment interest. *Wiand v. Lee*, 753 F.3d 1194, 1204 (11th Cir. 2014). Under this theory,

> neither the merit of the defense nor the certainty of the amount of loss affects the award of prejudgment interest. Rather, the loss itself is a wrongful deprivation by the defendant of the plaintiff's property. Plaintiff is to be made whole from the date of the loss once a finder of fact has determined the amount of damages and defendant's liability therefor. *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985).

Therefore, "prejudgment interest is merely another element of pecuniary damages" and ordinarily available. *Id.* at 214.

Two exceptions apply to the general rule. First, prejudgment interest "is denied when its exaction would be inequitable." *Wiand*, 753 F.3d at 1204 (quoting *Flack v. Graham*, 461 So.2d 82, 84 (Fla. 1984) (further quotation omitted)). Among the factors to consider in determining whether an award of prejudgment interest should be denied are (1) whether the losing party is a government entity, (2) whether the delay between injury and judgment is the fault of the prevailing party, and (3) whether it would be equitable to award prejudgment interest to a party who could have but failed to mitigate damages. *Id.*; *Blasland, Bouck & Lee, Inc. v. City of N. Miami*, 283 F.3d 1286, 1297 (11th

---

[14] PODS also claims it is entitled to prejudgment interest under the Lanham Act. However, the Eleventh Circuit case PODS cites for support did not reach the issue, since the defendant failed to raise the issue. *Burger King Corp. v. Mason*, 855 F.2d 779, 783 (11th Cir. 1988). In any event, this question need not be reached because PODS is entitled to prejudgment interest on its state law claims.

Cir. 2002). None of these factors apply here.

The second exception is for cases, particularly tort claims, in which "damages are [] too speculative to liquidate before final judgment." *Lumbermens Mut. Cas. Co. v. Percefull*, 653 So. 2d 389, 390 (Fla. 1995). However, "where the loss is wholly pecuniary," prejudgment interest is mandated, even in tort claims. *Bosem v. Musa Holdings, Inc.*, 46 So. 3d 42, 46 (Fla. 2010) (emphasis deleted) (quoting William B. Hale, *The Law of Damages*, § 67 (2d ed. 1912)).

U-Haul contends PODS' damages are too speculative to warrant prejudgment interest. However, Florida courts have awarded prejudgment interest on tort claims so long as the damages were sufficiently "ascertainable." *Bosem*, 46 So. 3d at 47. While prejudgment interest has been rejected on claims based on "mental anguish" and "future pain and suffering," those types of damages are far more "speculative" and "indefinite[]" than corrective advertising based on loss of value to the PODS brand and lost profits. *See Amerace Corp. v. Stallings*, 823 So. 2d 110, 116 (Fla. 2002) (quoting *Jackson Grain Co. v. Hoskins*, 75 So. 2d 306, 310 (Fla. 1954)).

Indeed, the Florida Supreme Court has recently approved an award of prejudgment interest based on lost profits obtained pursuant to a state law claim and the Lanham Act. *See Bosem*, 46 So. 3d at 43. U-Haul relies on *Alvarado v. Rice*, 614 So. 2d 498 (Fla. 1993), in which the Florida Supreme Court held that a personal injury plaintiff was not entitled to interest on past medical expenses, where the plaintiff had not made payments on the medical bills prior to the entry of judgment. *Id.* at 500. By contrast, this jury determined PODS was "denied the use" of the value of its brand while U-Haul was infringing, and accordingly, prejudgment interest is due. *Id.* at 499.

U-Haul also argues that there is not a fixed date of loss from which damages can be calculated. When allowed, prejudgment interest is calculated "from the date of the loss or the accrual

of cause of action." *Bosem*, 46 So. 3d at 46 (quoting *Amerace*, 823 So. 2d at 116). Determining the amount of prejudgment interest is a "purely ministerial duty" requiring a "mathematical computation." *SEB S.A. v. Sunbeam Corp.*, 476 F.3d 1317, 1320 (11th Cir. 2007) (quoting *Argonaut Ins.*, 474 So. 2d at 215). ""No 'finding of fact' is needed," and no discretion is permitted." *Id.* (quoting *Argonaut Ins.*, 474 So. 2d at 215).

In light of the ministerial function of calculating prejudgment interest, the declaration of Walter Bratic submitted by PODS is sufficient to determine the date of loss for the damages and disgorged profits awarded by the jury. (*See* Dkt. 401). Notwithstanding U-Haul's argument, it was acceptable for Bratic to use his previous calculation of profits to allocate the prejudgment interest due for lost profits, as that calculation was the basis for the jury's award, even though the jury chose to award less than what PODS asked for. It was also acceptable to apportion the award of actual damages based on the number of visitors to U-Haul's website between February 2012 and August 2014, which was the basis of the actual damages awarded. (*Id.* ¶ 4). Accordingly, the judgment will be amended to include $4,936,100 in prejudgment interest.

### D.    Postjudgment Interest

The parties do not dispute PODS' entitlement to postjudgment interest, beginning on entry of judgment. *Gele v. Wilson*, 616 F.2d 146, 148 (5th Cir. 1980). The judgment will be amended to include postjudgment interest at the rate of 0.25%, beginning March 11, 2015, computed daily and compounded annually. *See* 28 U.S.C. § 1961; http://www.federalreserve.gov/releases/h15/current/.

### E.    Enhanced Damages

PODS moves for its damages to be doubled. The Lanham Act provides courts with the discretion to enhance damages, up to a treble level. 15 U.S.C. § 1117(a). Enhanced damages are not

36

"automatic." *Mason I*, 710 F.2d at 1495 n.11. Awarding enhanced damages "is discretionary, but it may not be punitive, and must be based on a showing of actual harm." *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1183 (11th Cir. 1994) (citing *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir. 1978)).[15]

PODS contends damages should be enhanced because U-Haul's conduct was willful. Evidence was presented during trial which would support a finding of wilfulness, although it was unnecessary for the jury to find the conduct willful with respect to any element of liability or damages. *See supra* Part II.D.2. However, there was also "ample evidence" in favor of finding that "pod" and "pods" was generic, and that U-Haul's decision to use those terms on its website did not rise to the level of intentional misconduct or gross negligence. (*See* Sept. 19 Tr. at 202:24-203:10 (granting judgment as a matter of law on PODS' claim for punitive damages, based in part on the strength of the evidence introduced in support of U-Haul's affirmative defenses of genericness)).

Considering the evidence, the Court exercises its discretion to decline an enhancement of damages. The jury returned a verdict of $60.7 million, which adequately compensates PODS for its losses. PODS is entitled to a permanent injunction, which will protect PODS from future harm. Additional damages would essentially penalize U-Haul, rather than compensate PODS, and will therefore not be awarded. *Accord Health & Sun Research, Inc. v. Australian Gold, LLC*, No. 8:12-cv-2319-T-33, 2014 WL 2801257, at *5-6 (M.D. Fla. June 19, 2014) (upholding jury verdict in Lanham Act case but declining to enhance damages).

---

[15] PODS does not argue a different standard applies to the award of enhanced damages based on its state law claims.

## IV.   PODS' MOTION FOR ATTORNEYS' FEES

Finally, PODS moves for an award of attorneys' fees. Successful Lanham Act plaintiffs may recover reasonable attorneys' fees "in exceptional cases." 15 U.S.C. § 1117(a).   In this Circuit, exceptional cases are those where the infringer has acted maliciously, fraudulently, deliberately, willfully, or in bad faith. *Mason I,* 710 F.2d at 1495 n.11; *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994); *Lone Star*, 106 F.3d at 363. Even if a case "rise[s] to the level of exceptionality," the district court retains discretion to grant or deny attorneys' fees. *Burger King*, 15 F.3d at 168 (citing *Dieter*, 880 F.2d at 329).

PODS suggests that the Supreme Court's recent decision in *Octane Fitness LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014) provides guidance on the meaning of "exceptional." *Octane Fitness* interpreted the Patent Act's fee-shifting provision, which is identical to that in the Lanham Act. It found *Octane Fitness* to be a case "that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. The Court reaffirmed district courts' "case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.* Neither the Supreme Court nor the Eleventh Circuit have addressed whether *Octane Fitness* applies to the Lanham Act.

Regardless of the standard applied, and assuming that *Octane Fitness* applies, I decline to award attorneys fees under the Lanham Act. While U-Haul deliberately used the words "pod" and "pods" on its website, I have already determined that U-Haul's use did not rise to the level of intentional misconduct, in light of the significant evidence indicating that the words were generic. (*See* Sept. 19 Tr. at 202:24-203:10). And even if U-Haul's use of "pod" and "pods" alone was

38

sufficient to make the case exceptional (based on the pre-*Octane Fitness* standard), I would nonetheless exercise discretion not to award attorneys' fees, for the same reasons enhanced damages are not awarded. *See Health & Sun Research*, 2014 WL 2801257, at *4 (same). As noted, U-Haul had a relatively strong, if ultimately unsuccessful, argument that "pod" and "pods" were generic. This precludes a finding that the substantive strength or manner in which U-Haul litigated its position favors an award of attorneys' fees. *See Adidas Am., Inc. v. Payless Shoesource, Inc.*, No. CIV.01-1655-KI, 2009 WL 302246, at *1 (D. Or. Feb. 9, 2009) (district court exercises discretion not to award attorneys' fees despite award of punitive damages in trademark infringement case).

PODS also argues entitlement to attorneys' fees under FDUPTA, which provides that a prevailing party "may receive [its] reasonable attorney's fees and costs from the nonprevailing party" after exhaustion of all appeals. Fla. Stat. § 501.2015(1).[16] Courts have discretion to award fees under FDUPTA. *Humane Soc. of Broward Cnty., Inc. v. Florida Humane Soc.*, 951 So. 2d 966, 968 (Fla. 4th DCA 2007). In exercising that discretion, the following factors are considered, without limitation: (1) the scope and history of the litigation, (2) the ability of the nonprevailing party to pay fees, (3) whether an award of fees would deter future conduct by others in similar circumstances, (4) the merits of the parties' positions, including the nonprevailing party's culpability or bad faith, (5) whether the claim was frivolous, unreasonable, or groundless, (6) whether the nonprevailing party raised a defense mainly to delay the case, and (7) whether the case posed a significant legal question. *Id.* at 971-72.

Most of these factors weigh against awarding fees or are neutral. As noted, the merits of the

---

[16] PODS also contends that it is entitled to attorneys' fees based on the Florida trademark infringement statute, but does not argue a different standard applies than the Lanham Act standard.

parties' positions were close, and neither party raised frivolous, unreasonable, or groundless claims. U-Haul's defenses were not advanced primarily to delay or frustrate the case. The scope and history of the litigation, and whether the case posed a significant legal question, are essentially neutral. While U-Haul appears to be able to satisfy a fee award and a substantial fee award would likely deter future trademark infringement, these factors do not outweigh the other factors. Moreover, the denial of PODS' request for a fee award under the Lanham Act supports the denial of fees under FDUTPA, since its FDUTPA claim was subordinate to and "inseparably intertwined with [the] Lanham Act claims." *Suntree Technologies, Inc. v. Ecosense Int'l, Inc.*, No. 6:09-cv-1945-ORL-28, 2013 WL 1174399, at *7 (M.D. Fla. Feb. 7, 2013) *report and recommendation adopted*, No. 6:09-CV-1945-ORL-28, 2013 WL 1174841 (M.D. Fla. Mar. 20, 2013) (same).

## V.   CONCLUSION

1.   U-Haul's Renewed Motion for Judgment as a Matter of Law, Or in the Alternative, Motion for New Trial, Or to Alter the Judgment (Dkt. 399) is **DENIED**. U-Haul's motion for remittitur is **DENIED**.

2.   PODS' Motion to Amend the Judgment (Dkt. 400) is **GRANTED** *in part* and **DENIED** *in part*.

3.   The following permanent injunction is **ENTERED**:

> A) PODS Enterprises, LLC ("PODS") is the owner of the following valid registrations as well as common law rights associated with marks that are the subject of these registrations (collectively defined as the "PODS Marks"): U.S. Trademark Registration No. 2,365,848, U.S. Trademark Registration No. 3,011,459, U.S. Trademark Registration No. 3,666,828, U.S. Trademark Registration No. 3,689,446, Florida Registration No. T14000000859, Florida Registration No. T14000000860, Florida Registration No. T14000000861, and Florida Registration No. T14000000862.

B) U-Haul International, Inc. ("U-Haul") and its subsidiaries, divisions, licensees, dealers, franchisees, assigns, affiliates, and each of their directors, officers, agents, servants, employees, representatives, attorneys, and those persons in active concert or participation with them, are hereby permanently restrained and enjoined from using the term "Pods", "Pod", "pods", or "pod", including without limitation all forms of those terms regardless of whether (a) any or all of the letters are capitalized or in lower case, (b) they are in singular or plural, or (c) they are modified before or after with one or more words or incorporated into or combined with other words (e.g. as part of a phrase) or any other marks, names or designations that are confusingly similar to the PODS Marks, or any other term confusingly similar to, or that is likely to cause dilution of, the PODS Marks in any manner, including without limitation, as trademarks, service marks (or any other type of designation), trade names, business names, descriptors, product names, domain names, keywords, metatags, or on websites (whether as part of hidden or visible text), Internet sites (including without limitation social media sites), products, or on any other electronic or printed material for the purpose of advertising, promoting, marketing, or describing any products or services. Notwithstanding the above, U-Haul may use the phrase "compare to PODS®" in comparative advertising in a manner that is not likely to confuse the public as to the source of the goods in question.

4.  The final judgment (Dkt. 370) is **AMENDED** to include $4,936,100 in prejudgment interest and postjudgment interest at the rate of 0.25% beginning on March 11, 2015, computed daily and compounded annually.

5.  PODS' request for an order directing cancellation of the parallel proceeding at the PTO (Trademark Trial and Appeal Board Proceeding No. 92/056228) is **GRANTED**. Entry of the Order is **DEFERRED** pending appellate review.

6.  PODS' request for enhanced damages and PODS' Motion for Attorneys' Fees and Expenses (Dkt. 389) are **DENIED**.

**DONE AND ORDERED** this _21 st_ day of August, 2015.

JAMES D. WHITTEMORE
**United States District Judge**

Copies to: Counsel of Record

41